Jessica P. Sam
Ha To Ha
8230 SE Yamhill Street
Portland, OR 97216
Phone: (503) 961-5506
Email: jessicasam555@msn.com

2013 JUN 20  AM II: 08

## UNITED STATES BANKRUTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | )    Case No. 13-32107-elp7 |
| Jessica P. Sam & Ha To Ha | ) |
|          *Debtors*, | )    Amended Motion for |
| | )    Reconsideration |
| | ) |
| | )    For the order of relief from |
| | )    Automatic Stay |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## AMENDED MOTION FOR RECONSIDERATION ON RULING FOR RELIEF

## FROM AUTOMATIC STAY

COME NOW the Debtors, Jessica P Sam and Ha To Ha are amending the "Motion for Reconsideration" to add or to amend the following.

1. Deutsche Bank case laws to support claims made that Deutsche Bank filed for wrongful foreclosure suits throughout United States without proper standing.

2. Research was done by Jessica Sam to support exhibit # 11 to show Aames Funding Corporation dba Aames Home Loan's license was revoked for failure to comply with Section 50401 of the California Residential Mortgage Lending Act. This Internet Link "**http://www.corp.ca.gov/ENF/pdf/a/aames_order-revoke.pdf**" was used to pull up the above mentioned **PDF,** this is true to my knowledge under the penalty of perjury**.**

3. Debtors also like to add the 2 most recent Supreme Court's decisions-Niday v. GMACE and Brandrup v. Recon Trust, to showcase that both of these cases'

alleged creditors had violated the Oregon Trust Deed Act by not having the proper chain of title recorded in the land recording office, and the alleged creditor have not established themselves as to if the they have had acquired interests in the note and trust deed that would entitled them to non-judicially foreclose which are mirror images of debtors' situation.

Date _6/18/13_

Respectfully Submitted,

Jessica P. Sam

Ha To Ha
8230 SE Yamhill Street
Portland, OR 97216
503-961-5506

## CERTIFICATE OF SERVICE

I hereby certify that on June __19__ 2013, we mailed a true and correct copy of the above
and foregoing motion to the parties listed below.

Jessica P. Sam

Ha To Ha

Lawyers for Deutsche Bank
Robinson Tait
710 Second Avenue
Suite 710
Seattle, WA 98104

Trustee- Kenneth S. Eiler
PMB 810
515 SW Saltzman Rd.
Portland, OR 97229

US Trustee
620 SW Main Room # 213
Portland, OR 97205

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1950 | **DATE** | 9/13/2011 |
| **CASE TITLE** | Deutsche Bank National Trust Company vs. Howard J. Bodzianowski, et al | | |

### DOCKET ENTRY TEXT

Motion hearing held. Defendant's motion to dismiss for lack of standing [16] entered and continued for briefing. Response to be filed by or on 9/27/2011; reply 10/4/2011; ruling set for 10/11/2011 at 9:00 AM. Rule 16 conference stricken.

Notices mailed by Judicial staff.

00:02



| | Courtroom Deputy Initials: | ETV |
|---|---|---|

[*1]

| Deutsche Bank Natl. Trust Co. v Francis |
| :---: |
| 2011 NY Slip Op 50423(U) [30 Misc 3d 1241(A)] |
| Decided on March 25, 2011 |
| Supreme Court, Kings County |
| schack, J. |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This opinion is uncorrected and will not be published in the printed Official Reports. |

Decided on March 25, 2011

## Supreme Court, Kings County

**Deutsche Bank National Trust Company as Trustee under the Pooling and Servicing Agreement Dated as of February 1, 2007, GSAMP TRUST 2007-FM2, Plaintiff,**

**against**

**Walter Francis a/k/a Walter J. Francis, et. al., Defendants**

10441/09

Plaintiff

Jordan S. Katz, PC

Melville NY



schack, J.

In this residential mortgage foreclosure action, for the premises located at 2155 Troy Avenue, Brooklyn, New York (Block 7842, Lot 11, County of Kings) plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF FEBRUARY 1, 2007, GSAMP TRUST 2007-FM2 [*2](DEUTSCHE BANK) moved for an order of reference alleging that defendant WALTER T. FRANCIS (FRANCIS) failed to file a timely answer. Plaintiff DEUTSCHE BANK and defendant FRANCIS appeared for oral argument on DEUTSCHE BANK'S motion on September 21, 2010. In a short form order issued that day I held that FRANCIS filed a timely answer and also denied plaintiff's motion for an order of reference because plaintiff DEUTSCHE BANK failed to serve defendant FRANCIS with its motion for an order of reference. I ordered the parties to appear before me on October 29, 2010 for a preliminary conference.

The parties appeared on October 29, 2010. Plaintiff's counsel agreed to try to work with defendant FRANCIS on a loan modification agreement if defendant FRANCIS provided DEUTSCHE BANK with numerous documents. Defendant FRANCIS provided plaintiff with the required documentation. The Court conducted several settlement conferences. The last settlement conference was scheduled for March 14, 2011. Plaintiff DEUTSCHE BANK defaulted in appearing, while defendant FRANCIS was present. Plaintiff's counsel did not contact my Part or file an affirmation of actual engagement. I then checked the file for this case maintained by the Kings County Clerk and the Automated City Register Information System (ACRIS). I discovered that there is no record of plaintiff DEUTSCHE BANK ever owning the subject mortgage and note. Therefore, with plaintiff DEUTSCHE BANK lacking standing, the instant action is dismissed with prejudice and the notice of pendency cancelled.

## *Background*

According to the verified complaint and confirmed by my ACRIS check, defendant FRANCIS borrowed $445,500.00 from FREMONT INVESTMENT AND LOAN (FREMONT) on October 20, 2006. The mortgage to secure the note was recorded by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), "acting solely as a

nominee for Lender [FREMONT]" and "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD," in the Office of the City Register of the City of New York, New York City Department of Finance, on November 21, 2006, at City Register File Number (CRFN) 2006000645448.

Plaintiff alleges in its verified complaint that FRANCIS executed a loan modification agreement on February 22, 2008 with FREMONT. This was never recorded with ACRIS. Further, the verified complaint alleges, in ¶ 6, that MERS, as nominee for FREMONT assigned the mortgage and note to plaintiff "by way of an assignment dated April 21, 2009 to be recorded in the Office of the Clerk of the County of Kings." It is almost two years since April 21, 2009 and this alleged assignment has not been recorded in ACRIS. Plaintiff should learn that mortgage assignments are not recorded in the Office of the Clerk of the County of Kings, but with the City Register of the New York City Department of Finance.

Defendant FRANCIS allegedly defaulted in his mortgage loan payments with his January 1, 2009 payment. Subsequently, plaintiff DEUTSCHE BANK commenced the instant action, on April 29, 2009, alleging in ¶ 7 of the verified complaint, that "Plaintiff [DEUTSCHE BANK] is the holder and owner of the aforesaid NOTE and MORTGAGE."

However, according to ACRIS, plaintiff DEUTSCHE BANK was not the holder of the note and mortgage on the day that the instant foreclosure action commenced. Thus, DEUTSCHE BANK lacks standing. The action is dismissed with prejudice. The notice of pendency [*3]cancelled. Plaintiff's lack of standing is enough to dismiss this action. The Court does not need to address MERS' probable lack of authority to assign the subject mortgage and note to DEUTSCHE BANK, if it was ever assigned.

### Discussion

In the instant action, it is clear that plaintiff DEUTSCHE BANK lacks "standing." Therefore, the Court lacks jurisdiction. "Standing to sue is critical to the proper functioning of the judicial system. It is a threshold issue. If standing is denied, the pathway to the courthouse is blocked. The plaintiff who has standing, however, may cross the threshold and seek judicial redress." (*Saratoga County Chamber of Commerce, Inc. v Pataki*, 100 NY2d 801 812 [2003], *cert denied* 540 US 1017 [2003]). Professor Siegel (NY Prac, § 136, at 232 [4d ed]), instructs that:

[i]t is the law's policy to allow only an aggrieved person to bring a

lawsuit . . . A want of "standing to sue," in other words, is just another

way of saying that this particular plaintiff is not involved in a genuine

controversy, and a simple syllogism takes us from there to a "jurisdictional"

dismissal: (1) the courts have jurisdiction only over controversies; (2) a

plaintiff found to lack "standing" is not involved in a controversy; and

(3) the courts therefore have no jurisdiction of the case when such a

plaintiff purports to bring it.

"Standing to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request." (*Caprer v Nussbaum* (36 AD3d 176, 181 [2d Dept 2006]). If a plaintiff lacks standing to sue, the plaintiff may not proceed in the action. (*Stark v Goldberg*, 297 AD2d 203 [1st Dept 2002]).

Plaintiff DEUTSCHE BANK lacked standing to foreclose on the instant mortgage and note when this action commenced on April 29, 2009, the day that DEUTSCHE BANK filed the summons, verified complaint and notice of pendency with the Kings County Clerk, because it can not demonstrate that it owned the mortgage and note that day. Plaintiff alleges that the April 21, 2009 assignment from MERS, as nominee for FREMONT, to plaintiff DEUTSCHE BANK was to be recorded. As of today it has not been recorded. The Court, in *Campaign v Barba* (23 AD3d 327 [2d Dept 2005]), instructed that "[t]o establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and the mortgage note, ***ownership of the mortgage***, and the defendant's default in payment [***Emphasis added***]." (*See Witelson v Jamaica Estates Holding Corp. I,* 40 AD3d 284 [1st Dept 2007]; *Household Finance Realty Corp. of New York v Wynn*, 19 AD3d 545 [2d Dept 2005]; *Sears Mortgage Corp. v Yahhobi*, 19 AD3d 402 [2d Dept 2005]; *Ocwen Federal Bank FSB v Miller*, 18 AD3d 527 [2d Dept 2005]; *U.S. Bank Trust Nat. Ass'n Trustee v Butti*, 16 AD3d 408 [2d Dept 2005]; *First Union Mortgage Corp. v Fern*, 298 AD2d 490 [2d Dept 2002]; *Village Bank v Wild Oaks, Holding, Inc.*, 196 AD2d 812 [2d Dept 1993]).

Assignments of mortgages and notes are made by either written instrument or the assignor physically delivering the mortgage and note to the assignee. "Our courts have repeatedly held that a bond and mortgage may be transferred by delivery without a written instrument of assignment." (*Flyer v Sullivan*, 284 AD 697, 699 [1d Dept 1954]). Plaintiff DEUTSCHE BANK has no evidence that it had physical possession of the note and mortgage on [*4]April 29, 2009 and admitted, in ¶ 6 of the instant verified complaint complaint, that the April 21, 2009 assignment is "to be recorded."

The Appellate Division, First Department, citing *Kluge v Fugazy*, in *Katz v East-Ville Realty Co.*, (249 AD2d 243 [1d Dept 1998]), instructed that "[p]laintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact." Therefore, plaintiff DEUTSCHE BANK lacks standing and the Court lacks jurisdiction in this foreclosure action. The instant action is dismissed with prejudice.

The dismissal with prejudice of the instant foreclosure action requires the

cancellation of the notice of pendency. CPLR § 6501 provides that the filing of a notice of pendency against a property is to give constructive notice to any purchaser of real property or encumbrancer against real property of an action that "would affect the title to, or the possession, use or enjoyment of real property, except in a summary proceeding brought to recover the possession of real property." The Court of Appeals, in *5308 Realty Corp. v O & Y Equity Corp.* (64 NY2d 313, 319 [1984]), commented that "[t]he purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit," and, at 320, that "the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review."

CPLR § 6514 (a) provides for the mandatory cancellation of a notice of pendency by:

*The Court. upon motion* of any person aggrieved and upon such

notice as it may require, *shall direct any county clerk to cancel*

*a notice of pendency,* if service of a summons has not been completed

within the time limited by section 6512; or *if the action has been*

settled, discontinued or ***abated***; or if the time to appeal from a final

judgment against the plaintiff has expired; or if enforcement of a

final judgment against the plaintiff has not been stayed pursuant

to section 551. [***emphasis added***]

The plain meaning of the word "abated," as used in CPLR § 6514 (a) is the ending of an action. "Abatement" is defined as "the act of eliminating or nullifying." (Black's Law Dictionary 3 [7th ed 1999]). "An action which has been abated is dead, and any further enforcement of the cause of action requires the bringing of a new action, provided that a cause of action remains (2A Carmody-Wait 2d § 11.1)." (*Nastasi v Natassi*, 26 AD3d 32, 40 [2d Dept 2005]). Further, *Nastasi* at 36, held that the "[c]ancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR § 6501 (*see 5303 Realty Corp. v O & Y Equity Corp., supra* at 320-321; *Rose v Montt Assets*, 250 AD2d 451, 451-452 [1d Dept 1998]; Siegel, NY Prac § 336 [4th ed])." Thus, the dismissal of the instant complaint must result in the mandatory cancellation of plaintiff DEUTSCHE BANKS's notice of pendency against the property "in the exercise of the inherent power of the court."

## *Conclusion*

Accordingly, it is

ORDERED, that the instant action, Index Number 10441/09, is dismissed with

prejudice; and it is further [*5]

ORDERED that the Notice of Pendency in this action, filed with the Kings

County Clerk on April 29, 2009, by plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF FEBRUARY 1, 2007, GSAMP TRUST 2007-FM2 , to foreclose on a mortgagefor real property located at 2155 Troy Avenue, Brooklyn, New York (Block 7842, Lot 11, County of Kings), is cancelled.

This constitutes the Decision and Order of the Court.

ENTER

_____

HON. ARTHUR M. SCHACK

J. S. C.

Return to Decision List



Filed: June 6, 2013

N THE SUPREME COURT OF THE STATE OF OREGON

BART G. BRANDRUP
and JESSICA D. BRANDRUP.
husband and wife,

Plaintiffs,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with BAC Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York,
as Trustee for The Certificate Holders Cwalt. Inc..
Alternative Loan Trust 2006-2CB, Mortgage Pass-through Certificates;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 311CV1390HZ

RUSSELL R. POWELL
and DIANE L. POWELL,
husband and wife,

Plaintiffs,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with BAC Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York, as Trustee for The Certificate Holders Cwalt, Inc.,
Alternative Loan Trust 2007-OH3,
Mortgage Pass-through Certificates, series 2007-OH3;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 311CV1399HZ

1

DEANIRA MAYO
and REYNALDA PAEZ PLANCARTE,

Plaintiffs,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with Bac Home Loans Servicing, LP;
DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee for the Certificate Holders of the Morgan Stanley ABS Capital I, Inc.,
Trust 2005-HE2,
Mortgage Pass-through Certificates, Series 2005-HE2;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 311CV1533SI

OMID MIRARABSHAHI,

Plaintiff,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with Bac Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York, as Trustee for The Certificate Holders of CWMBS, INC.,
CHL Mortgage Pass-Through Trust 2007-4,
Mortgage Pass-through Certificates, Series 2007-4;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 312CV0010HA
(SC S060281)

En Banc

On certified questions from the United States District Court; certification order
dated April 2, 2012, certification accepted July 19, 2012, argued and submitted January 8,
2013.

Jeffrey A. Myers, Bowles Fernández Law LLC, Lake Oswego, argued the cause for plaintiffs. With him on the briefs were Jeffrey A. Myers, John Bowles, and Rick Fernández.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, and Thomas M. Hefferon, Goodwin Proctor LLP, Washington DC, argued the cause for defendants ReconTrust Company, N.A.; Bank of America, N.A.; The Bank of New York Mellon; and Deutsche Bank National Trust Company. With them on the brief were Steven A. Ellis, Thomas W. Sondag, Pilar C. French, and Peter D. Hawkes.

Kevin H. Kono, Davis Wright Tremaine LLP, Portland, filed a brief on behalf of defendants Mortgage Electronic Registration Systems, Inc.

Rolf C. Moan, Assistant Attorney General, Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, filed a brief on behalf of *amicus curiae* State of Oregon.

Nanina D. Takla, Law Office of Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Sara Kobak, W. Michael Gillette, and Jordan Silk, Schwabe, Williamson & Wyatt, PC, Portland, filed a brief on behalf of *amicus curiae* Oregon Land Title Association.

Thomas W. Brown, Thomas M. Christ, and Robert E. Sabido, Cosgrave Vergeer Kester LLP, Portland, filed a brief on behalf of *amici curiae* Mortgate Bankers Association, Oregon Bankers Association, and Independent Community Banks of Oregon.

BREWER, J.

Certified questions answered.

Kistler, J., concurred in part and dissented in part, an filed an opinion in which Balmer, C.J., joined.

1        BREWER, J.

2        These cases come before this court on four certified questions of law from

3    the United States District Court for the District of Oregon. *See Brandrup v. ReconTrust*

4    *Co.*, 352 Or 320. 287 P3d 423 (2012) (accepting certified questions); ORS 28.200 to

5    28.255 (providing procedure for certifying questions to the Oregon Supreme Court and

6    authorizing court to answer certified questions). The questions all are concerned with a

7    practice that has arisen in the home mortgage industry in the last twenty years -- that of

8    drafting mortgages and trust deeds so that a certain Delaware corporation, Mortgage

9    Electronic Registration Systems, Inc. (MERS), rather than the lender, is identified as the

10   security instrument's "mortgagee" or "beneficiary." That practice allows lenders and

11   other entities dealing in home loans to track their transactions in a database maintained by

12   MERS. In Oregon, the practice has come under scrutiny in a number of foreclosure cases

13   arising under the Oregon Trust Deed Act (OTDA), ORS 86.705 to ORS 86.795.

14       As will be explained more fully below, the OTDA provides an alternative

15   to the traditional judicial foreclosure process that is available only when the home loan is

16   secured by a trust deed, and, even then, only when certain conditions are satisfied. One

17   condition for foreclosing under the OTDA is that "any assignments" of the trust deed by

18   the trust deed "beneficiary" be recorded in the real property records of the county where

19   the encumbered property is situated. ORS 86.735(1). Some homeowners threatened with

20   foreclosure under the OTDA have recognized that, although the original lenders

21   transferred their interests to other parties, the changes in beneficial ownership were not

22   recorded in the real property records of the counties where their properties are situated.

1

1    Those homeowners have resisted foreclosure under the OTDA on the ground that the

2    transfers were not recorded. They argue, *inter alia*, that ORS 86.735(1) requires the

3    recording of any assignment of a trust deed by the owner of the beneficial interest in the

4    trust deed and that the identification of MERS as the trust deed "beneficiary" is

5    ineffective.

6         Some cases filed in Oregon state courts that have raised these issues have

7    been removed to federal court, and the judges within the District of Oregon have used

8    differing analyses and reached differing conclusions. *See, e.g., Sovereign v. Deutsche

9    Bank*, 856 F Supp 2d 1203 (D Or 2012); *James v. ReconTrust Co*., 845 F Supp 2d 1145

10   (D Or 2012); *Reeves v. ReconTrust Co.*, 846 F Supp 2d 1149 (D Or 2012); *Beyer v. Bank

11   of America*, 800 F Supp 2d 1157 (D Or 2011). Recognizing that the issues turn on the

12   proper construction of Oregon statutes and that this court is the ultimate arbiter of such

13   matters, the district court in these cases certified the following questions to this court:

14         Certified Question No. 1:   May an entity, such as MERS, that is
15   neither a lender nor successor to a lender, be a 'beneficiary' as that term is
16   used in the Oregon Trust Deed Act?

17         Certified Question No. 2:   May MERS be designated as beneficiary
18   under the Oregon Trust Deed Act where the trust deed provides that MERS
19   "holds only legal title to the interests granted by Borrower in this Security
20   Instrument, but, if necessary to comply with law or custom, MERS (as
21   nominee for Lender and Lender's successors and assigns) has the right: to
22   exercise any or all of those interests"?

23         Certified Question No. 3:   Does the transfer of a promissory note
24   from the lender to a successor result in an automatic assignment of the
25   securing trust deed that must be recorded prior to the commencement of
26   nonjudicial foreclosure proceedings under ORS 86.735(1)?

27         Certified Question No 4:   Does the Oregon Trust Deed Act allow

2

1    MERS to retain and transfer legal title to a trust deed as nominee for the
2    lender, after the note secured by the trust deed is transferred from the lender
3    to a successor or series of successors?

4    We accepted the district court's certification and allowed the parties in the federal cases to

5    present their views. We answer those questions -- in two instances as reframed -- as

6    follows:

7       (1) "No." For purposes of ORS 86.735(1), the "beneficiary" is the lender
8           to whom the obligation that the trust deed secures is owed or the
9           lender's successor in interest. Thus, an entity like MERS, which is not
10          a lender, may not be a trust deed's "beneficiary," unless it is a lender's
11          successor in interest.

12      (2) We reframe the second question as follows:

13          *Is MERS eligible to serve* as beneficiary under the Oregon Trust Deed
14          Act where the trust deed provides that MERS "holds only legal title to
15          the interests granted by Borrower in this Security Instrument, but, if
16          necessary to comply with law or custom, MERS as nominee for
17          Lender and Lender's successors and assigns) has the right: to exercise
18          any or all of those interests"?

19          Answer: "No." A "beneficiary" for purposes of the OTDA is the
20          person to whom the obligation that the trust deed secures is owed. At
21          the time of origination, that person is the lender. The trust deeds in
22          these cases designate the lender as the beneficiary, when they provide:
23          "This Security Instrument secures to Lender: (i) the repayment of the
24          loan, and all renewals, extensions and modifications of the note; and
25          (ii) the performance of borrower's covenants and agreements under
26          this security instrument and the note." Because the provision that
27          MERS "holds only legal title to the interests granted by Borrower in
28          this Security Instrument, but, if necessary to comply with law or
29          custom, MERS * * * has the right to exercise any or all of those
30          interests," does not convey to MERS the beneficial right to repayment,
31          the inclusion of that provision does not alter the trust deed's
32          designation of the lender as the "beneficiary" or make MERS eligible
33          to serve in that capacity.

34      (3) "No." ORS 86.735(1) does not require recordation of "assignments"
35          of a trust deed by operation of law that result from the transfer of the
36          secured obligation.

3

1        (4) We answer the question, as reframed below, in two parts:

2        (4)(a) "Does the Oregon Trust Deed Act allow MERS to hold and transfer
3        legal title to a trust deed as nominee for the lender, after the note secured
4        by the trust deed is transferred from the lender to a successor or series of
5        successors?"

6        Answer: "No." For purposes of the OTDA, the only pertinent interests in
7        the trust deed are the beneficial interest of the beneficiary and the legal
8        interest of the trustee. MERS holds neither of those interests in these cases,
9        and, therefore, it cannot hold or transfer legal title to the trust deed. For
10      purposes of our answer to the first part of the fourth certified question, it is
11      immaterial whether the note secured by the trust deed has previously been
12      "transferred from the lender to a successor or series of successors."

13      (4)(b) "Does MERS nevertheless have authority as an agent for the
14      original lender and its successors in interest to act on their behalves with
15      respect to the transfer of the beneficial interest in the trust deed or the
16      nonjudicial foreclosure process?"

17      Answer: The power to transfer the beneficial interest in a trust deed or to
18      foreclose it follows the beneficial interest in the trust deed. The beneficiary
19      or its successor in interest holds those rights. MERS's authority, if any, to
20      perform any act in the foreclosure process therefore must derive from the
21      original beneficiary and its successors in interest. We are unable to
22      determine the existence, scope, or extent of any such authority on the
23      record before us.

24    As a preface to our explanation of those answers, we set out the following legal and

25    factual background.

26                  I. BACKGROUND

27    *A.*    *Mortgages, Trust Deeds, and the Oregon Trust Deed Act*

28            When a person borrows money to purchase a home, in Oregon as

29    elsewhere, the loan usually is memorialized in a promissory note that contains the

30    borrower's written, unconditional promise to pay certain sums at a specified time or

31    times. Generally, the borrower and lender also enter into a separately-memorialized

1    security agreement -- a mortgage or, more commonly in Oregon, a trust deed. *See*

2    *generally* Grant Nelson and Dale Whitman, *Real Estate Finance Law* §§ 2.1, 5.27, 5.28

3    (5th ed 2007); Joseph L. Dunne, *Enforcing the Oregon Trust Deed Act*, 49 Willamette L

4    Rev 77, 81-85 (2012). Oregon subscribes to the "lien theory," rather than the "title

5    theory," of mortgages. Under the title theory, the borrower conveys actual title to the

6    burdened property to the lender to secure the obligation to repay. Under the lien theory,

7    the borrower merely conveys a "right, upon condition broken, to have the mortgage

8    foreclosed and the mortgaged property sold to satisfy [the underlying debt]." *Schleef v.*

9    *Purdy*, 107 Or 71, 78, 214 P 137 (1923). Thus, in the traditional security arrangement --

10   the mortgage -- the borrower conveys to the lender a lien on the property being

11   purchased, to secure the promise to repay that is contained in a promissory note. If the

12   borrower defaults on the note, the lender, or the lender's successor in interest, may

13   exercise its right to sell the property to satisfy the obligation, but it must do so by

14   bringing a judicial action against the borrower. *Id.* at 75-79; ORS 88.010 (except as

15   otherwise provided by law, lien upon real property shall be foreclosed by a suit).

16           The OTDA, Or Laws 1959, ch 625, codified at ORS 86.705 to ORS 86.795,

17   was enacted in 1959 to provide an alternative to the judicial foreclosure process. Ronald

18   Brady Tippetts, *Note, Mortages -- Trust Deeds in Oregon*, 44 Or L Rev 149, 149-50

19   (1965). That nonjudicial alternative is available when the parties use a trust deed to

20   secure the loan. A trust deed is a deed executed under the OTDA that "conveys an

21   interest in real property to a trustee in trust to secure the performance of an obligation the

22   grantor or other person named in the deed owes to a beneficiary." ORS 86.705(7). The

5

1    OTDA permits the trustee appointed under a trust deed to advertise and sell the property

2    to the highest bidder without judicial involvement. ORS 86.710; ORS 86.755. Like a

3    mortgage, a trust deed creates a lien on real property to secure an underlying obligation in

4    the event of a default. *See* ORS 86.705(7); *see also Sam Paulsen Masonry v. Higley*, 276

5    Or 1071, 1075, 557 P2d 676 (1976) (mortgage or trust deed creates only lien on real

6    property). Indeed, a trust deed creates *two* distinct interests -- a legal interest and a

7    beneficial interest. First, a trust deed "conveys an interest in real property to a trustee in

8    trust to secure the performance of an obligation." ORS 86.705(7). That legal interest

9    includes the power to sell the obligated property in the manner prescribed in the statute

10    on the grantor's default. ORS 86.710. However, if the trustee utilizes its power of sale,

11    the proceeds of the sale, after expenses, must be applied "to the obligation secured by the

12    trust deed" -- that is, to satisfy the obligation that the borrower owes to the beneficiary.

13    ORS 86.765(2). Accordingly, the trustee holds and exercises its legal interest in the

14    encumbered property for the benefit of the trust deed's "beneficiary" -- the person "named

15    or otherwise designated in [the] trust deed as the person for whose benefit [the] trust deed

16    is given." ORS 86.705(1). The second interest that is created by a trust deed -- the

17    beneficial or equitable interest in the lien granted therein -- thus is held by the

18    beneficiary. That interest is the security for the performance of the obligation that is

19    owed to the beneficiary. ORS 86.705(7).

20           A trustee may conduct a nonjudicial foreclosure sale only when certain

21    conditions are satisfied. *See* ORS 86.735 (setting out conditions). Those conditions

22    include: (1) recording of "[t]he trust deed, any assignments of the trust deed by the

6

1    trustee or the beneficiary and any appointment of a successor trustee * * * in the

2    mortgage records of the counties in which the property described in the deed is situated,"

3    ORS 86.735(1); (2) a default on the obligation, "the performance of which is secured by

4    the trust deed," ORS 86.735(2); (3) recording of a notice of default containing the

5    trustee's or beneficiary's election to sell the property to satisfy the obligation, ORS

6    86.735(3); and (4) the absence of any pending or completed action for recovery of the

7    debt, with limited exceptions. *See, e.g.*, ORS 86.735(4).

8        In addition to those conditions, the OTDA prescribes notice requirements

9    that protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of

10   property. Among other things, a trustee is required to provide to the grantor and other

11   interested parties at least 120 days' advance notice of the trustee's sale. ORS 86.740(1).

12   Although judicial involvement is not required to complete a foreclosure by advertisement

13   and sale, the 120-day advance notice period gives a grantor time to seek judicial

14   intervention in certain circumstances, as plaintiffs in these cases have done.

15       The grantor has a right to cure the default at any time up to five days

16   before the date last set for the sale. ORS 86.753. If the trustee has complied with the

17   statutory notice requirements and the default is not cured, the trustee may sell the

18   property at a public auction to the highest bidder without judicial oversight. ORS 86.755.

19   In contrast to the judicial foreclosure process, a grantor has no statutory right to redeem

20   the property after a completed trustee's sale. *Compare* ORS 88.080 (providing right of

21   redemption after sale) *with* ORS 86.770(1) (trustee's sale forecloses and terminates

22   interests in property of any person to whom required notice of the sale was given). After

7

1    a trustee's sale, the trustee must execute and deliver a trustee's deed to the purchaser,

2    which must recite details of the foreclosure. ORS 86.775. If the trustee's deed is

3    recorded in the pertinent county records, the facts recited in the deed are considered

4    *prima facie* evidence of the truth of the matters set forth therein, and are conclusive in

5    favor of a purchaser for value who relies on them in good faith. ORS 86.780.

6              Of course, only a small portion of the property transactions involving trust

7    deeds end in foreclosure. If the borrower repays the loan secured by the trust deed in full,

8    the trustee must "reconvey the estate of real property described in the trust deed" (that is,

9    release the lien on the property) to the borrower, ORS 86.720, and that reconveyance may

10   be publicly recorded in the pertinent real property records.

11   *B.       Assignment and Recording of Trust Deeds*

12             Mortgages or trust deeds may be transferred in a variety of ways. By

13   statute, mortgages may be "assigned by an instrument in writing," and such written

14   assignments may be recorded in the pertinent real property records. ORS 86.060

15   ("mortgages may be assigned by an instrument in writing * * * and recorded in the

16   records of mortgages of the county where the land is situated").[1] But mortgages also

17   have been held to "follow" the promissory notes that they secure so that, by operation of

18   law, the sale or transfer of a promissory note effects an equitable transfer of the mortgage

---

[1]       Although that statute initially was enacted with mortgages in mind, it
applies equally to trust deeds. *See* ORS 86.715 ("a trust deed is deemed to be a mortgage
on real property and is subject to all laws relating to mortgages on real property except to
the extent that such laws are inconsistent with [the OTDA]").

1    that secures that note. *Bamberger v. Geiser*, 24 Or 203, 206-07, 33 P 609 (1893) ("where

2    a debt is secured by mortgage, the debt is the principal and the mortgage is the incident,

3    and * * * an assignment of the debt is an assignment of the mortgage"); *Barringer v.*

4    *Loder*, 47 Or 223, 229, 81 P 778 (1905) (same).[2]

5              Although the recordation of a mortgage or trust deed assignment generally

6    is not required to make the transfer legally effective between the parties, it is necessary

7    and desirable for protecting an assignee's interest under the security instrument against a

8    purchaser in good faith for valuable consideration. *See Willamette Col. & Credit Serv. v.*

9    *Gray*, 157 Or 77, 83, 70 P2d 39 (1937) (assignee of mortgage was not obliged to take and

10   record written assignment to acquire title as between immediate parties but was required

11   to do so to maintain lien against innocent purchaser); *see also* ORS 93.640 (every

12   conveyance, deed, or assignment affecting an interest in real property which is not

13   recorded as provided by law is void as against any subsequent purchaser in good faith for

14   valuable consideration). The recordation of a trust deed assignment is necessary for an

15   additional reason: As described above, __ Or at __ (slip op at 6-7), the trust deed and

16   "any assignments of the trust deed by the trustee or the beneficiary" must be recorded in

17   the relevant land records before the nonjudicial foreclosure procedure set out at ORS

18   86.740 - ORS 86.755 may be invoked. ORS 86.735(1).

19   *C.    The MERS Corporation*

---

    [2]    Again, that principle applies equally when the promissory note is secured
by a trust deed; the trust deed follows the note by operation of law.

9

1        MERS is a creature of the real estate finance industry. In the mid-1990's,

2    large players in the industry, including the Federal National Mortgage Association

3    (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), decided

4    to create a database that would electronically track ownership in secured real estate loans

5    as they were bought and sold in a secondary market, generally in packages now known as

6    mortgage-backed securities. R. K. Arnold, *Yes, There is Life on MERS*, 11 Prob & Prop

7    33, 33-34 (1997). They created MERSCorp Holdings, a "member-based organization

8    made up of thousands of lenders, servicers, sub-servicers, investors and government

9    institutions." *See MERSCORP Holdings, Inc.*, http://www.mersinc.org/about-us/faq

10   (accessed May 22, 2013). The primary product of MERSCorp Holdings was and is the

11   "MERS System," a "national electronic database that tracks changes in mortgage

12   servicing and beneficial ownership interests in loans secured by residential real estate."

13   *Id.*

14       But there is another significant aspect of MERS; that entity serves as the

15   designated mortgagee or beneficiary, as the nominee of the lender, for all mortgages and

16   trust deeds registered in the MERS System. *Id.* Christopher L. Peterson, *Foreclosure,*

17   *Subprime Lending, and the Mortgage Electronic Registration System*, 78 U Cincinnati L

18   Rev 1359, 1361-62 (2009). MERS, however, does not make, service, or invest in loans.

19   *Id.* at 1371.

20   *D.*    *The Trust Deeds and Plaintiffs' Challenges*

21       The certified questions that are before this court arise out of four separate

22   actions challenging a trustee's attempt to nonjudicially foreclose a trust deed securing

10

1    residential property. In each case, homeowners (collectively. "plaintiffs") financed the

2    purchase of a residence in Oregon with a loan from a lender that is a member of MERS.

3    In each case, the homeowners signed (1) a promissory note pledging to repay the money

4    borrowed, plus interest, according to a prescribed schedule and by a specified date, and

5    (2) a "Deed of Trust," granting to a named trustee the property they had purchased with

6    the loan. "in trust, with power of sale," to secure the payment of the promissory note and

7    other related promises.

8        Except for the names and property descriptions, the trust deeds in the four

9    cases are identical. In a "definition" section, each trust deed identifies the "Borrower,"

10   "Lender" and "Trustee" by name, and then sets out the following definition of "MERS":

11       "'MERS' is Mortgage Electronic Registration System, Inc. MERS is
12       a separate corporation that is acting solely as a nominee for Lender and
13       Lender's successors and assigns. MERS is the beneficiary under this
14       Security Instrument."

15   In a section entitled "Transfer of Rights in the Property," the trust deed states:

16       *"The beneficiary of this Security Instrument is MERS (solely as*
17       *nominee for Lender and Lender's successors and assigns) and the*
18       *successors and assigns of MERS. This Security Instrument secures to*
19       *Lender: (i) the repayment of the Loan, and all renewals, extensions and*
20       *modifications of the Note, and (ii) the performance of Borrower's covenants*
21       *and agreements under this Security Instrument and the Note. For this*
22       purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with
23       power of sale, the following described property * * * , [t]ogether with all
24       the improvements now or hereafter erected on the property, and all
25       easements, appurtenances, and fixtures now or hereafter a part of the
26       property. All replacements and additions shall also be covered by this
27       Security Instrument. All of the foregoing is referred to in this Security
28       Instrument as the Property. *Borrower understands and agrees that MERS*
29       *holds only legal title to the interests granted by Borrower in this Security*
30       *Instrument, but, if necessary to comply with law or custom, MERS (as*
31       *nominee for Lender and Lender's successors and assigns) has the right: to*

11

1　　*exercise any or all of those interests, including, but not limited to, the right*
2　　*to foreclose and sell the Property, and to take any action required of*
3　　*Lender including, but not limited to, releasing and canceling this Security*
4　　*Instrument.*

5　　(Emphases added.)

6　　　　　Those provisions appear to turn the traditional three-party trust deed

7　　arrangement -- debtor/grantor, trustee, and lender/beneficiary -- into a four-party

8　　arrangement, with the functional role of the beneficiary being split between two entities.

9　　Although the benefit of the trust deed is reserved to the "Lender" (because the trust deed

10　　"secures to the Lender" the obligations of repayment and performance of other

11　　covenants), MERS purports to be the beneficiary "as nominee for Lender and Lender's

12　　successors and assigns."

13　　　　　Plaintiffs in all four cases signed the promissory notes and trust deeds as

14　　described, and, after a period of years, allegedly defaulted on their loans. Following each

15　　default, MERS executed a written assignment of the trust deed to the reputed ultimate

16　　successor in interest of the original lender and recorded that assignment in the pertinent

17　　real property records. Each of those assignees then appointed a new trustee, ReconTrust

18　　Company, N.A., and that assignment also was recorded. Thereafter, ReconTrust, as

19　　trustee, commenced the process of nonjudicial foreclosure under each trust deed, issuing

20　　notices of the grantor's default and the trustee's election to sell.

21　　　　　In all four cases, plaintiffs brought an action in state court against

22　　ReconTrust, MERS, and the reputed ultimate successor in interest of their original lender,

23　　seeking to enjoin the nonjudicial foreclosure proceeding on a number of grounds,

12

1    including that (1) a condition for nonjudicial foreclosure had not been satisfied --

2    specifically, the requirement in ORS 86.735(1) that any assignments of the trust deed by

3    the "beneficiary" be publicly recorded in the pertinent real property records; and (2)

4    MERS's purported assignment of the trust deed to the reputed ultimate successor in

5    interest was ineffective, because, at the time of the purported assignment, "the principal

6    for whom MERS purported to act as 'beneficiary' did not hold plaintiff's loan at that

7    date." Defendants removed the cases to federal court, and then filed motions to dismiss

8    under FRCP 12 (b)(6), arguing that MERS was the lawful beneficiary under the trust

9    deeds, that all assignments of the trust deeds by the named "beneficiary," MERS, had

10    been recorded, and that ORS 86.735(1) did not require assignments of the trust deeds by

11    the lenders to be recorded. The federal district court certified the questions set out above

12    to this court. We consider the questions in order.

13                          II. FIRST CERTIFIED QUESTION

14            "May an entity, such as MERS, that is neither a lender nor successor
15        to a lender, be a 'beneficiary' as that term is used in the Oregon Trust Deed
16        Act?"

17            This question is one of statutory construction, which we approach using the

18    methodology described in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We focus

19    first on the text, context, and any legislative history brought to our attention by the parties

20    that we find useful, and proceed to general maxims of statutory construction if the

21    legislature's intent remains obscure. *Id. at* 171-72. The pertinent text is the definition of

22    "beneficiary" that appears in ORS 86.705:

23            "As used in ORS 86.705 to 86.795 [that is, the Oregon Trust Deed

13

1    Act]:

2                    "* * * * *

3            "(2) 'Beneficiary' means a person named or otherwise designated in a
4    trust deed as the person for whose benefit a trust deed is given, or the
5    person's successor in interest, and who is not the trustee unless the
6    beneficiary is qualified to be a trustee under ORS 86.790(1)(d)." [3]

7    There is no dispute about the meaning of the last clause. Rather, the parties square off

8    over the meaning of the requirements that the person (1) be "named or otherwise

9    designated in [the] trust deed," (2) "as the person for whose benefit the trust deed is

10   given." Taking the latter phrase first, the "benefit" of a trust deed is the security it

11   provides with respect to an obligation owed by the grantor to the beneficiary. That is

12   made clear in many of the surrounding statutes. For example, as noted, the term "trust

13   deed" is defined as "a deed executed in conformity with ORS 86.705 to 86.795 that

14   conveys an interest in real property to a trustee in trust *to secure the performance of an*

15   *obligation the grantor or other person named in the deed owes to a beneficiary*." ORS

---

[3]        We use the current version of the statute, which is numbered differently but
does not otherwise vary materially from the version in effect when the parties signed the
trust deeds. That version, ORS 86.705 (2005), provided:

    "As used in ORS 86.705 - 86.795, *unless the context requires
otherwise*:

    "(1) 'Beneficiary' means *the* person named or otherwise designated
in a trust deed as the person for whose benefit a trust deed is given, or the
person's successor in interest, and who *shall not be* the trustee unless the
beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

(Differences in italics.)

14

1    86.705(7) (emphasis added). Similarly, "grantor" is defined as "the person that conveys

2    an interest in real property by a trust deed *as security for the performance of an*

3    *obligation.*" ORS 86.705(4) (emphasis added). Finally, ORS 86.710, which generally

4    describes the power of a trustee to nonjudicially foreclose, begins with a general

5    description of a trust deed: "Transfers in trust of an interest in real property may be made

6    *to secure the performance of an obligation of a grantor*, or any other person named in the

7    deed, *to a beneficiary.*" (Emphasis added.) Thus, the person "for whose benefit the trust

8    deed is given" is the person to whom the grantor owes an obligation, the performance of

9    which the trust deed secures.

10            That analysis, however, speaks only to the second half of the wording of

11    the definition. Plaintiffs suggest that the initial phrase "the person named or otherwise

12    designated as" means that the trust deed must identify (name or otherwise designate) the

13    person who meets the definition of "beneficiary" as that term is used in the statute.

14    Defendants contend, to the contrary, that the legislature used that phrase to signify that

15    that the parties to the trust deed could agree to "name" or "designate" whomever they

16    chose to serve "as" beneficiary -- and that, for purposes of ORS 86.705(2), the

17    "beneficiary" would be the person so designated. Thus, as defendants conceive it,

18    designation of a beneficiary is purely a matter of contract. Plaintiffs' contrary

19    interpretation, defendants assert, essentially turns the initial phrase of the definition into

20    surplusage, violating a fundamental principle of statutory construction set out at ORS

21    174.010; that is, "not * * * to omit what has been inserted."

22            We do not agree that plaintiffs' reading removes the phrase "named or

15

1    otherwise designated as" from the statute. As noted above, plaintiffs read the statutory
2    definition as providing that, *in addition to* being the person "for whose benefit the trust
3    deed is given," the beneficiary must be "named or otherwise designated" as such *in the*
4    *trust deed*. That reading uses all of the words of the statute. Indeed, we find plaintiffs'
5    reading of the definition to be more compelling, on a purely textual level, than
6    defendants'. If defendant's reading were correct, then *anyone* -- even a person with no
7    connection to or interest in the transaction at all -- could be designated in the agreement.
8    If the legislature had intended "beneficiary" to have the circular meaning that defendants
9    suggest -- that "beneficiary" means whomever the trust deed *names* as the "beneficiary" --
10   it would have had no reason to include any description of the beneficiary's functional role
11   in the trust arrangement. The fact that the statute *does* include such a description ("the
12   person for whose benefit the trust deed is given") strongly suggests that the legislature
13   intended to define "beneficiar[ies]" by their functional role, not their designation. Stated
14   differently, by including such a functional description, it is apparent that the legislature
15   intended that the beneficiary of the trust deed be the person to whom the obligation that
16   the trust deed secures is owed.

17           As discussed, in a typical residential trust deed transaction, the obligation
18   secured by the trust deed is memorialized in a promissory note that contains a borrower's
19   promise to repay a home loan to a lender. At inception, the lender is the person who is
20   entitled to repayment of the note and, thus, functionally is "the person for whose benefit
21   the trust deed is given." That person's "successor in interest," whom ORS 86.705(2) also
22   recognizes as a beneficiary, is a person who succeeds to the lender's rights.

16

1       Defendants contend that another provision of the OTDA, ORS 86.720(3),

2   undermines that construction of ORS 86.705(2). ORS 86.720 addresses the circumstance

3   in which the obligation secured by a trust deed has been satisfied, but either the

4   beneficiary or trustee has failed or refused to release the trust deed. In such a

5   circumstance, where a title insurance company or insurance producer has satisfied the

6   obligation through an escrow, ORS 86.720(1) authorizes the insurer, in a backup role, to

7   issue and record a release of the trust deed to clear title. In that context, ORS 86.720(3)

8   provides:

9           "Prior to the issuance and recording of a release [of the lien upon
10      performance of the obligation secured by the trust deed], the title insurance
11      company or insurance producer shall give notice of the intention to record a
12      release of trust deed to the *beneficiary of record and, if different, the party*
13      *to whom the full satisfaction was made.*"

14   (Emphasis added.)

15      Defendants assert that the emphasized text shows that the legislature

16   understood that the "beneficiary" need not be the lender or the lender's successor in

17   interest. We do not agree that the statutory text necessarily -- or even probably -- bears

18   such a construction. It is equally, if not more plausible, to conclude that the phrase "if

19   different, the party to whom the full satisfaction was made," was meant instead to

20   acknowledge the circumstance where a lender's successor in interest is not the

21   beneficiary "of record," but is entitled to repayment of the underlying obligation.

22   Ironically, that is precisely the circumstance that defendants assert permissibly occurred

23   in these cases and that is the subject of the third certified question discussed below.

24   When the statute is viewed in that light, it reinforces the conclusion that the beneficiary is

17

1   the lender or the lender's successor in interest. In short, ORS 86.720(3) does not furnish

2   persuasive context that supports defendants' proposed meaning of the term "beneficiary"

3   under the OTDA.

4           Defendants next contend that the statutory meaning of "beneficiary" must

5   be interpreted in the context of common law principles of agency, freedom of contract,

6   and commercial law. Defendants point to case law showing that Oregon recognizes that

7   an agent, even one without a pecuniary interest, may engage in land transactions and hold

8   title on behalf of a principal. *See, e.g., Halleck v. Halleck et al.*, 216 Or 23, 38, 337 P2d

9   330 (1959) ("'Conveyances of lands * * * may be made by deed, signed by the person * *

10  * or by his lawful agent'") (quoting *former* ORS 93.010)); *Bowns v. Bowns*, 184 Or 603,

11  613, 200 P2d 586 (1948) (estate or interest in real property may be transferred by one's

12  "'lawful agent, under written authority'") (quoting *former* ORS 93.020)); *Kern v.*

13  *Hotaling*, 27 Or 205, 207, 40 P 168 (1895) (note and mortgage executed to member of

14  brokerage firm as agent for principal).[4]  Defendants also point to the "bedrock" principle

15  that "contracts, when entered into freely and voluntarily, shall be held sacred and shall be

16  enforced by courts," unless contrary to some "overpowering rule of public policy."

17  *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982) (quoting *Feves v.*

18  *Feves*, 198 Or 151, 159-60, 254 P2d 694 (1953)). Defendants assert that proper

---

[4]     Defendants also cite a federal case, *In re Cushman Bakery*, 526 F2d 23, 30
(1st Cir 1975) *cert den*, 425 US 937 (1976) for the proposition that a lien may be
recorded in the name of a nominee.

18

1    consideration of those common law principles in interpreting the trust deed statutes

2    supports their reading that ORS 86.735(1) allows someone other than an obligee to be the

3    "beneficiary," either because the parties have freely and voluntarily agreed to designate

4    someone else as the beneficiary or because the obligee has chosen to have someone act as

5    its agent or nominee. More specifically -- although the premise is implicit -- the core of

6    defendants' "freedom of contract" argument appears to be that, although MERS has no

7    right to repayment of the notes in these cases, it nevertheless may be designated by

8    contract as the beneficiary for other functions, in particular those functions relating to the

9    control of the foreclosure process.

10    We disagree. The resolution of this question does not hinge on the parties'

11    intent; rather, it depends on legislative intent. That is, the OTDA authorizes nonjudicial

12    foreclosure only when certain statutory requirements are met. In these circumstances, the

13    meaning of "beneficiary," as used in ORS 86.735(1), is determined by statute, and that

14    meaning is incorporated into, and cannot be altered by, the party's agreement. *See, e.g.*

15    *Ocean A. & G. Corp., Ltd. v. Albina M. I. Wks.*, 122 Or 615, 617, 260 P 229 (1927) ("law

16    of the land applicable thereto is a part of every valid contract"); *see also*, R. Lord, 11

17    *Williston on Contracts* § 30:24 (4th ed 1999) ("[i]ncorporation of existing law may act to

18    supersede inconsistent clauses purporting to define the terms of the agreement. For

19    instance, where a statute regulates the amount the government is to pay for a particular

20    service, the statute controls despite a contract between the government and the provider

21    of the service agreeing to a lower rate."). If the legislature had intended to make the

22    parties' agreement paramount over the statute in this regard, it could have, and likely

1    would have, included an "unless otherwise agreed" caveat, as it has in some statutes. *See,*

2    *e.g.,* ORS 72.3070 ("*Unless otherwise agreed,* all goods called for by a contract for sale

3    must be tendered in a single delivery * * *."). But, in light of the structure of the OTDA,

4    it is unsurprising that it did not do so.

5          The OTDA contemplates a unitary beneficiary status, so that the person

6    with the right to repayment of the underlying obligation also controls the foreclosure

7    process. The interaction of a number of statutory provisions demonstrates the point. For

8    example, ORS 86.710 gives the *beneficiary* the power to decide whether to foreclose

9    judicially or nonjudicially. Under ORS 86.720, the *beneficiary* must request

10   reconveyance after the secured obligation is satisfied. ORS 86.737(2)(b)(B) provides that

11   notice to the grantor of a foreclosure sale must include "a telephone number that will

12   allow the grantor access during regular business hours to person-to-person consultation

13   with an individual authorized by the beneficiary to discuss the grantor's payment and loan

14   term negotiation and modification." In addition, under ORS 86.745(1), a notice of sale

15   must include the name of the "beneficiary." ORS 86.753(1) provides that the grantor

16   (and others) may cure a default before a foreclosure sale by making payment, and paying

17   costs and expenses "to the beneficiary." ORS 86.759(5) provides that statutory

18   requirements that the trustee provide default and cure-related information to the grantor

19   and others "do not affect the duty of beneficiaries to provide information to grantors."

20   And, significantly, it is the beneficiary alone who has authority to appoint a successor

21   trustee. ORS 86.790(3). In sum, the integrated effect of those provisions presumes that

22   the collective rights and obligations that define beneficiary status are functionally united;

20

1    that is, the person entitled to repayment of the secured obligation also controls the

2    foreclosure process.

3            That functional unity has longstanding roots in the common law itself. A

4    fundamental principle in mortgage law holds that a foreclosing party must have the

5    power to enforce the underlying note. *See United States Nat. Bank v. Holton*, 99 Or 419,

6    429, 195 P 823 (1921) ("It has always been the law of this state that the assignment of the

7    note carries the mortgage * * *. The assignment of a mortgage independent of the debt

8    which it is given to secure, is an unmeaning ceremony."). That concern underlies the

9    standard doctrine in judicial foreclosure proceedings that the foreclosing party must

10   provide proof that it has the power to enforce the note. *See generally* Alan M. White,

11   *Losing the Paper -- Mortgage Assignments, Note Transfers and Consumer Protection*, 24

12   Loy Consumer L Rev 468, 476-77 (2012) (collecting cases).

13           Neither can the statutory meaning of "beneficiary" yield to an obligee's

14   decision to use another party as its agent or nominee. Although the cases and statutes

15   cited by defendants show that a lawful agent can have broad authority to *act* on a trust

16   deed beneficiary's behalf in regard to the exercise of rights under the trust deed, even to

17   the point of appearing on documents in the beneficiary's stead, the agent cannot *become*

18   the "beneficiary" for purposes of a statutory requirement that is defined, in part, by the

19   status of the "beneficiary." To reinforce the point, the legislature, in recent amendments

20   to the OTDA, has plainly distinguished between a beneficiary and its agents in the

21   nonjudicial foreclosure context. *See, e.g.*, ORS 86.735(4) (requiring either "the

22   beneficiary or the beneficiary's agent" to certify compliance with statutory requirements

21

1 as a condition of nonjudicial foreclosure).[5] Here, the "beneficiary" to which ORS

2 86.735(1) refers must be "the person for whose benefit the trust deed [was] given," that is

3 (as discussed), the person to whom the obligation that the trust deed secures is owed or

4 that person's successor in interest. By the terms of the trust deeds at issue in these cases,

5 those persons are the lenders ("[t]his Security Instrument secures *to Lender*: (i) the

6 repayment of the Loan") or their successors. Unless the lenders have transferred such

7 interests to their agents or nominees, the latter persons cannot become "beneficiaries" for

8 purposes of the OTDA.[6] [7]

9      In sum, our answer to the first question certified by the district court is as

10 follows: For purposes of ORS 86.735(1), the "beneficiary" is the lender to whom the

11 obligation that the trust deed secures is owed or the lender's successor in interest. Thus,

12 an entity like MERS, which is not a lender, may not be a trust deed's "beneficiary," unless

13 it is a lender's successor in interest.

---

[5] The 2012 legislature significantly amended the OTDA. The quoted wording from ORS 86.735(4) was one of the amendments. Or Laws 2012, ch 112, § 6.

[6] We discuss defendants' other arguments pertaining to the law of agency, including their argument that MERS, as the lender's "nominee," may hold "legal title" to the lender's rights under the trust deed, in our answer to the fourth certified question.

[7] Defendants also argue that the legislative history of the OTDA supports their interpretation of the statute and have included portions of the legislative history in support of that claim. Defendants' theory is that, insofar as the legislative history discloses that the legislature's general purpose in enacting the OTDA was to provide a simpler and more economical method of foreclosure to attract more lenders to Oregon, an interpretation that permits the parties to contractually appoint a beneficiary would advance that purpose. We do not find the proffered history, or defendants' theory of its relevance, to be helpful, and do not discuss it further.

22

1                      III. SECOND CERTIFIED QUESTION

2       "May MERS be designated as beneficiary under the Oregon Trust
3   Deed Act where the trust deed provides that MERS 'holds only legal title to
4   the interests granted by Borrower in this Security Instrument, but, if
5   necessary to comply with law or custom, MERS (as nominee for Lender
6   and Lender's successors and assigns) has the right: to exercise any or all of
7   those interests'?"

8              This question goes to defendants' theory that, under the OTDA, MERS is

9   eligible to serve as "beneficiary" of a trust deed in a role as the obligee's agent or

10  nominee. The theory behind the question is: If ORS 86.705(2), in fact, defines

11  "beneficiary" in terms of a beneficiary's function in the trust arrangement, which function

12  is defined, in turn, by the beneficiary's rights that are secured by the trust deed, then an

13  agent or nominee who has been delegated sufficient rights should qualify as a beneficiary

14  under the statute. Defendants contend that the obligees that MERS serves, as agent or

15  nominee, have delegated to MERS sufficient rights for that purpose. Because the more

16  precise question is whether MERS is eligible to serve as a beneficiary under the OTDA,

17  not whether it may be "designated" as such, we amend the certified question and answer

18  it accordingly.

19             Defendants argue, first, that by defining MERS as the beneficiary "acting

20  solely as a nominee for Lender and Lender's successors and assigns," the trust deeds in

21  these cases clearly convey an intention that MERS act as the lender's or its successors'

22  agent. Defendants also contend that MERS's agreement with its members explicitly

23  provides that MERS will serve as the members' common agent -- allowing MERS to act

24  as agent or nominee for the initial lender and any successors in interest who are members

1    of MERS.[8] Finally, defendants point to wording in the trust deeds that purports to

2    authorize MERS to exercise all of the lender's rights under the trust deeds:

3        "Borrower understands and agrees that MERS holds only legal title to the
4        interests granted by Borrower in this Security Instrument, *but, if necessary*
5        *to comply with law or custom, MERS (as nominee for Lender and Lender's*
6        *successors and assigns) has the right: to exercise any or all of those*
7        *interests, including, but not limited to, the right to foreclose and sell the*
8        *Property, and to take any action required of Lender including, but not*
9        *limited to, releasing and canceling this Security Instrument.*"

10   Defendants argue that if MERS, as the obligee's nominee, must have some or all of the

11   obligee's rights to qualify as the trust deed beneficiary for purposes of ORS 86.705(3),

12   then the broad delegation of power to MERS contained in the quoted provision would be

13   sufficient to make MERS eligble to serve as the "beneficiary."

14          It is unspoken, but evident, that the necessity to which the above provision

15   refers is the necessity of having MERS be recognized as the trust deed beneficiary for

16   purposes of any requirement that must be satisfied before the trust deed may be

17   nonjudicially foreclosed. That the provision imbues the word "necessary" with an

18   unnatural meaning, with the result that the provision is circular, does not render the

---

        [8]    The MERS membership agreement is not in the record, but MERS asserts,
in its brief to this court, that the agreement provides that "MERS shall at all times comply
with the instruction of the beneficial owner of mortgage loans," and that it grants MERS
authority to "execute important documents, foreclose and take all other actions necessary
to protect the interests of the noteholder." Defendants also note that other courts have
determined, in cases in which the MERS membership agreement *was* placed in the
record, that the agreement spells out MERS's duties to its members in those terms.
Neither defendants' bare assertions nor the cases cited provide a basis for this court to
determine what the agreements actually provide in the cases before the district court.

24

1    provision unenforceable, as plaintiffs seem to suggest. We accept the provision in the

2    way it apparently was intended: It is triggered by any apparent deficiency in MERS's

3    authority to serve as beneficiary, and, according to defendants' theory, results in the

4    delegation to MERS of *any* of the obligee's rights or interests that MERS might be

5    required to have for that purpose.

6            The problem with defendants' theory, however, is that, while asserting

7    MERS's authority to exercise *all* of the obligee's rights and interests, the provision fails

8    to speak to the *one* interest that an entity must have to qualify as a beneficiary under ORS

9    86.705(2). As discussed above, ___ Or at ___ (slip op at 22), the beneficiary under that

10   definition is the person to whom the obligation that the trust deed secures is owed.

11   Unless the "law or custom" provision transforms MERS into such an obligee, it cannot

12   transform MERS into the "beneficiary" of the trust deed.

13           And it is clear that the "law or custom" provision does not have that legal

14   effect. The provision first states that MERS holds "only legal title to the interests *granted*

15   *by Borrower* in this Security Instrument." When the provision thereafter states that

16   MERS has the right "to exercise any or all of *those* interests," if necessary to comply with

17   law or custom, it refers to the interests "granted by the borrower in this security

18   instrument." But the interests that are granted by the grantor in a trust deed are different

19   from the right to repayment under a related promissory note. As discussed above. ___ Or

20   at ___ (slip op at 6), the grantor conveys two interests by signing a trust deed: to the

21   trustee, a legal interest in the subject real property, which may be foreclosed upon the

22   obligor's default on the underlying obligation; and to the beneficiary, the beneficial

25

1    counterpart to that legal interest. In each of the four trust deeds that are at issue, the first

2    (legal) interest is conveyed in the following sentence in the "Transfer of Rights in the

3    Property" provision: "Borrower irrevocably grants and conveys to Trustee, in trust, with

4    power of sale, the following described property." That the lender obtains the *benefit* of

5    the legal interest that is granted to the trustee is conveyed in the preceding sentence:

6        "This Security Instrument secures to Lender: (i) the repayment of the Loan,
7        and all renewals, extensions and modifications of the Note, and (ii) the
8        performance of Borrower's covenants and agreements under this Security
9        Instrument and the Note."

10   Thus, the interests and rights that were "granted by the borrower under this security

11   instrument" were only (1) a legal interest in the property that the trust deed burdens, in

12   the form of a lien; and (2) an equitable or beneficial interest in that lien.

13            In contrast, in these cases, the interest in the secured obligation that a party

14   must have to qualify as the trust deed's "beneficiary" -- the obligation that the trust deed

15   secures -- is the right to repayment of the obligation. Although *related* to the above-

16   mentioned interests that are granted in the trust deed by the grantor, that right to

17   repayment is not one of those interests. That is, the obligee's right to repayment is

18   *secured* by the lien on the property that the grantor grants in the trust deed, but that right

19   exists apart from the trust deed and is not "granted by the borrower in the [trust deed]." It

20   follows that, even if the "law or custom" clause were triggered so that the right to

21   exercise "any or all" interests granted in the trust deed by the borrower was delegated to

22   MERS, MERS still would not have an interest that would qualify it as the trust deed's

26

1   beneficiary.[9]

2           To conclude: A "beneficiary" for purposes of the OTDA is the person to

3   whom the obligation that the trust deed secures is owed. At the time of origination, that

4   person is the lender. The trust deeds in these cases designate the lender as the

5   beneficiary, when they provide: "This Security Instrument secures to Lender: (i) the

6   repayment of the loan, and all renewals, extensions and modifications of the note; and (ii)

7   the performance of borrower's covenants and agreements under this security instrument

8   and the note." Because the provision that MERS "holds only legal title to the interests

9   granted by Borrower in this Security Instrument, but, if necessary to comply with law or

10  custom, MERS * * * has the right to exercise any or all of those interests," does not

11  convey to MERS the beneficial right to repayment of the secured obligation, the inclusion

12  of that provision does not alter the trust deed's designation of the lender as the

13  "beneficiary" or make MERS eligible to serve in that capacity.

14                          IV. THIRD CERTIFIED QUESTION

15          "Does the transfer of a promissory note from the lender to a
16  successor result in an automatic assignment of the securing trust deed that
17  must be recorded prior to the commencement of nonjudicial foreclosure
18  proceedings under ORS 86.735(1)?"

---

        [9]     Moreover, the "law or custom" provision purports to delegate to MERS the
right "to exercise" any of the interests granted in the trust deed by the grantor; it does not
purport to actually convey those interests to MERS. Given that the OTDA defines
"beneficiary" in terms of an interest that the beneficiary *has* (the right to payment that the
trust deed secures), and not in terms of the interests that the beneficiary does or may
*exercise*, it is doubtful that conveying to MERS a right "to exercise" the beneficiary's
interest could bring MERS within the statutory definition.

27

1                     As we already have mentioned, ___ Or at ___ (slip op at 8-9), Oregon law

2   provides that the transfer of a promissory note that is secured by a mortgage

3   automatically effects, by operation of law, an assignment of the mortgage. Because a

4   trust deed is a species of mortgage and is "subject to all laws relating to mortgages on real

5   property," ORS 86.715, the same principle applies to trust deeds: A trust deed follows

6   the promissory note that it secures. The third certified question thus asks whether such

7   assignments by operation of law are included in the statutory requirement of ORS

8   86.735(1) that "any assignments of the trust deed by the * * * beneficiary * * * [be]

9   recorded" in the pertinent real property records. If the answer to that question is "yes,"

10  then the fact that the promissory notes have been transferred without corresponding

11  recorded assignments of the trust deeds would stand as a bar to nonjudicial foreclosure

12  under ORS 86.735 in the cases before the federal court. Defendants argue, however, that

13  the term "assignments," as used in ORS 86.735(1), refers only to assignments of a trust

14  deed that are memorialized in a writing other than a writing that may serve to transfer the

15  promissory note. Therefore, as defendants argue, the statute does not require that

16  assignments that result from the transfer of a promissory note be recorded before a

17  nonjudicial foreclosure can proceed. The issue is (again) one of statutory construction,

18  this time focusing on the meaning of the phrase "any assignments" in ORS 86.735(1).

19               The text is not conclusive. Although the term "assignment" may carry a

20  connotation of a written transfer of the trust deed itself, it appears to be broad enough to

21  encompass any manner of transfer of the trust deed, such as by operation of law. The

22  first definition of the word "assign" that appears in *Webster's Third New Int'l Dictionary*

28

1    132 (unabridged ed 2002) reflects the narrow connotation: "to transfer to another in

2    writing." However, other definitions that appear in *Webster's*, and those that appear in

3    *Black's Law Dictionary*, do not refer to a writing. In any event, the notion that a security

4    interest may be transferred by operation of law has a long and unchallenged history in

5    this state, and the word "assignment" at times has been used by this court in connection

6    with that concept. *See, e.g., First National Bk. v. Jack Mathis Gen. Cont.*, 274 Or 315,

7    321, 546 P2d 754 (1976) ("assignment of a debt carries with it the security for the debt");

8    *Willamette Col. & Credit Serv.*, 157 Or at 81-82 (using term "assignment" to refer to

9    "mortgage follows the note" principle); *Barringer*, 47 Or at 229 (in enacting statute,

10    legislature "recognize[ed] the right * * * to assign [a mortgage] by indorsement of the

11    note"). In short, the choice of the word "assignments" in ORS 86.735(1) does not negate

12    the possibility that the legislature intended to include transfers of trust deeds that occur by

13    operation of law, without a separate writing.

14           The use of the expansive modifier "any" ("any assignments") is similarly

15    inconclusive. Although it might convey a specific legislative intent that any *manner* of

16    assignments, including those that occur by operation of law, be included in the

17    recordation requirement, it also might simply refer to *every* "assignment" within the

18    intended (possibly narrower) meaning of that term.

19           The parties also debate the import of statutes related to ORS 86.735(1) that

20    have been offered as context for interpreting that statute. Among others, they point to

1   ORS 86.110(1), which was in effect when the OTDA was enacted,[10] and which pertains

2   to the discharge of record of a mortgage:

3       "(1) Whenever a promissory note secured by mortgage on real
4   property *is transferred by indorsement without a formal assignment of the*
5   *mortgage,* and the mortgage is recorded, the mortgage, upon payment of the
6   promissory note, may be discharged of record by the owner and holder of
7   the promissory note making and filing with the appropriate recording
8   officer a certificate * * * proving the satisfaction of the mortgage, * * * that
9   the owner and holder is the owner and holder of the note, * * * and that the
10   note has been fully paid and proving that fact to the satisfaction of the
11   recording officer."

12   (Emphasis added.) Defendants contend that the emphasized wording shows that,

13   although this court's cases speak of a transfer of a secured note by indorsement as

14   assigning an associated mortgage by operation of law, the legislature has drawn a

15   distinction between such "transfers" and "assignments" of the mortgage. However, the

16   emphasized wording could support an alternative inference -- that "formal assignment" is

17   only one form of "assignment," and that another occurs by operation of law when a note

18   is transferred.[11] Because that alternative construction is at least as plausible as

---

[10]   We set out the current version of ORS 86.110(1), which differs from the
version that was in effect in 1959 when ORS 86.735(1) was adopted. The differences are
slight and are not relevant to our analysis here.

[11]   Defendants contend that it is evident that the word "formal" in ORS
86.110(1) "was intended to have a meaning consistent with the requirements of ORS
86.060, which describes an 'assignment of mortgage' as an instrument 'executed and
acknowledged with the same formality as required in deeds and mortgages of real
property'" -- and that, as such, it cannot signal a legislative recognition of "assignment"
by indorsement of a note as an alternative to "formal assignment." However, because
ORS 86.060 was enacted *after* ORS 86.110, defendants' argument about the legislative
intention behind the phrase "formal assignment" is speculative.

30

1  defendants' construction, we conclude that ORS 86.110(1) is of little contextual help in
2  our interpretive endeavor.

3            What *does* seem significant is that the recording requirement in ORS
4  86.735 assumes the existence of an assignment in recordable form and that the transfer of
5  a promissory note cannot serve that function. Because a promissory note generally
6  contains no description of real property and does not transfer, encumber, or otherwise
7  affect the title to real property, it cannot be recorded in land title records. *See* ORS
8  93.600 (real property shall be described for recordation according to United States
9  survey, or by lots, blocks, etc.); ORS 93.610 (providing for separate records for recording
10 deeds and mortgages and "all other real property interests"); ORS 93.630 (requiring index
11 to the record of "deeds, mortgages, and all other real property interests"); ORS 205.130
12 (county clerk shall have custody of records of deeds and mortgages of real property and
13 record of all maps, plats, contracts, etc. "affecting the title to real property). Although it
14 is true that the parties to the transfer of a promissory note can always memorialize the
15 transfer in a separate writing that *is* recordable, plaintiffs' reading of ORS 86.735(1)
16 would turn that practice into a *requirement*, at least when nonjudicial foreclosure is
17 contemplated. But ORS 86.735(1) does not appear to express such a requirement, and
18 certain mortgage statutes that existed at the time ORS 86.735(1) was enacted, one of
19 which bears a remarkable resemblance to ORS 86.735(1), suggest that the legislature did
20 not intend one.

1       Those mortgage statutes, ORS 86.060 and *former* ORS 86.070 (1959),[12]

2    were enacted together in 1895, in apparent response to pronouncements by this court in

3    *Bamberger*, 24 Or at 210-13, about the absence of any provision in Oregon law for the

4    recording of assignments of mortgages. The first statute, ORS 86.060, provides:

5           "Mortgages may be assigned by an instrument in writing, executed
6           and acknowledged with the same formality as required in deeds and
7           mortgages of real property, and recorded in the records of mortgages of the
8           county where the land is situated."

9    The second statute, *former* ORS 86.070 (1959), provided:

10          "Every assignment of mortgage shall be recorded at full length, and
11          a reference shall be made to the book and page containing such assignment
12          upon the margin of record of the mortgage."

13          This court discussed the combined effect of those two statutes, at

14   considerable length, in *Barringer*. In that case, Mr. and Mrs. Barringer loaned money to

15   Hayden, evidenced by a note and secured by a mortgage, the latter of which was

16   recorded. The Barringers divorced, and Mrs. Barringer received the note and mortgage

17   as part of their divorce settlement. Later, Mr. Barringer executed an "assignment" of the

18   mortgage to Loder, but Barringer refused to sign an affidavit verifying his claim that he

19   had lost the note and mortgage. Regardless, Loder recorded the assignment, convinced

20   Hayden to pay him the full amount due under the loan, and then recorded a notice

21   canceling the mortgage (which was actually held by Mrs. Barringer). Mrs. Barringer

22   later sued Loder to foreclose on the mortgage. *Barringer*, 47 Or at 224-26. Loder

---

        [12]     *Former* ORS 86.070(1959) was repealed in 1965. Or Laws 1965, ch 252, §
1.

32

1   observed that Mr. Barringer's name appeared in the record, and he argued, based on the

2   two statutes quoted above, that he was entitled to rely solely on the record. In particular,

3   Loder argued that the statutes required all assignments of mortgages to be made in the

4   manner provided therein, and that a mortgage "[could] not be otherwise assigned or

5   transferred than as by these section prescribed." 47 Or at 228.

6           This court held, instead, that the first statute's use of the permissive word

7   "may," with reference to an assignment by an instrument in writing, "recognize[ed] the

8   right * * * to assign by indorsement of the note." *Id.* at 229. The court then added:

9       "When it comes to the manner of recording the assignment, the word 'shall'
10      is used. Why use the word 'may' in one section and 'shall' in the succeeding
11      one? The relationship indicates an intendment that there should be a
12      distinction in their application in practice. * * * *Assignments in the method*
13      *designated then could be made before the statute as well as by assignment*
14      *of the note, and the act simply prescribes that this may still be done by that*
15      *method, but that such assignments shall be recorded in the manner pointed*
16      *out.*"

17  *Id.* at 229-30 (emphasis added). Thus, even though *former* ORS 86.070 required

18  recordation of "every assignment of mortgage," and even though *Barringer* characterized

19  indorsement of a note as an "assignment," only those assignments described in ORS

20  86.060 -- that is, assignments by a written instrument with the formalities of a deed or

21  mortgage -- were required to be recorded.

22          ORS 86.060 and *former* ORS 86.070 -- and *Barringer* -- were the law in

23  Oregon when the OTDA was enacted in 1959. It is reasonable to infer that the legislature

24  had that statutory framework in mind when it enacted wording in ORS 86.735(1) that

25  requires "any assignments of the trust deed" to be recorded as a prerequisite to

33

1    nonjudicial foreclosure. That inference leads to the conclusion that, like the requirement

2    in *former* ORS 86.070 (1959) that "every assignment of mortgage shall be recorded," the

3    requirement in ORS 86.735(1) that "any assignments" be recorded refers *only* to

4    assignments like those described in ORS 86.060, which are "in writing, executed and

5    acknowledged with the same formality as required in deeds and mortgages of real

6    property." Again, the same reasoning logically applies to assignments of trust deeds,

7    which are "subject to all laws relating to mortgages." ORS 86.715.

8          The legislature may have intended to impose a different recording regime in

9    the nonjudicial foreclosure context – to require, in that context alone, that a recordable

10   instrument be executed and recorded to document every transfer of a trust deed by

11   indorsement of the associated promissory note, so that a borrower faced with nonjudicial

12   foreclosure could determine whether the person giving notice of foreclosure possessed

13   the beneficial interest in the trust deed at issue and had the right to foreclose. However,

14   the legislature did not clearly express that intent. When the legislature enacted the

15   OTDA and required that "any assignments of the trust deed" be recorded, the nearly

16   identical statute stating that [e]very assignment of mortgage shall be recorded" required

17   recordation only of formal, written assignments. *Barringer,* 47 Or at 230; *former* ORS

18   86.070 (1959). There is nothing to indicate that, when it enacted ORS 86.735(1), the

19   legislature did not similarly intend for "assignments" of a trust deed to refer only to

20   formal, written assignments of the trust deed, not transfers by indorsement of the

21   underlying debt instrument. By describing an "assignment of mortgage" as a written

22   instrument executed "with the same formality as required in deeds," ORS 86.060, and

1    then, in the immediately following section, requiring recordation of "[e]very assignment

2    * * * at full length," *former* ORS 86.070 (1950), it is apparent that the only "assignment"

3    the 1959 legislature had in mind in enacting ORS 86.735(1) was an assignment by a

4    written instrument. It follows that, for purposes of ORS 86.735(1), "assignments of the

5    trust deed" means written assignments that are executed and acknowledged with such

6    formalities, not a *post hoc* memorialization of a transfer of the secured obligation created

7    solely for the purpose of recording. Thus, the answer to the third certified question is

8    "no." ORS 86.735(1) does not require recordation of "assignments" of the trust deed by

9    operation of law that result from the transfer of the secured obligation.

10            In giving that answer, we acknowledge a practical concern that appears to

11    loom in the background of these cases -- that construing the phrase "any assignments" in

12    ORS 86.735(1) as applying only to formal, written assignments of a trust deed renders the

13    provision meaningless. In particular (the concern posits), a recording requirement that is

14    so easily bypassed can have no conceivable function in the OTDA's statutory scheme;

15    indeed, read in that way, the requirement precludes homeowners in foreclosure from

16    ascertaining the identity of the true beneficiary. That concern, however, rests on the

17    mistaken assumption that the right of a defaulting homeowner to establish the identity of

18    the true beneficiary depends *exclusively* on plaintiffs' preferred reading of the recording

19    requirement in ORS 86.735(1).

20            To the contrary, the OTDA is laced with provisions that indicate that the

21    grantor is entitled to know the identity of the beneficiary. As discussed above, ORS

22    86.753(1), for example, provides that the grantor (and others) may cure a default before a

35

1    foreclosure sale by making payment, and paying costs and expenses "to the beneficiary."

2    Under ORS 86.737(2)(b)(B), notice to the grantor of a foreclosure sale must include "a

3    telephone number that will allow the grantor access during regular business hours to

4    person-to-person consultation with an individual *authorized by the beneficiary* to discuss

5    the grantor's payment and loan term negotiation and modification." Similarly, under

6    ORS 86.745(1), a notice of sale must include the name of the "beneficiary." Finally,

7    ORS 86.759(5) provides that statutory requirements that the trustee provide default and

8    cure-related information to the grantor and others "do not affect the duty of beneficiaries

9    to provide information to grantors." In sum, those provisions all assume that the true

10   beneficiary must be identifiable. Thus, no part of our answer to the third certified

11   question should be taken to suggest that, where the foreclosing party is not the original

12   lender, the foreclosing party need not provide definitive documentation of its status as the

13   lender's successor in interest to establish its right to foreclose.

14         For that same reason, the fourth certified question, relating to MERS's

15   authority to act as an agent for a lender or a lender's successor in interest, is important.

16   Although we have concluded that the lender or its successors need not record

17   assignments of the trust deeds that occur by operation of law, the fact remains that, when

18   those persons fail to do so, they are vulnerable to challenges that may force them to

19   judicially establish their interests and authority to act.[13] With that foundation in place, we

---

[13]    Depending on whether MERS is an agent of the initial lender and its
successors in interest, one commentator has suggested that MERS can establish a

36

1    turn to the fourth certified question.

2                    V. FOURTH CERTIFIED QUESTION

3            "Does the Oregon Trust Deed Act allow MERS to retain and transfer
4    legal title to a trust deed as nominee for the lender, after the note secured by
5    the trust deed is transferred from the lender to a successor or series of
6    successors?"

7            Plaintiffs assert:

8            "The OTDA does not allow MERS to retain or transfer legal title to
9    a trust deed after the promissory note is transferred from the original lender
10   to a successor. This is because MERS has no legal title to the interests
11   conveyed under a trust deed and because once its principal has no legal
12   interests under a trust deed, it may not act on behalf of that principal to do
13   for itself what its principal could not do. Even if it had some claim of legal
14   title to the trust deed document, that would make MERS nothing more than
15   a document custodian, not a beneficiary with rights to assign.

16           "In addition, even if the trust deeds could somehow be construed to
17   convey legal title to MERS, such a conveyance would be expressly
18   forbidden under the OTDA. As the only interest granted by the Borrower
19   in the security instrument is a lien on the land as security for the repayment
20   on the obligation and that legal title is conveyed to the trustee who holds it
21   in trust for the beneficiary, there is simply no interest for MERS to hold."

22   Plaintiffs also assert that MERS's powers as an agent are derived from and limited to

23   those of its principal. Thus, plaintiffs argue, MERS has no power or authority to act as an

24   agent of a principal that has divested itself of its interest in a trust deed.

25           Defendants reply, first, that "legal and equitable rights to property can be

     satisfactory chain of title "by recording a memorandum of the series of assignments from
     itself as an agent of the original lender to itself as an agent of each successive
     noteholder." Dunne, 49 Willamette L Rev at 100-101. As explained in our answer to the
     fourth certified question below, these cases do not furnish an opportunity to decide
     whether such a course of action would effectively establish the ultimate beneficiary's
     identity and right to proceed with nonjudicial foreclosure.

37

1   separated and held by different parties." It follows, they assert, that the OTDA allows

2   MERS to hold legal title to a trust deed as nominee for the lender, after the note secured

3   by the trust deed is transferred from the lender to a successor or series of successors.

4   Alternatively, defendants argue that MERS has authority as an agent of the original

5   lender and its successors to execute any assignments required or convenient to facilitate

6   the nonjudicial foreclosure process.

7           Because of the way in which the parties have presented their arguments

8   with respect to the fourth certified question, it is useful to reframe it in two parts. The

9   first part of the question is:

10          "Does the Oregon Trust Deed Act allow MERS to hold and transfer
11          legal title to a trust deed as nominee for the lender, after the note secured by
12          the trust deed is transferred from the lender to a successor or series of
13          successors?"

14  The second part of the question is:

15          "If the answer to the first part of the question is 'no,' does MERS
16          nevertheless have authority as an agent for the original lender and its
17          successors in interest to act on their behalves with respect to the nonjudicial
18          foreclosure process?"

19          For the reasons now explained, the answer to the first part of the question is

20  "no." As discussed, a beneficiary's interest under a trust deed is analogous to a

21  mortgagee's interest under a mortgage. ORS 86.715. Further, a mortgage conveys no

22  legal or equitable interest in fee or for life to the mortgagee, but merely creates a lien that

23  constitutes security for the underlying obligation and grants the mortgagee, upon the

24  mortgagor's default, the right to have the property sold to satisfy the obligation. *See* ORS

25  86.010; *Stout v. Van Zante*, 109 Or 430, 435-36, 219 P 804, 220 P 414 (1923); *Schleef,*

38

1    107 Or at 74-79; *Ukase Inv. Co. v. Smith*, 92 Or 337, 340, 181 P 7 (1919). Although no

2    Oregon case has considered which parties hold legal and equitable interests in the lien

3    embodied in a trust deed in the context of the OTDA, a trustee typically holds legal title

4    to the subject of the trust and the beneficiary holds equitable title. "When a trust is

5    created, the legal title is vested in the trustee * * *. 'A trust implies two estates, -- one

6    legal, and the other equitable; it also implies that the legal title is held by one person, the

7    trustee, while another person, the *cestui que* trust [the beneficiary], has the beneficial

8    interest.'" *Morse et al. v. Paulson et al.*, 182 Or 111, 117, 186 P2d 394 (1947) (quoting

9    *Allen v. Hendrick*, 104 Or 202, 223, 206 P 733 (1922)) (emphasis added). ORS

10   86.705(7) provides that a trust deed is "a deed * * * that conveys an interest in real

11   property to a trustee in trust to secure the performance of an obligation the grantor or

12   other person named in the deed owes to a beneficiary." Under the OTDA, therefore, it is

13   logical to conclude that the trustee holds legal title to the lien conveyed by the trust deed

14   and the beneficiary holds equitable title to that lien. It follows that, because MERS is

15   neither the trustee nor the beneficiary, it holds no interest at all in the lien conveyed by

16   the trust deed.

17           Relying on this court's decision in *Klamath Irrigation District v. United*

18   *States*, 348 Or 15, 227 P3d 1145 (2010), defendants remonstrate that "legal and equitable

19   rights to property can be separated and held by different parties." In *Klamath Irrigation*

20   *District*, several irrigation districts and agricultural landowners brought consolidated suits

21   against the United States, claiming that temporary reductions of irrigation water by a

22   federal agency had breached contracts for the supply of irrigation water from the Klamath

1    River Basin reclamation project, had breached an interstate compact, and had violated the
2    Fifth Amendment by the uncompensated taking of property. In answering certified
3    questions from a federal appeals court, we held that Oregon law recognized distinct legal
4    and equitable interests in the right to use water from the Klamath River Basin that
5    belonged to the irrigation districts and the landowners for whose benefit the irrigation
6    districts held water rights. *Id.* at 43-44.

7        Defendants' reliance on *Klamath* is unavailing for two reasons. First, in
8    *Klamath*, this court reiterated the principle that, in determining whether an equitable
9    property right exists, "a court of equity will look beyond the form of the proceeding and
10   if possible consider the substance of the right." *Id.* at 44. As discussed above, any
11   analysis of the substance of the transaction or the actual roles of the parties articulated in
12   the trust deed compels the conclusion that MERS owns neither legal nor equitable title to
13   the lien of the trust deed. Second, although defendants assert that "Oregon law explicitly
14   recognizes that each of the foregoing property interests is capable of further division
15   between holders of legal and equitable title," neither *Klamath* nor any other authority that
16   defendants have identified so holds. Certainly, an equitable interest may be fractionally
17   divided among a number of owners (as this court recognized to be the case among the
18   members of a water district in *Klamath*), but that is not the circumstance with MERS.

19       Rather, defendants' point seems to be that, even though MERS does not
20   have the right to receive repayment of the notes in these cases, it can nevertheless hold
21   legal title to the trust deeds, including the legal right to foreclose them. That proposition
22   is not correct for two reasons. First, as discussed in detail in our answer to the first and

40

1   second certified questions, the beneficiary of a trust deed under the OTDA is the lender
2   or the lender's successor in interest as respects the right to repayment. And it is the same
3   beneficiary that has the other statutory rights and obligations that the OTDA confers and
4   imposes, including the power to control the foreclosure decision and process through the
5   right to appoint a successor trustee. Second, as explained in our answer to the first
6   certified question, the policy choice that the OTDA reflects (that the "beneficiary" must
7   be the person entitled to repayment of the secured obligation) is rooted in the common-
8   law principle that a foreclosing party must have the power to enforce the underlying note.
9   *See Holton*, 99 Or at 429. Accordingly, we conclude that the OTDA does not allow
10  MERS to hold or transfer legal title to a trust deed separately from the right to receive
11  repayment of the obligation that it secures. Because MERS does not have the right to
12  receive repayment of the notes in these cases, the OTDA does not allow MERS to hold
13  and transfer legal title to the trust deeds that secure them.

14          That conclusion brings us to defendants' and MERS's alternative argument
15  that MERS has authority as an agent of the original beneficiary and any successor
16  beneficiaries of the subject trust deeds to take any steps that are required or convenient to
17  carry out the nonjudicial foreclosure process. The accuracy of that assertion depends on
18  whether MERS qualifies as an agent of those entities for purposes of Oregon law. *See*
19  *Restatement (Third) of Agency* § 1.02 (2006) ("Whether a relationship is characterized as
20  agency in an agreement between parties or in the context of industry or popular usage is
21  not controlling."). This court has defined agency in the following terms: "[T]o be an
22  'agent' -- using the well-defined legal meaning of that term -- two requirements must be

41

1   met: (1) the individual must be subject to another's control; and (2) the individual must

2   'act on behalf of the other person." *Vaughn v. First Transit, Inc.*, 346 Or 128, 136, 206

3   P3d 181 (2009).

4           Plaintiffs assert that, even if MERS is an agent of the beneficiaries in these

5   cases, MERS's interests in the trust deeds cannot extend beyond those of the beneficiaries

6   for whom it purports to act, because its powers as an agent cannot exceed those held by

7   its principals. Thus, when the interest of its principal is conveyed, plaintiffs argue,

8   MERS's authority to act for that principal is simultaneously terminated. According to

9   plaintiffs, nothing in Oregon law "supports the idea of freestanding agency on which

10  MERS relies." Moreover, plaintiffs note that at least two other courts recently have

11  agreed with their arguments. For example, the Arkansas Supreme Court has held, under

12  virtually identical statutory language:

13          "MERS was at best the agent of the lender. The only recorded document
14          provides notice that [Lender] is the lender and, therefore, MERS's principal.
15          MERS asserts [Lender] is not its principal. Yet no other lender recorded its
16          interest as an assignee of [Lender]. Permitting an agent such as MERS
17          purports to be to step in and act without a recorded lender directing its
18          action would wreak havoc on notice in this state."

19  *Mortgage Electronic Registration System, Inc., v. Southwest Homes of Arkansas*, 2009

20  Ark 152, 301 SW3d 1, 8 (2009).[14] The Supreme Court of Washington recently reached a

21  similar conclusion:

---

[14]      Under the Arkansas statute, "beneficiary" means "the person named or
otherwise designated in a deed of trust as the person for whose benefit a deed of trust is
given or his successor in interest" Ark. Code Ann. § 18-50-101(1) (2010).

42

1                  "MERS attempts to sidestep this portion of traditional agency law by
2        pointing to the language in the deeds of trust that describe MERS 'as acting
3        solely as a nominee for Lender and Lender's successors and assigns.' * * *
4        But MERS offers no authority for the implicit proposition that the lender's
5        nomination of MERS as a nominee rises to an agency relationship with
6        successive noteholders."

7    *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wash 2d 83, 107, 285 P3d 34, 45-46

8    (2012).

9                  Here, plaintiffs allege that their original lenders sold and terminated their

10   respective interests in the trust deeds and underlying promissory notes shortly after the

11   origination of plaintiffs' loans. More to the point, they allege that those original lenders

12   transferred their interests in their promissory notes and trust deeds (followed by multiple

13   subsequent transfers as well) long before MERS executed or recorded an assignment of

14   the trust deeds to the purported ultimate successors in interest of the original lenders. In

15   each of the cases, the plaintiffs assert "that the promissory note was sold and the trust

16   deed was assigned from the originating lender of each respective loan through a series of

17   subsequent intervening purchasers until it was purportedly conveyed to the current party

18   on whose behalf each of the nonjudicial foreclosures was being conducted." In

19   particular, plaintiffs assert that "their loans were sold first to a separate entity known as a

20   Sponsor, which subsequently sold the promissory note and assigned the trust deed to an

21   entity known as a Depositor, which subsequently sold the promissory note and assigned

22   the trust deed to Defendant, Bank of New York Mellon FKA The Bank of New York,

23   ("BNYM") as Trustee for the respective securitized trusts of which BNYM acts as

24   Trustee."

1          As an initial matter, it is worth noting that, in each case, it is MERS itself,

2   not MERS as "nominee" for the actual beneficiary, that executed a written assignment of

3   the trust deed to the reputed ultimate successor of the original lender and recorded that

4   assignment in the pertinent real property records. Because MERS does not qualify as the

5   beneficiary, an assignment in such capacity is invalid. *See* ORS 86.705(2); 86.735(1).

6   But, assuming, as it asserts, that MERS also acts as an agent or nominee for the original

7   beneficiary and successor beneficiaries, a different set of rules applies.[15]

8          In Oregon, agency is "[t]he relationship which results from the

9   manifestation of consent by one person to another that the other shall act on behalf and

10  subject to his control, and consent by the other so to act." *Hampton Tree Farms, Inc. v.*

11  *Jewett*, 320 Or 599, 617, 892 P2d 683, 694 (1995) (quoting *Ruddy v. Ore. Auto. Credit*

12  *Corp.*, 179 Or 688, 702, 174 P2d 603, 609 (1946)) (internal quotations omitted). The

13  principal-agent relationship is defined by, among other things, the ongoing ability of the

14  principal to maintain control over the agent by giving the agent instructions. *See Vaughn,*

15  346 Or at 136 (quoting *Restatement (Third) of Agency* § 1.01 comment f (2006)).

---

¹⁵          In their arguments to this court, defendants at times refer to MERS as
lender's "agent," and at other times as lender's "nominee" (the status MERS is accorded in
the trust deeds). Although the distinction is far from clear, there is some basis for
concluding that the authority of a nominee vis-à-vis its principal can be more limited than
that of an ordinary agent. In that regard, we observe that *Black's Law Dictionary* defines
a "nominee," as "2. A person designated to act in place of another, usu. in a very limited
way[;] 3. A party who holds bare legal title for the benefit of others or who receives and
distributes funds for the benefit of others." *Black's Law Dictionary* 1076 (8th ed 2004).
It may be, however, that MERS and its members understood the word as a synonym for
"agent." The record before us does not illuminate that issue.

44

1          Defendants assert that, even where multiple trust deed transfers have

2   occurred, MERS has ongoing authority to act for its past and present principals under the

3   MERS system. MERS explains that,

4          "[w]hen MERS executes an assignment of the trust deed, it is doing so as
5          nominee agent of the then-note owner. Plaintiffs and *amicus* OTLA
6          wrongly view MERS as acting on behalf of the former principal, the
7          original lender. Agency principles permit MERS to serve as a common
8          agent of the original lender and all successors and assigns, and all parties to
9          the trust deed -- including the borrower -- acknowledge that MERS will do
10         this. Accordingly, when MERS executes a written assignment of 'all
11         beneficial interest under that certain Deed of Trust[,]' it is acting on behalf
12         of the current owner of equitable title to the beneficial interests under the
13         trust."

14  Similarly, *amicus* Oregon Land Title Association asserts:

15         "Finally, as to the answer on the fourth certified question, MERS has
16         authority to retain and transfer legal title to a trust deed after a transfer of
17         the underlying promissory note as long as the lender's successors and
18         assigns also are members of MERS. In such circumstances, the lender's
19         successors and assigns have given MERS the requisite authority to act on
20         their behalf. Thus, as long as MERS remains constant as a nominee
21         holding legal title to the trust deed for the lender and any successors or
22         assigns, MERS has authority to transfer legal title to the trust deed."

23         According to defendants and MERS, courts examining the issue recognize

24  that MERS's role as nominee or agent carries forward to subsequent obligees -- indeed,

25  defendants assert, that was one of the very purposes for the creation of MERS.[16]  Those

_____

[16]     *See In re Tucker*, 441 BR 638, 646 (Bankr. WD Mo 2010) ("MERS was the
agent for New Century under the Deed of Trust from the inception, and MERS became
agent for each subsequent note-holder under the Deed of Trust * * *."); *Kiah v. Aurora
Loan Services*, LLC, 2011 WL 841282 at 4 (D Mass 2011) ("dissolution of [lender]
would not and could not prevent [note holder] from obtaining an assignment of the
mortgage from MERS, both as a matter of law and according to the arrangement that

1    propositions notwithstanding, the difficulty is that, on the record before us, it is unclear

2    whether such a broad common agency relationship exists in these cases among MERS

3    and the original lenders and their successors in interest. The trust deeds, by themselves,

4    do not establish the necessary relationship; they instead confuse the issue by first granting

5    MERS the seemingly-narrow status of a "nominee" and then purporting to grant MERS

6    authority to "exercise" other "interests" if "necessary." More importantly, although the

7    trust deeds are signed by the borrowers, the original lenders and their successors, who are

8    the other parties under defendants' theory of "common agency," are not signatories.

9    Accordingly, the answer to the second part of the fourth question depends, in large

10    measure, on evidence with respect to who ultimately holds the relevant interests in the

11    notes and trust deeds, and whether that person and each of its predecessors in interest

12    conferred authority on MERS to act on their behalves in the necessary respects. And that

13    evidence is not present in the record before us.

14              The answers to the two parts of the fourth certified question thus may be

15    stated in the following terms:

16       (4)(a) "Does the Oregon Trust Deed Act allow MERS to hold and transfer
17       legal title to a trust deed as nominee for the lender, after the note secured by
18       the trust deed is transferred from the lender to a successor or series of

---

existed between MERS and Aurora as a 'successor and assign'"); *MERSCORP, Inc. v. Romaine*, 861 NE2d 81, 83 (NY 2006) ("Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."); *see also Restatement (Third) of Agency* § 1.04 (an agent may act on behalf of both a disclosed principal, *i.e.*, the original lender, and a later unidentified principal, *i.e.* original lender's successor and assign).

1    successors?"

2    Answer: "No." For purposes of the OTDA, the only pertinent interests in
3    the trust deed are the beneficial interest of the beneficiary and the legal
4    interest of the trustee. MERS holds neither of those interests in these cases,
5    and therefore, it cannot hold or transfer legal title to the trust deed. For
6    purposes of our answer to the first part of the fourth certified question, it is
7    immaterial whether the note secured by the trust deed has previously been
8    "transferred from the lender to a successor or series of successors."

9    (4)(b) "Does MERS nevertheless have authority as an agent for the original
10    lender and its successors in interest to act on their behalves with respect to
11    the nonjudicial foreclosure process?"

12    Answer: The power to transfer the beneficial interest in a trust deed or to
13    foreclose it follows the beneficial interest in the trust deed. The beneficiary
14    or its successor in interest holds those rights. MERS's authority, if any, to
15    perform any act in the foreclosure process therefore must derive from the
16    original beneficiary and its successors in interest. We are unable to
17    determine the existence, scope, or extent of any such authority on the
18    record before us.

19              Certified questions answered.

1          KISTLER, J., concurring in part and dissenting in part.

2          The United States District Court for the District of Oregon has certified

3   four state law questions to this court. In answering the first two questions, the majority

4   concludes that only the lender and its successors can be designated as the beneficiary on a

5   trust deed. In answering the last two questions, the majority concludes that not every

6   assignment of the lender's interest in the trust deed must be recorded and that Mortgage

7   Electronic Recording Systems, Inc. (MERS) can serve as the agent for both the lender

8   and its successors if the record shows that those entities agreed to that arrangement. I

9   agree with the majority's answers to the last two questions but would answer the first two

10  questions differently. In my view, nothing in state law precludes the parties to a trust

11  deed from designating MERS as the beneficiary as long as MERS is serving as the agent

12  for the lender and its successors.[1]

13         Bart and Jessica Brandrup executed a trust deed on their property to secure

14  a debt evidenced by a note that they gave their lender, America's Wholesale Lender. In

15  their trust deed, the Brandrups designated MERS "acting solely as a nominee for Lender

16  and Lender's successors and assigns" as the "beneficiary under this Security Instrument."

17  The issue that the first two certified questions pose is whether state law required the

18  Brandrups to designate America's Wholesale Lender as the beneficiary rather than MERS

---

[1]        In referring to the lender's successors, I am referring to those successors in
interest that are entitled to enforce the obligation that the trust deed secures.

1

1    acting as the nominee or agent for the lender and its successors.[2]

2           The majority finds a complete answer to that issue in the definition of

3    "beneficiary" in the Oregon Trust Deed Act. *See* ORS 86.705(2). That Act authorizes a

4    borrower to grant a trust deed on real property to secure an underlying obligation[3] and, in

5    a definitional section, provides that " '[b]eneficiary' means a person named or otherwise

6    designated in a trust deed as the person for whose benefit a trust deed is given, or the

7    person's successor in interest * * *." *Id.* As the majority observes, a trust deed secures an

8    obligation, frequently evidenced by a promissory note, and the lender and its successors

9    are the persons for whose benefit the trust deed is given; that is, the trust deed is given to

10   secure the obligation that the grantor of the trust deed owes the lender. That much is

11   unexceptional.

12          It is one thing, however, to say that the statutory definition identifies the

13   lender and its successors as the persons who ordinarily will be the beneficiaries of the

14   trust deed. It is quite another to find in that definition a legislative intent to preclude the

15   parties to a trust deed from designating the agent of the lender and its successors as the

16   beneficiary. We should be hesitant to find in that run-of-the-mill definition a limitation

---

   [2]    As the majority notes, a nominee is a limited agent. See ___ Or at ___ (slip
op at 44 n 13).

   [3]    Essentially, a trust deed is a mortgage with the power of sale. A trust deed
differs from a mortgage primarily in that it conveys an interest in real property to a
trustee to secure an obligation owed the beneficiary, *see* ORS 86.705(7), and, in the event
of the grantor's default, authorizes the trustee to conduct a nonjudicial foreclosure sale on
behalf of the beneficiary, *see* ORS 86.710.

2

1    on the parties' customary authority to structure their transactions as they see fit, unless the

2    text, context, or history of that definition requires it. In my view, the statutory definition

3    of beneficiary serves a more modest role than the one the majority assigns it. Certainly,

4    nothing in the text of the definition expressly forecloses the parties from designating the

5    lender's agent as the beneficiary in the trust deed. Nor does the legislative history lend

6    any support for the majority's conclusion. Rather, the legislative history shows only that,

7    in authorizing the use of trust deeds, the legislature sought to provide a more cost-

8    effective means of foreclosing liens on real property and, in doing so, to expand the pool

9    of capital available for small homeowners. *See* Minutes, House Committee on Judiciary,

10   SB 117, April 16, 1959, at 1. It is difficult to derive from that history any legislative

11   intent to limit the parties' ability to designate the lender's agent as the beneficiary.

12            To be sure, the context provides a limitation on the persons whom the

13   parties may designate as the beneficiary. As noted, a trust deed, like a mortgage, serves

14   as security for the underlying obligation -- in this case, a promissory note. Ordinarily, the

15   mortgage follows the note. *See Restatement (Third) of Property: Mortgages* § 5.4(a)

16   (1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage

17   unless the parties to the transfer agree otherwise."). Moreover, "[a] mortgage may be

18   enforced only by, or in behalf of, a person who is entitled to enforce the obligation the

19   mortgage secures." *Id.* § 5.4(c). Put differently, "in general a mortgage is unenforceable

20   if it is held by one who has no right to enforce the secured obligation." *Id.* § 5.4

21   comment e. One exception to that general rule occurs when the person who holds the

22   mortgage does so as the "trustee or agent" of the person who has the right to enforce the

3

1   obligation secured by the mortgage. *Id.* In that circumstance, the trustee or agent may

2   enforce the mortgage on behalf of the lender and its successors.

3               On the one hand, that context suggests that the authority to name or

4   otherwise designate the beneficiary does not extend to naming a person whose

5   designation would render the trust deed unenforceable and thus defeat its purpose. *See*

6   *id.* (noting that "in general a mortgage is unenforceable if it is held by one who has no

7   right to enforce the secured obligation"). On the other hand, that context suggests that the

8   class of persons statutorily authorized to be "named or otherwise designated in [the] trust

9   deed" as the beneficiary is not limited to the lender and its successors, as the majority

10   concludes. Rather, it extends to persons (agents and trustees) who also may enforce the

11   mortgage on behalf of the lender and its successors. Accordingly, I would hold that the

12   statutory definition of beneficiary is broad enough to permit the parties to a trust deed to

13   designate MERS as the beneficiary as long as MERS is the nominee or agent of the

14   lender and its successors in interest.[4]

15               Ultimately, the difference between my answer and the majority's answer

16   may be more semantic than substantive. After all, in answering the fourth question, the

17   majority recognizes that, in theory, MERS can serve as the agent for the lender and its

18   successors. The problem, as the majority correctly observes, with applying that theory in

---

        [4]    The terms of the trust deed could be much clearer about the role that MERS
plays. However, defendant argues that, under the terms of the trust deed, MERS serves
as the agent for the lender and its successors, and the terms of the trust deed permit that
understanding.

4

1   this case is that the record does not disclose whether the lender's successors in interest

2   also have authorized MERS to act as their agent. As I understand the majority's answers,

3   they effectively lead to the same conclusion that I would reach. However, because I

4   would answer the first two certified questions differently from the majority, I dissent in

5   part and concur in part in its answers.

6            Balmer, C.J., joins in this opinion concurring in part and dissenting in part.



Filed: June 6, 2013

IN THE SUPREME COURT OF THE STATE OF OREGON

REBECCA NIDAY,
fka Rebecca Lewis,

Respondent on Review,

v.

GMAC MORTGAGE, LLC,
a foreign limited liability company;
and EXECUTIVE TRUSTEE SERVICES, INC.,
a California corporation,

Defendants-Respondents,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,
a Delaware corporation,

Petitioner on Review.

(CC CV10020001; CA A147430; SC S060655)

En Banc

On review from the Court of Appeals.*

Argued and submitted on January 8, 2013.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, argued the cause for petitioner on review Mortgage Electronic Registration Systems, Inc. With him on the brief were Frederick B. Burnside and Kevin H. Kono.

W. Jeffrey Barnes, *pro hac vice*, W. J. Barnes, PA, Beverly Hills, argued the cause for respondent on review. With him on the brief was Elizabeth Lemoine, Makler Lemoine & Goldberg, PC, Portland.

1

Hope A. Del Carlo, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Rolf C. Moan, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

BREWER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

Kistler, J., concurred in part and specially concurred in part and wrote an opinion in which Balmer, C.J. joined.

*Appeal from Clackamas County Circuit Court, Henry C. Breithaupt, Judge. 251 Or App 278, 284 P3d 1157 (2012).

1        BREWER, J.

2        This is the second of two cases this court decides today that is concerned

3    with the nonjudicial foreclosure of trust deeds under the Oregon Trust Deed Act (OTDA)

4    and the mortgage finance industry's practice of naming the Mortgage Electronic

5    Recording System, Inc., (MERS), rather than the lender, as a trust deed's "beneficiary."

6    In *Brandrup v. ReconTrust Co.*, __ Or __, __ P3d __ (June 6, 2013), we answered

7    questions certified to us by a United States District Court about whether and how that

8    practice comports with the OTDA's nonjudicial foreclosure requirements.  In the present

9    case, we apply our answers in *Brandrup* to a dispute that comes to this court through a

10   petition for review of a decision of the Court of Appeals.

11       The underlying case is an action for declaratory and injunctive relief,

12   brought by a home loan borrower against MERS and other entities that were attempting

13   to utilize the OTDA's "advertisement and sale" procedure, ORS 86.710, to foreclose the

14   trust deed that secured her promise to repay.  Plaintiff argued that, although the trust deed

15   identified MERS as the beneficiary of the trust deed, neither MERS nor any of the other

16   entities involved in the foreclosure had any legal or beneficial interest in the trust deed

17   that would allow them to proceed under the OTDA.  The trial court granted summary

18   judgment to defendants, but the Court of Appeals reversed that decision, holding that a

19   genuine issue of material fact existed as to whether all of the requirements for nonjudicial

20   foreclosure set out in the OTDA had been satisfied.  *Niday v. GMAC Mortgage, LLC*, 251

21   Or App 278, 300, 284 P3d 1157 (2012).  We also conclude that a genuine issue of

22   material fact exists, albeit a different one than the one the Court of Appeals identified.

1

1                                    I. BACKGROUND

2              Our analysis in this case relies heavily on our answers in *Brandrup* to the

3    federal court's certified questions, and the reader would be well-advised to review our

4    opinion in that case before delving into the present opinion. Of particular importance is

5    the general discussion of mortgage loans and trust deeds, recordation requirements, and

6    the OTDA that precedes the discussion of the certified questions. *Brandrup*, __ Or at __

7    (slip op at 4-13). Because that portion of the *Brandrup* opinion covers most of the

8    necessary ground, we limit the background discussion in the present case to a brief

9    description of MERS and its function in the home mortgage business.

10             MERS and its parent company, MERSCorp, were created in the 1990's in

11   response to a sharp increase in trading in mortgage loans that resulted from a developing

12   secondary market for mortgage-backed securities. In an effort to make that market more

13   efficient, companies that were involved in making and trading in mortgage loans,

14   including the Federal National Mortgage Association (Fannie Mae) and the Federal

15   Home Loan Mortgage Corporation (Freddie Mac), combined to create MERS. *See,*

16   *generally,* R. K. Arnold, "*Yes, There is Life on MERS.*" 11 Prob & Prop 33, 34 (1997).

17   MERS operates a national electronic database, the MERS System, which privately tracks

18   transfers of ownership interests and servicing rights in mortgage loans among the lenders,

19   investors, and other companies that are its members.

20             The present case examines the MERS arrangement in the specific context

21   of the OTDA. The OTDA allows for nonjudicial foreclosure of a particular kind of

22   security instrument, a trust deed. A trust deed conveys an interest in real property -- a

                                                 2

1    lien -- to a trustee, who holds that interest, in trust, to secure an obligation owed by the

2    "grantor" of the trust deed to the trust deed's "beneficiary." ORS 86.705(2), (4), (7).

3    Under the OTDA, if the grantor defaults on his or her obligation to the beneficiary (by,

4    for example, failing to repay a loan made by the beneficiary), the trustee may foreclose

5    the trust deed by "advertisement and sale" of the trust property, if certain prerequisites are

6    satisfied. ORS 86.710, ORS 86.735. Among the listed prerequisites is a requirement that

7        "the trust deed, any assignments of the trust deed by the trustee or the
8        beneficiary and any appointment of a successor trustee [be] recorded in the
9        mortgage records in the counties in which the property described in the
10       deed is situated[.]"

11   ORS 86.735(1).

12                    II. FACTS AND PROCEDURAL HISTORY

13                    With that background in mind, we turn to the facts of the present case. In

14   2006, plaintiff obtained a loan from Greenpoint Mortgage Funding, Inc. to finance the

15   purchase of a home in Clackamas County, memorializing her promise to repay the loan,

16   with interest, in an "adjustable rate note." The note expressly stated that the note might

17   be transferred from "Lender" (Greenpoint) to a different "Note Holder." Along with the

18   note, plaintiff executed a "Deed of Trust" that (1) identified MERS as the trust deed's

19   beneficiary, but solely as "nominee for lender"; and (2) conveyed an interest in the

20   property plaintiff had purchased to a named trustee, to secure the promise of repayment

21   memorialized in the note and other related promises. Specifically, the trust deed

22   provided:

23       "The beneficiary of the Security Instrument is MERS (solely as nominee
24       for Lender and Lender's successors and assigns) and the successors and

3

1    assigns of MERS. This Security Instrument secures to Lender: (i) the
2    repayment of the Loan, and all renewals, extensions and modifications of
3    the Note; and (ii) the performance of Borrower's covenants and agreements
4    under this security Instrument and the Note. For this purpose, Borrower
5    irrevocably grants and conveys to Trustee, in trust, with power of sale [the
6    property plaintiff had financed]. together with all the improvements now or
7    hereafter erected on the property * * *. Borrower understands and agrees
8    that MERS holds only legal title to the interests granted by Borrower in this
9    Security Instrument, but, if necessary to comply with law or custom, MERS
10   (as nominee for Lender and Lender's successors and assigns) has the right:
11   to exercise any or all of those interests, including. but not limited to, the
12   right to foreclose and sell the property, and to take any action required of
13   Lender including, but not limited to, releasing and canceling this Security
14   Instrument."

15   In a separate definition section, the trust deed identified plaintiff as "Borrower,"

16   Greenpoint as "Lender," First American Title Insurance Co. as "Trustee," and MERS as

17   "the beneficiary under this Security Instrument." The trust deed provided that, although

18   "Borrower" would be notified in writing of any change in the entity collecting payments

19   due under the note, "the note or a partial interest in the note (together with this Security

20   Instrument) c[ould] be sold one or more times without prior notice to borrower."

21          The trust deed was recorded in the Clackamas County real property records

22   within a few days after its execution. Shortly thereafter, plaintiff received notice that the

23   servicing rights to her loan had been transferred to GMAC Mortgage, LLC (GMACM).

24   Plaintiff thereafter made her payments to GMACM. At some point, plaintiff allegedly

25   ceased to make payments.

26          In April 2009, plaintiff received a "Trustee's Notice of Sale" from

4

1    Executive Trustee Services (ETS), which purported to be acting as agent for the trustee.[1]

2    The notice referred to the trust deed that plaintiff had signed and stated that, as provided

3    in ORS 86.735, "the beneficiary [MERS] and the trustee" had elected to sell the property

4    identified in the trust deed (*i.e.*, plaintiff's home), at a specified place and time, to satisfy

5    the obligation secured by the trust deed. Plaintiff wrote to ETS, demanding that the

6    scheduled sale be cancelled. In her letter, plaintiff pointed out that the loan had been

7    originated by Greenpoint, that she had never been advised of any assignment of the trust

8    deed to MERS, ETS, or GMACM, that there was no record of any such assignment, and

9    that it thus appeared to her that the trustee's sale had been instituted by a party or parties

10   that had no rights in either the note or the trust deed and, therefore, had no authority to

11   nonjudicially foreclose. The letter ended by demanding copies of various documents

12   relating to the trust deed, including documents establishing the "entire chain of title to the

13   Deed of Trust and note." Plaintiff did not hear back from ETS, but the trustee's sale was

14   rescheduled for a later date.

15          Before the rescheduled sale occurred, plaintiff filed this action for

16   injunctive and declaratory relief, naming MERS, GMACM, and ETS as defendants. In

17   her complaint, plaintiff described the events outlined above, and further alleged that

18          "plaintiff has never been provided with any Assignment or other document
19          demonstrating the transfer of the full and unencumbered interest in both the

_____

         [1]    ETS purports to be the agent of the current trustee, LSI Title Company of
Oregon, LLC. The parties generally refer to ETS as the trustee and, hereinafter, for the
sake of simplicity, we do so as well.

5

1        Note and the Deed of Trust from the original lender * * * to any person or
2        entity * * * and has no knowledge how defendant MERS or defendant ETS
3        ever acquired any legal rights under the Note and Deed of Trust sufficient
4        to institute foreclosure proceedings."

5    Plaintiff sought to enjoin the scheduled sale on the ground that defendants had failed to

6    demonstrate that they had a legal interest in the trust deed or the underlying note that

7    would entitle them to foreclose. Plaintiff also sought declarations that (1) defendants did

8    not have the necessary legal or equitable interests in either the note or the deed of trust to

9    institute a foreclosure under the OTDA; (2) there had been no lawful assignment of the

10   deed of trust "from the original lender to any of the defendants;" and (3) defendant's

11   attempt to foreclose by advertisement and sale was "legally defective and precluded from

12   enforcement."

13               Defendants filed a motion for summary judgment, asserting it was

14   "indisputable" that plaintiff had defaulted on her loan and that ETS and GMACM were

15   proper parties to initiate the foreclosure. With respect to the latter point, defendants

16   asserted that MERS was "the beneficiary of the Deed of Trust, as nominee of the original

17   lender's assignee. Aurora Bank"; that ETS was the agent of the "duly appointed

18   successor" to the original trustee; and that GMACM received the right to "service" the

19   loan from the original lender and, under its servicing agreement with the new owner of

20   the loan, Aurora Bank, [2] GMACM was authorized to initiate foreclosure on Aurora

---

      [2]      Aurora Bank, the reputed owner of the note, is not a party to this action.

6

1   Bank's behalf.[3]   Defendants attached an affidavit by a GMACM employee and certain

2   other materials in support of those assertions. Plaintiff responded that defendants'

3   evidence was insufficient because it failed to show that (1) MERS had a beneficial

4   interest in the property that would allow it to initiate foreclosure or to assign or transfer

5   any interest in the property to other defendants; or (2) GMACM or ETS had obtained an

6   interest in the trust deed by means of valid assignments or transfers that would allow

7   them to foreclose.

8           At the hearing on the summary judgment motion, the parties' arguments

9   shifted away from a general debate about the sufficiency of MERS' and the other

10   defendants' "interests" in the note and trust deed and toward a more specific statutory

11   question -- whether the precondition that "any assignments of the trust deed by the

12   beneficiary * * * [be] recorded in the mortgage records of the [relevant] county," ORS

13   86.735(1),[4] had been satisfied. Defendants argued that, insofar as the beneficiary

14   originally named in the trust deed remained the beneficiary at the time foreclosure

15   proceedings were initiated, there were no "assignments of the trust deed by the

16   beneficiary" to record. Plaintiff argued that MERS was not the "beneficiary" within the

---

    [3]   ORS 86A.175 authorizes certain entities to "service or collect" mortgage
loans "with the permission of the lender, note owner, note holder or other holder of an
interest in a note." For purposes of that statute, "service[ing] or collect[ing]" includes
"exercising contractual, statutory or common law remedies, such as * * * judicial or
nonjudicial foreclosure." ORS 86A.175(3)(e)(C).

    [4]   ORS 86.735(1) is set out in its entirety above, __ Or at __ (slip op at 3).

7

1  meaning of ORS 86.735(1) and that there was reason to believe that the true beneficiary,

2  Greenpoint, had assigned the trust deed, because a party who was a stranger to the

3  original transaction was trying to foreclose. According to plaintiff, the assignee's failure

4  to record that or any subsequent assignment raised a factual question as to whether a

5  precondition of nonjudicial foreclosure had been satisfied.

6          The trial court granted defendant's motion for summary judgment. The

7  court concluded that MERS was the trust deed's beneficiary, and it also appeared to

8  conclude that ETS was a lawfully appointed trustee that was authorized to foreclose

9  under ORS 86.735 if the statutory requirements were satisfied. The court further

10  concluded that, insofar as there was no evidence of any assignment of the trust deed by

11  ETS or MERS, there was no triable issue of fact with respect to the contention that

12  defendants had failed to satisfy the recording requirement in ORS 86.835(1).

13          Plaintiff appealed, arguing that the summary judgment record contained

14  evidence that Greenpoint, and not MERS, was the trust deed's original "beneficiary," and

15  that Greenpoint had transferred its interest in the trust deed without recording the transfer.

16  Plaintiff argued that, in light of that evidence, questions of fact remained as to (1)

17  whether MERS or the other defendants had a sufficient interest in the trust deed to initiate

18  foreclosure under the OTDA, and (2) whether the recording requirement in ORS

19  86.735(1) had been satisfied.[5]

---

    [5]     The latter point was raised in the Court of Appeals by *amicus curiae*
Oregon Trial Lawyers Association (OTLA). The Court of Appeals rejected defendants'

8

| 1  | The Court of Appeals reversed. *Niday,* 251 Or App at 301. After |
|----|---|
| 2  | examining the definition of "beneficiary" in ORS 86.705(2) in the context of the |
| 3  | surrounding statutes and case law, it concluded that, regardless of the trust deed's |
| 4  | designation of MERS as "the beneficiary under this Security Instrument," Greenpoint, the |
| 5  | lender whose right to repayment the trust deed secured, was, at inception, the trust deed's |
| 6  | "beneficiary" for purposes of the OTDA. *Id.* at 298-99. After observing that there was |
| 7  | evidence in the summary judgment record that Greenpoint had transferred its interest in |
| 8  | the promissory note, and that, under this court's cases, a mortgage (or trust deed) is |
| 9  | transferred by operation of law when the note it secures is transferred, the court |
| 10 | considered whether such a transfer of the promissory note would constitute an |
| 11 | "assignment[] of the trust deed" for purposes of the statutory requirement at ORS |
| 12 | 86.735(1). *Id.* at 299-300. |
| 13 | The Court of Appeals rejected defendants' contention that the statutory term |
| 14 | "assignments" refers only to formal, written assignments that are capable of recordation |
| 15 | in their own right. It held that the evidence that Greenpoint had transferred the note |
| 16 | created a genuine issue of material fact as to whether ORS 86.735(1) had been satisfied. |
| 17 | *Id.* Notably, the Court of Appeals did not address plaintiff's other argument for |
| 18 | enjoining, and declaring invalid, the contemplated foreclosure -- that MERS and the other |
| 19 | defendants had no legal or equitable interest in the trust deed that would permit them to |

contention that that argument had not been preserved in the trial court, and gave plaintiffs
the benefit of OTLA's argument. 251 Or App at 293 n 11, 300 n 15.

9

1    initiate foreclosure under the OTDA.

2    III. DOES A GENUINE ISSUE OF FACT REMAIN AS TO WHETHER
3    THE OTDA'S RECORDING REQUIREMENT, ORS 86.735(1), WAS
4    SATISFIED?

5    Before this court, defendants argue that, contrary to the Court of Appeals'

6    decision, there is no evidence in the summary judgment record that creates a triable issue

7    of fact as to whether a "beneficiary" of the trust deed made an "assignment" of the trust

8    deed within the meaning of the recording requirement in ORS 86.735(1). Defendants

9    begin with the Court of Appeals' rejection of MERS's status as "beneficiary." They argue

10   that MERS can be, and is, the "beneficiary" of the trust deed at issue, by virtue of its

11   designation as such in the trust deed.

12   Defendants rely on the OTDA's definition of the term, at ORS 86.705(2):
13
14   "As used in ORS 86.705 to 86.795:

15   "* * * * *

16   "(2) 'Beneficiary' means a person named or otherwise designated in a
17   trust deed as the person for whose benefit a trust deed is given, or the
18   person's successor in interest, and who is not the trustee unless the
19   beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

20   Defendants contend that the phrase "named or otherwise designated" shows that the

21   legislature intended that the parties to a trust deed have the ability to contractually

22   identify the "beneficiary" without regard to whom the trust deed actually benefits.

23   Defendants posit that the definition must be read consistently with "long established

24   Oregon statutory and common law principles authorizing agents * * * to act as

25   beneficiary and hold legal and record title to interests in real estate." In other words,

26   defendants argue, the "named or otherwise designated" wording shows that the legislature

10

1    intended to permit the lender (who usually is "the person for whose benefit the trust deed

2    is given") to designate its agent or nominee as the trust deed's beneficiary.

3              This court rejected all of those arguments, and others like it, in *Brandrup*,

4    __ Or at __ (slip op at 13-22). In *Brandrup*, we noted that a proposed interpretation of

5    the definition of the word "beneficiary" in ORS 86.705(2) that is virtually identical to the

6    one that defendants now offer failed to account for a significant portion of the definition's

7    words, which focused on the beneficiary's function in the trust deed arrangement as "the

8    person for whose benefit the trust deed is given." We reasoned that, to give all of the

9    words of the definition their intended meaning, it was necessary to conclude that, *in*

10   *addition to* being the person "for whose benefit the trust deed is given," the beneficiary

11   must be "named or otherwise designated" as such in the trust deed. *Id.* at __ (slip op at

12   15-16). We observed that, in a typical trust deed transaction where the obligation that is

13   secured by the trust deed is memorialized in a promissory note, the "beneficiary" would

14   be the person who is entitled to repayment of the note obligation, that is, either the lender

15   or the lender's successor in interest. *Id.* at __ (slip op at 16). Finally, we concluded that,

16   although a lawful agent might have authority to act on the true beneficiary's behalf with

17   respect to the trust deed, and might even appear on documents in the beneficiary's stead,

18   such an agent "cannot *become* the 'beneficiary' for purposes of [the] statutory requirement

19   [set out at ORS 86.735(1), which] is defined, in part, by the status of the 'beneficiary.'"

20   *Id.* at __ (slip op at 21).

21              In the trust deed at issue here, MERS is "named" as the beneficiary ("The

22   beneficiary of the Security Instrument is MERS (solely as nominee for Lender and

11

1    Lender's successors and assigns and the successors and assigns of MERS)[.]"). But

2    MERS is not "the person for whose benefit the trust deed is given." Rather, the terms of

3    the trust deed "designate" the "Lender" (Greenpoint) as that person ("This Security

4    Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions

5    and modifications of the Note; and (ii) the performance of Borrower's covenants and

6    agreements under this security Instrument and the Note."). Thus, for purposes of the

7    requirement for nonjudicial foreclosure that "any assignments of the trust deed by the * *

8    * beneficiary" be recorded, the "beneficiary" of the trust deed is Greenpoint or its

9    successors, and not MERS.

10          Defendants argue, however, that even if "naming" MERS as the beneficiary

11   in the trust deed is not sufficient, by itself, to make it so, the fact remains that the trust

12   deed conveys to MERS the right to exercise "all" of the beneficial owner's interests under

13   the trust deed (as the beneficial owner's agent) if that should become necessary to qualify

14   MERS as the trust deed's beneficiary. Defendants refer to the following provision in the

15   trust deed:

16          "Borrower understands and agrees that MERS holds only legal title to the
17          interests granted by Borrower in this Security Instrument, *but, if necessary*
18          *to comply with law or custom, MERS (as nominee for Lender and Lender's*
19          *successors and assigns) has the right: to exercise any or all of those*
20          *interests*, including, but not limited to, the right to foreclose and sell the
21          property, and to take any action required of Lender including, but not
22          limited to, releasing and canceling this Security Instrument."

23   (Emphasis added.) Anticipating an argument that the trust deed beneficiary must have a

24   right to receive repayment of the loan obligation that the trust deed secures, defendants

25   contend that the foregoing provision conveys to MERS, "if necessary to comply with law

12

1    or custom," a right to receive payment of the loan obligations on behalf of the lender or

2    noteholder."

3              But the right to "receive" payment on a note "on behalf of" a principal is

4    distinct from the right to repayment on one's own behalf. As discussed above, it is the

5    latter right that defines a trust deed "beneficiary" in the ordinary trust deed transaction.

6    __ Or at __ (slip op at 11) (the beneficiary is the person "entitled to repayment of the note

7    obligation"). Thus, as this court observed in *Brandrup*, with respect to identical wording

8    in the trust deeds at issue in that case, "[u]nless the * * * provision transforms MERS into

9    [the person to whom the obligation that the trust deed secures is owed], it cannot

10   transform MERS into the 'beneficiary' of the trust deed." *Brandrup*, __ Or at __ (slip op

11   at 25).

12             As broad as the "law or custom" provision appears to be, it is not broad

13   enough to convey that particular right. As this court explained in *Brandrup*:

14        "The provision first states that MERS holds 'only legal title to the interests
15        granted by borrower in this Security Instrument.' When the provision
16        thereafter states that MERS has the right 'to exercise any or all of *those*
17        interests, if necessary to comply with law or custom, it refers to the
18        interests 'granted by the borrower in this security instrument.'"

19   *Id.* at __ (slip op at 25) (emphasis in original). But the only interests that are granted by a

20   borrower in a trust deed are a legal interest in the real property that the trust deed burdens

21   and that legal interest's beneficial counterpart. Thus, the "law or custom" provision

22   cannot convey to MERS the right that would qualify it as the trust deed's beneficiary --

23   the right to repayment of the obligation that the trust deed secures. It follows that,

24   regardless of MERS' designation as such in the trust deed, and regardless of wording in

13

1   the trust deed that purports to grant MERS various "interests" belonging to the lender "if

2   necessary to comply with law or custom," MERS cannot be the beneficiary of the trust

3   deed in this case. Rather, insofar as the trust deed "secures to Lender" the "repayment of

4   the Loan" and other covenants relating to that obligation, the lender (Greenpoint) was the

5   original "beneficiary" of the trust deed for purposes of the OTDA. The Court of Appeals

6   did not err in so holding. *Niday*, 251 Or App at 298-99.

7   Defendants argue that, in any event, the Court of Appeals erred in

8   concluding that an issue of fact existed with respect to whether there had been any

9   "assignment[] of the trust deed" by Greenpoint that triggered the recording requirement in

10  ORS 86.735(1). In so holding, the Court of Appeals relied on (1) evidence that the

11  promissory note secured by the trust deed had been transferred, and (2) the legal premise

12  that a trust deed is "assigned" by operation of law when the underlying promissory note is

13  transferred. *Niday*, 251 Or at 299. But defendants contend that, when, as a prerequisite

14  to nonjudicial foreclosure, the legislature adopted the requirement in ORS 86.835(1) that

15  "any *assignments* of the trust deed by the trustee or the beneficiary" be recorded, it did

16  not intend that "assignments" include transfers of a promissory note that result in an

17  equitable transfer of the associated trust deed by operation of law. To the contrary,

18  defendants argue, the legislature intended to require recordation only of formal, written

19  assignments of the trust deed.

20  Again, this is an issue that was discussed and decided in *Brandrup*, but this

21  time, *Brandrup* supports defendants' interpretation of the statutory phrase. In *Brandrup*,

22  this court concluded that the phrase "any assignments" was not, itself, dispositive. We

14

1    noted that ORS 86.735(1) -- and the very concept of recordation -- assumes the existence

2    of an assignment in recordable form, *i.e.*, a written document that is separate from the

3    note and that describes the burdened property. We acknowledged that parties to the

4    transfer of a promissory note can always memorialize the transaction in a separate writing

5    that is recordable, but we observed that ORS 86.735(1) does not express any requirement

6    that that be done. *Brandrup*, __ Or at __ (slip op at 31).

7             We noted, further, that ORS 86.735(1) bears a resemblance to a statute that

8    was in effect when the OTDA was enacted in 1959 that provided, in part, that "*every*

9    *assignment* of mortgage shall be recorded," *former* ORS 86.070 (1959).[6] This court had

10   interpreted that statute in *Barringer v. Loder*, 47 Or 223, 224-28, 81 P 778 (1905), as

11   recognizing that a mortgage could be transferred by indorsement of the associated

12   promissory note, but as only requiring the recording of those assignments of mortgage

13   that were "in writing, executed and acknowledged with the same formality as required in

14   deeds and mortgages of real property." We concluded in *Brandrup* that the legislature

15   likely had *former* ORS 86.070 (1959) in mind when it adopted similar wording in ORS

16   86.735(1), and that it intended to assign a similar, narrow meaning to the term

17   "assignment" in the latter statute. *Brandrup*, __ Or at __ (slip op at 33-34). We

18   concluded, in other words, that in providing that a trustee may nonjudicially foreclose

19   only if "any assignments of the trust deed by the trustee or beneficiary * * * are

---

[6]      *Former* ORS 86.070 was repealed in 1965. Or Laws 1965, ch 252, § 1.

15

1   recorded." ORS 86.735(1) refers to written assignments of a trust deed in recordable

2   form, and not to assignments of trust deeds that result by operation of law by transfer of

3   the note.

4        According to that understanding, although the Court of Appeals correctly

5   observed that there is evidence in the summary judgment record that the trust deed's

6   beneficiary, Greenpoint, sold the promissory note associated with the trust deed, that

7   transaction does not qualify as an "assignment[] of the trust deed" for purposes of the

8   recording requirement of ORS 86.735(1). Neither is there evidence in the summary

9   judgment record of any "assignment" of the trust deed in the intended sense, that is, a

10  formal, written assignment of the trust deed, itself. Thus, on the question of whether

11  defendants violated ORS 86.735(1) by initiating foreclosure when Greenpoint sold the

12  promissory note but did not record an assignment of the trust deed, there is no issue of

13  material fact.

14               IV. DOES A GENUINE ISSUE OF FACT REMAIN?

15       That leaves us to consider whether a genuine issue of material fact exists

16  that is pertinent to plaintiff's original challenge to the scheduled foreclosure sale -- that

17  none of defendants possessed a qualifying legal interest in the trust deed or note that

18  would allow them to initiate foreclosure under the OTDA. That challenge is based on

19  plaintiff's allegations that she had received a "Trustee's Notice of Sale" that referred to

20  ETS as the trustee of the trust deed and MERS as its beneficiary, that, in spite of the trust

21  deed's designation of MERS, the original beneficiary was the lender, and that plaintiff

22  had no knowledge or information as to whether or how any of defendants had acquired

16

1    any legal rights in the note and trust deed that were sufficient to institute foreclosure

2    proceedings.

3                    In support of their motion for summary judgment, defendants submitted (1)

4    copies of the promissory note and trust deed; (2) an affidavit by an employee of the loan

5    servicer (GMACM) describing what defendants believed were the relevant transactions;

6    (3) a report from the MERS database showing the same transactions; and (4) a copy of

7    MERS's appointment of ETS as a successor to the original trustee, showing that the

8    appointment had been recorded in the county land records.[7] Defendants asserted that that

9    evidence established that

10          "GMACM, as the holder of the original note and servicer of plaintiff's loan,
11          properly initiated the foreclosure of the Deed of Trust on behalf of MERS,
12          the beneficiary of the Deed of Trust as the nominee of the original lender's
13          assignee, Aurora Bank. LSI [(ETS's principal)], the duly appointed
14          successor trustee, properly executed the non-judicial foreclosure."

15    Plaintiff responded that defendants' evidence relied on the legitimacy of MERS's status as

16    the trust deed's beneficiary. Plaintiff insisted that MERS was *not* the trust deed's

17    beneficiary, but a mere nominee of the beneficiary, and that it therefore lacked authority

18    not only to foreclose, but also to assign interests in the trust deed or underlying note to

_____

        [7]     In the hearing, defendants apparently produced the original promissory
note. It is unclear from the record what, if anything, the note showed about the person
entitled to enforce the note or, if different, the owner of the note. We know that
GMACM claimed to be "holding" the note in its capacity as servicer of the loan, and that
GMACM did not claim to own the note or to act on its own behalf in the foreclosure
proceeding. There is no evidence in the record as to whether or how the note had been
transferred to GMACM.

17

1   others. Plaintiff also pointed to defendants' failure to produce, in response to her

2   demands, any document showing that MERS or ETS had acquired interests in the note

3   and trust deed that would entitle them to nonjudicially foreclose.

4                   Because the trial court did not include any explanation of its decision in its

5   written order, its reasons for granting summary judgment for defendants must be

6   discerned from its comments during the summary judgment hearing. Those comments

7   suggest, on the one hand, that the court accepted MERS's designation as beneficiary in

8   the trust deed as conclusive evidence of that status, and thus concluded that no triable

9   issue of fact existed with respect to MERS's authority to initiate (or, specifically, to direct

10  the trustee to initiate) a nonjudicial foreclosure proceeding. But the trial court also

11  suggested that the question of whether the trustee was acting on behalf of a lawful

12  beneficiary was a matter between the trustee and the beneficiary, not one that the

13  borrower could assert to derail a foreclosure under the statute. At any rate, the court

14  appeared to conclude that defendants' evidence established ETS's authority, as a validly

15  appointed successor to the original trustee, to direct or participate in a nonjudicial

16  foreclosure proceeding under ORS 86.735. The Court of Appeals' opinion did not

17  address either of those apparent conclusions or the broader question of whether

18  defendants had interests in the note and trust deed that would authorize them to proceed

19  with foreclosure under the statute. We now turn to those issues.

20                  We begin with the trial court's apparent conclusion that the summary

21  judgment record conclusively established that MERS was the beneficiary of the trust

22  deed and, thus, was entitled to initiate a foreclosure proceeding. That determination

1    appears to rest entirely on the fact that the trust deed, which was recorded in the pertinent

2    real property records, identified MERS as its "beneficiary."

3    However, as discussed above, __ Or at __ (slip op at 11-14), and in

4    *Brandrup*, __ Or at __ (slip op at 13-27), the fact that MERS was identified in the trust

5    deed as the "beneficiary" does not make it so for purposes of the OTDA. Rather, the

6    "beneficiary" is the person to whom the obligation that the trust deed secures is owed,

7    *Brandrup*, __ Or at __ (slip op at 22), in this case, either the lender or its successor. As

8    noted above, __ Or at __ (slip op at 13-14), under that meaning, MERS is not the trust

9    deed's beneficiary. MERS therefore cannot claim any authority, *as the trust deed's*

10   *beneficiary*, to initiate or direct the nonjudicial foreclosure of a trust deed.

11   Still, as this court recognized in *Brandrup*, __ Or at __ (slip op at 41-46),

12   even if MERS lacks authority to act *as* the trust deed's beneficiary, it may have authority

13   to act *on behalf of* the beneficiary if it can demonstrate that it has an agency relationship

14   with the beneficiary and that the agency agreement is sufficiently expansive. Although in

15   *Brandrup* we discussed that possibility in connection with the issue of MERS' authority

16   to *assign* a trust deed, it would seem to apply equally to the present issue of MERS's

17   authority to *foreclose* the trust deed. In either case, MERS' authority to act as the

18   beneficiary's agent depends on who succeeded to the lender's rights, whether those

19   persons manifested consent that MERS act on their behalf and subject to their control,

20   and whether MERS has agreed to so act. *Brandrup*, __ Or at __ (slip op at 44) (citing

21   *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683, 694 (1995)).

22   Although *Brandrup* is not a summary judgment case, it nevertheless is

19

1    instructive with respect to how MERS' status as a trust deed beneficiary's agent, and the
2    nature and scope of its authority as an agent, might be established. In that case, this court
3    rejected the proposition that MERS's designation in a trust deed as "nominee for Lender
4    and Lender's successors and assigns" established an agency relationship between MERS
5    and the original lender or any successor to the original lender. We did so primarily
6    because the original lender and its successors were not signatories to the trust deed. __
7    Or at __ (slip op at 46). We acknowledged, however, that, depending on its terms, the
8    much-discussed agreement between MERS and members *might* establish MERS's
9    authority to act as a "common agent" for the original lender and any successors who are
10   members of MERS. *Brandrup*, __ Or at __ (slip op at 23 n 7, 46). And, *Brandrup* aside,
11   there is always the possibility of a separate agreement between MERS and a lender's
12   successors in interest, authorizing MERS to act as the successors' agent in a foreclosure
13   proceeding.

14          But, as far as we can tell, there is nothing in the summary judgment record
15   in this case that identifies the successors to the original lender's interests or shows that
16   MERS is authorized, as the agent of the successors to the original lender's interests, to
17   initiate or direct a nonjudicial foreclosure proceeding under the OTDA. There is *some*
18   evidence that the current owner of the note is Aurora Bank and that Aurora Bank is a
19   member of MERS. But there is no evidence as to whether Aurora Bank is a successor to
20   the original lender's interests. Nor is there evidence of an agency agreement between
21   Aurora Bank and MERS, or between MERS and its members as a whole, much less one
22   that authorizes MERS to initiate foreclosures on behalf of Aurora Bank. Further, there is

1    some suggestion that GMACM is the "holder" of the note. If the note is negotiable, it is

2    possible that GMACM is a successor to the original lender's interests or that both Aurora

3    Bank and GMACM share that role; however, neither the record nor the parties' arguments

4    establish those matters beyond genuine dispute.[8]

5                The trial court nevertheless appeared to reason[9] that the beneficiary's

6    authority in a decision to proceed with nonjudicial foreclosure is immaterial. To the

7    extent that the court so reasoned, we disagree. On the one hand, it is true that the trustee,

8    and only the trustee, is authorized to foreclose a trust deed by advertisement and sale.

9    ORS 86.710, ORS 86.735. However, the OTDA contemplates that the beneficiary of the

10   trust deed -- the original lender or its successor -- is entitled to determine whether and

11   how to foreclose a trust deed after default. For example, ORS 86.710 expressly provides

12   that the beneficiary can reject the nonjudicial foreclosure procedure in favor of an

---

[8]        The parties have not addressed the identity of the beneficiary if, as we
conclude, it is not MERS. That issue is by no means academic. If a note is negotiable,
the "party entitled to enforce the note" (the "PETE") under ORS 73.0301 may not be the
same person as the owner of the note, that is, the party entitled to the economic benefits
of the note. Because a mortgage or trust deed follows the note that it secures, *United
States Nat. Bank v. Holton,* 99 Or 419, 428-29, 195 P 823 (1921), the potential separation
of ownership and PETE status raises the question of whether a lender's successor -- that
is, the beneficiary -- must be the owner, the PETE, or both? Most courts that have thus
far addressed the issue have concluded that PETE status, not ownership, confers the right
to foreclose. *See, e.g., Edelstein v. NY Mellon,* 286 P3d 249, 257 (Nev 2012). Because
the parties have not addressed the issue, we do not discuss it further here.

[9]        The court opined that the foreclosure of the trust deed at issue could
proceed, without regard to whether MERS was authorized to act as the trust deed's
beneficiary, because "we have a trustee and the trustee is foreclosing."

21

1    ordinary judicial foreclosure. More importantly. the beneficiary has absolute authority to

2    appoint a successor trustee at any time after a trust deed is executed under ORS

3    86.790(3), an authority that all but guarantees the beneficiary's control over any

4    foreclosure decision.

5              However, even if the beneficiary's authority were immaterial, summary

6    judgment still would be improper in the present case. That is so because, on the present

7    record, MERS' involvement in the appointment of the current trustee casts doubt on the

8    trustee's status. The trial court concluded that ETS was the lawfully appointed trustee

9    ("of record, we have * * * the chain, if you will, back to the original trustee First

10   American Title"). The trial court apparently relied on a document in the summary

11   judgment record showing that MERS had appointed ETS as successor to the original

12   trustee, and also showing that the appointment had been recorded in the Clackamas

13   County real property records. But, appointments of a successor trustee may only be made

14   by the trust deed beneficiary, ORS 86.790(3), and, as discussed, MERS is not, and never

15   has been, the beneficiary of the trust deed for purposes of the OTDA. In the absence of

16   evidence in the record showing the identity of the lender's successors in interest and that

17   MERS had authority to act for those successors in interest,[10] an issue of fact remains as to

18   the validity of ETS's appointment as successor trustee, and, in consequence, its authority

---

[10]    As discussed above, __ Or at __ (slip op at 20-21), there is nothing in the
summary judgment record that establishes MERS's authority to act as the agent for
anyone.

22

1    to initiate and pursue a nonjudicial foreclosure proceeding under the OTDA.[11] It follows

2    that the trial court erred in granting summary judgment to defendants.

3             The decision of the Court of Appeals is affirmed. The judgment of the

4    circuit court is reversed, and the case is remanded to that court for further proceedings.

---

[11]    This same logic would apply to any contention that GMACM had authority to direct nonjudicial foreclosure as the servicer of the loan with the lender's or note owner's/holder's permission to proceed, ORS 86A.175(1), (3)(e)(C). Even if there were undisputed evidence in the record showing that GMACM had the required status or authority to direct a nonjudicial foreclosure (and there is not), the uncertain state of the record with respect to ETS's status as the trustee still would preclude summary judgment.

23

1            KISTLER, J., concurring in part and specially concurring.

2            For the reasons stated in the opinion concurring in part and dissenting in

3    part in Brandrup v. Recontrust Company, N.A., ___ Or ___, ___ P3d ___ (decided this

4    date), I concur in part in the majority's reasoning and in its judgment.

5            Balmer, C.J., joins in this opinion concurring in part and specially

6    concurring.

1