CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

JUL 1 0 2013

LODGED_____REC'D_____
PAID_____DOCKETED_____

Jessica P. Sam, Ha To Ha
8230 SE Yamhill Street
Portland, OR 97216
Phone: (503) 961-5506
Email: Jessicasam555@msn.com

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| In Re:<br>Jessica P. Sam, Ha To Ha, Debtors | Bankruptcy Case No. 13-32107-elp7 |
| JESSICA P. SAM and HA TO HA, wife and husband,<br><br>Plaintiff, vs. | **Adversary Case No. _____**<br><br>**COMPLAINT TO VERIFY THE VALIDITY OF DEBT** |
| DEUTSCHE BANK NATIONAL TRUST COMPANY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE NOTEHOLERS OF AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust; RESIDENTIAL CREDIT SOLUTIONS, INC.; REGIONAL TRUSTEE SERVICES CORPORATION; AAMES FUNDING CORPORATION, DBA AAMES HOME LOAN; JOHN DOES 1-10<br><br>Defendants. | **DEMAND FOR JURY TRIAL** |

## PARTIES

1. Plaintiffs Ha To Ha and Jessica P. Sam are husband and wife and joint legal entity.  Plaintiff

   Ha To Ha is the owner of the property commonly known as 8230 SE Yamhill, Portland,

   Oregon 97216 (the "Property"), located in Multnomah County, Oregon.  Plaintiffs Ha To Ha

and Jessica P. Sam are residents of the Property.

2. Defendant Deutsche Bank National Trust Company in its Capacity as Indenture Trustee for the Noteholders of Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust, is a Delaware trust (hereafter "DBNT").

3. Defendant Residential Credit Solutions, Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas (hereafter "RCSI").

4. Defendant Regional Trustee Services Corporation is a Washington corporation with its principal place of business in Seattle, Washington (hereafter "RTSC").

5. Defendant Aames Funding Corporation, dba Aames Home Loan is an inactive California corporation, last registered to conduct business in Oregon in 2007, and servicer license revoked in California on or around December 6, 2007 (hereafter "Aames Funding Corporation").

6. Defendants John Does 1-10 are unknown entities or individuals to be named upon discovery of further information and in amendment to the Complaint.

## JURISDICTION AND VENUE

7. This is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. §157(a)(b)(1), (b)(2)(k).

8. This is an adversary proceeding ("Complaint") pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

9. Venue is proper in the United States District Court for the plaintiff's since the physical resident address is in the same district where the court is located.

## FACTS

10. On or about April 18, 2005 Plaintiff Ha To Ha allegedly received a purported loan via an Adjustable Rate Note ("Note") from Aames Funding Corporation, dba Aames Home

Loan, 350 South Grand Avenue, 47th Floor, Los Angeles, CA 90071 in the amount of $202,400.00, for the property address of 8230 SE Yamhill Street, Portland, OR 97216.

11. The Note defines the "Lender" as Aames Funding Corporation, dba Aames Home Loan.

12. The Note was secured by a Deed of Trust, recorded April 27, 2005 in the official records of Multnomah County, Oregon, as document number 2005-074270. Exhibit # 1.

13. The Deed of Trust was secured against Plaintiffs' residence, defining the "Borrower" as Ha To Ha; the "Lender" as Aames Funding Corporation, dba Aames Home Loan; the "Trustee" as Lindsay Harte Law Office; and the "Note" as the Note described above. (Together the Deed of Trust and Note are referenced herein as the "Mortgage.")

14. Upon information provided by the Securities and Exchange Commission (SEC), the Aames Home Loan was sold shortly after its inception into a "Mortgage-Backed Security" investment fund. This information source is a public access website at www.secinfo.com.

15. The Pooling and Servicing Agreement (PSA) per The SEC information indicated that the Mortgage was sold by: (1) Aames Funding Corporation ("Originator"); to (2) Aames Investment Corporation ("Seller"); to (3) "CWABS, Inc." ("Depositor"); (4) DBNT was named the Indenture Trustee. Exhibit # 2.

16. The SEC Information also indicated The PSA only named DBNT as Indenture Trustee for the Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust" ("MBS Trust").

17. None of the transfers or assignments of Plaintiffs' Mortgage were recorded in the county records of Multnomah County, or any other county, concerning the transfers, intervening assignments, or other documents proving the chain of title of Plaintiffs' Mortgage.

18. The SEC information indicated that on or about May 31, 2005, the MBS Trust was closed, pursuant to the PSA governing the MBS Trust, and any Mortgages would have to have been transferred into the MBS Trust pursuant to the PSA.

19. Plaintiffs believe the actions by Defendants are in violation of the PSA concerning proper transfer of Plaintiffs' Mortgage, the proper recordation of documentation pursuant to the PSA and state and federal law.

20. According to the PSA plaintiffs' Mortgage was not properly transferred.

21. Per The SEC, Defendant Residential Credit Solutions, Inc. acted as the "Servicer" for the Mortgage transfer to the Depositor, into the MBS, and collected payments from Plaintiffs without taking the proper steps to ensure compliance according to Section 2.01 of the PSA

22. Beneficial interest in the Mortgage was not properly transferred, or assigned, at any relevant time, from the inception of the Mortgage until today, pursuant to section 2.01 of the governing PSA and Oregon law ORS 86.735(1).

23. DBNT in its Capacity as Indenture Trustee for the Noteholders of Aames Mortgage Investment Trust 2005-2, a Delaware statutory trust never had any actual interest in the Mortgage.

24. DBNT did not loan any money to Plaintiff Ha To Ha.

25. DBNT did not receive any payments from Plaintiffs.

26. The Deed of Trust was not given for the benefit of Defendant DBNT.

27. Defendant DBNT has never been the Beneficiary.

28. Defendant DBNT does not have any attachment to the Plaintiffs' alleged deed of trust.

29. The beneficial interest in the Note and Deed of Trust were transferred back up the chain of title to the MBS Trust.

30. All transfers were done without recording any documents in the official records of Multnomah County, Oregon, or any other county.

31.   The Originator Aames got paid in full when it sold the loan to the sponsor trust Aames Investment Corporation on May 1st, 2005 per the SEC.

32.   The SEC indicated there was a bona fide sale between Originator Aames to the sponsor trust. See Exhibit # 3.

33.   Plaintiffs have no obligations to the securitized trust.

34.   The Plaintiff's alleged note is not in default due to it was paid in full at the inception of the Aames Investment Corporation Trust on May 1st 2005.

35.   Plaintiffs have no obligation to DBNT.

36.   No evidence shown that Defendant Aames gave Power of Attorney, authorization and representation to Defendant DBNT, Defendant RCSI, Defendant RTSC.

37.   On June 23, 2010 the very first assignment of Deed of Trust ("Assignment") was recorded in the Multnomah County Official Records, No. 2010-077497. Exhibit # 4.

38.   The Assignment from Defendant Aames to Defendant DBNT should have been done right after the loan origination back in 2005.

39.   The recording of the Assignment on June 23, 2010 is a violation of the PSA due to it was recorded outside of the 90 days window of the Trust closing date of May 31st 2005.

40.   The Assignment is void due to it was contractually distinguished, perfected when the sponsor of the loan sold it to the sponsor of the trust on May 1st 2005.

41.   The recordation of the Assignment is fraud upon the public record.

42.   The Assignment is purportedly assigning beneficial interest from Defendant Aames Funding Corporation to Defendant DBNT 5 years after the trust closed.

43.   The Assignment was signed by Jeffrey W. Gideon as Vice President for Defendant Aames Funding Corporation.

44.   Defendant Aames was based in California, not Texas.

45.   The Assignment was notarized in Tarrant County, Texas.

46.   The Assignment gives the address of Defendant DBNT as 4282 N Freeway, Fort Worth,
      TX 76137.

47.   The Assignment was recorded by Defendant Residential Credit Solutions, 4282 N
      Freeway, Fort Worth, TX 76137.

48.   Per Mr. Jeffrey W. Gideon LinkedIn Profile, at the material times, Mr. Jeffrey W. Gideon
      was not a Vice President for Aames Funding Corporation, and was in fact an employee of
      Defendant RCSI. Exhibit # 5.

49.   Per Plaintiffs' Original Deed of Trust, only the Lender can give authorizations to act on
      its behalf.

50.   There is no evidence of Lender granting Defendant RCSI authority to act on behalf of
      Defendant Aames Funding Corporation.

51.   Defendant Aames Funding Corporation was a defunct entity according to this website.
      http://www.corp.ca.gov/ENF/pdf/a/aames_order-revoke.pdf. Also see Exhibit# 6.

52.   The Assignment that was produced, purportedly signed, and recorded is a nullity due to
      Aames being a defunct, dead, paid in full entity.

53.   On June 23, 2010 an Appointment of Successor Trustee ("Appointment") was recorded in
      the Multnomah County Official Records, No. 2010-077498. Exhibit # 7.

54.   The Appointment purportedly appointing the Trustee of the Deed of Trust from Lindsay
      Harte Law Office to Defendant RTSC.

55.   Lindsay Hart Law Office was the Named "Trustee" in the Plaintiffs' Original Deed of
      Trust.

56.     The Appointment was signed by Jeffrey W. Gideon as Vice President for Defendant
        DBNT   in its Capacity as Indenture Trustee for the Noteholders of Aames Mortgage
        Investment Trust 2005-2 is a Delaware statutory trust, by Residential Credit Solutions, its
        Attorney In Fact.

57.     The Appointment was recorded by Defendant RTSC, Seattle, WA.

58.     The Appointment contains the following handwritten information concerning the date
        the document was purportedly signed: *"DATED: 8/28/1 ... 6/15/10 * ...  *Effective
        6/18/2010."* The portion written *"8/28/1"* has been crossed-out and overwritten with
        *"6/15/10* ... *Effective 6/18/2010"* handwriting.

59.     The Appointment was purportedly notarized on June 15, 2010 in Tarrant County,
        Texas.

60.     Mr. Jeffrey W. Gideon was not a Vice President for Defendant DBNT per his
        LinkedIn Profile.

61.     Mr. Jeffrey W. Gideon was in fact an employee of Defendant RCSI.

62.     Mr. Jeffrey W. Gideon was in fact an employee of Washington Mutual also per his
        LinkedIn Profile.  Exhibit # 5.

63.     There is no evidence shown by Aames giving power of attorney or granting Defendant
        RCSI for the Appointment.

64.     There is no evidence shown by Aames giving power of attorney or authority for
        Defendant DBNT to appoint Defendant RTSC as trustee.

65.     The Appointment is invalid due to no evidence were provided by the Original Lender
        Aames.

66.     The Assignment was fraud and void therefore, making this Appointment a nullity.

67. On June 23, 2010 a Notice of Default and Election to Sell (NOD) was recorded in the Multnomah County Official Records, No. 2010-077499, naming Aames Funding Corporation as "beneficiary" and Lindsay Harte Law Office as Trustee. Exhibit # 8.

68. The NOD was signed by Chad Johnson for Defendant RTSC in Seattle, WA. The sale date given in the Notice of Default is October 27, 2010.

69. This NOD is a nullity due to Defendant RTSC does not have the power to enforce, commence Non Judicial or Judicial foreclosure on the Plaintiffs.

70. On June 21, 2011 a Notice of Default and Election to Sell ("Second NOD") was recorded in the Multnomah County Official Records, No. 2011-070262, naming Aames Funding Corporation as "beneficiary" and Lindsay Harte Law Office as Trustee. Exhibit # 9.

71. The Second NOD was signed by Karen James for Defendant Regional Trustee Services, Seattle, WA. The sale date given in the Notice of Default is October 27, 2011.

72. This Second NOD and any sub-sequence NOD are nullity due to Defendant RTSC does not have the power to enforce, commence Non Judicial or Judicial foreclosure on the Plaintiffs.

73. The June 21, 2011 Second Notice of Default is the "operative" Notice of Default because no further Notice of Default has been recorded by any Defendant. The "original" sale date based on this operative Notice of Default was October 27, 2011.

74. On or about October 14, 2011, Plaintiffs sent Notice of Violations of Oregon Trust Deed Act (ORS 86.705-86.795); Exhibit # 10. Demand to Rescind Foreclosure Proceedings Including Trustee's Sale Set for October 27, 2011; Qualified Written Request (QWR) and Request to Verify Debt; Notice of Grievance Under Deed of Trust, via certified mail, to Defendants RTSC, Defendant RCSI and Defendant Aames along with Exhibits A-I (the "QWR/FDCPA Notice").

75.   The Defendants did not timely respond to the QWR/FDCPA Notice.

76.   The Defendants provided limited information on the responses.

77.   On or about August 30, 2012 to recently, Plaintiffs sent more QWR/FDCPA
      Notices/Disputes/demands to cancel sales to Defendants for violations of ORS 86.755(2)
      and ORS 86.755(12). Exhibit # 10.

78.   Defendants provided untimely and inadequate responses.

79.   The Defendants have not address Plaintiffs' QWR/FDCPA Notices.

80.   The Defendants RCSI provided limited information and documentation which Plaintiffs
      already had in their possession.

81.   The Defendants ignored Plaintiffs repeated requests of any alleged debt owed.

82.   The Defendants ignored Plaintiffs repeated requests for investigations of the transactions
      on the total amount owed on each of the NOD.

83.   The Defendants ignore Plaintiffs repeated requests to identify and prove the proper party
      with legal standing.

84.   On or about November 12, 2012, law firm Robinson Tait of Seattle, Washington,
      allegedly representing Residential Credit Solutions, Inc., provided a written response to
      Plaintiff's QWR/FDCPA Notices dated October 14, 2011 and August 30, 2012.

85.   Robinson Tait provided a limited response to the FDCPA request.

86.   Robinson Tait stated "the current lender and beneficiary is Defendant DBNT in its
      Capacity as Indenture Trustee for the Noteholders of Aames Mortgage Investment Trust
      2005-2 is a Delaware statutory trust."

87.   Robinson Tait's November 12, 2012 letter fails to respond to Plaintiff's QWR/FDCPA
      Notices.

88.   Robinson Tait's response to Plaintiffs letter is untimely.

89.   Robinson Tait has not identified they are the appointed attorney from Defendant.

90.   On or about February 22, 2013, Defendant RCSI filed a "Declaration in Support of Objection to Confirmation of Plan" in the bankruptcy of Plaintiff Ha To Ha, Oregon Case No. 12-38965-rld13.  Exhibit # 11.

91.   The Declaration was by Melissa Black, an employee of Defendant RCSI.

92.   Melissa Black stated the Declaration was made on behalf of Defendant DBNT.

93.   Melissa Black stated that she personally examined the records concerning Ha To Ha by compiling data and electronically view imaged documents.

94.   Melissa Black stated that the "Movant" is the holder of and in possession of a note ('Note') for this Loan.

95.   The Declaration stated the original Note is currently held at Robinson Tait, P.S."

96.   The Declaration was signed in Fort Worth, Texas by Defendant RCSI.

97.   The Declaration was signed on behalf of Defendant DBNT.

98.   The Declaration was claiming possession of the Note from DBNT to itself.

99.   The Declaration was claiming possession of the Note from DBNT to Robinson Tait.

100.  The Declaration did not provide any power of attorney.

101.  The Declaration did not provide authority to act on behalf of Defendant DBNT by Defendant RCSI.

102.  The Declaration did not provide any chain of title.

103.  The Declaration did not provide proper recordation of assignments.

104.  Plaintiff Ha filed for Chapter 13 bankruptcy protection on January 5, 2012, Oregon Case No. 12-30053-tmb13 to seek protection from wrongful foreclosure.

105. Plaintiff Ha filed for Chapter 13 bankruptcy Protection on December 6, 2012, Oregon Case No. 12-38965-rld13 to seek protection from wrongful foreclosure.

106. Plaintiffs Jessica P. Sam and Ha To Ha filed for Chapter 7 bankruptcy protection on April 8, 2013, Oregon Case No. 13-32107-elp7, the case under which this Adversary Complaint is filed.

## CLAIMS FOR RELIEF FIRST

## CLAIM FOR RELIEF

### Lack of Standing

107. Plaintiffs re-allege Paragraphs 1- 107 herein.

108. Defendant DBNT or other Defendant representatives have not established how Defendants are the holder of the applicable Note and Deed of Trust, and therefore on the mentioned facts, Plaintiffs allege that Defendant DBNT does not have standing to seek a foreclosure, non-judicially or judicially, and the foreclosure is wrongful.

109. Plaintiff Ha signed a note and trust deed with a lender other than Defendant DBNT or its Agents, or other party purportedly assigning interest of Plaintiff's Note and Deed of Trust.

110. The Lender or Beneficiary Aames Funding Corporation has never assigned any beneficial interest, or authority to act in its behalf, to transfer right, title and interest in the Property to any party. The Assignment recorded by Defendants is void.

111. The proper and rightful beneficiary was not established under ORS 86.735 or other applicable provisions of the Oregon Trust Deed Act, ORS 86.705 – ORS 86.795.

112. Plaintiffs request the Court declare Defendant DBNT, and its Agents Defendants RCSI

and RTSC, do not have standing to seek to enforce the Note or Deed of Trust, including foreclosure proceedings.

### SECOND CLAIM FOR RELIEF
### Wrongful Foreclosure

113.  Plaintiffs re-allege Paragraphs 1- 112 herein.

114.  Plaintiffs re-allege the First Claim for Relief for wrongful foreclosure.

115.  ORS 86.735 sets forth how the trustee may foreclose a trust deed by advertisement and sale.

The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 only if: (1) the trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated.

116.  The Defendants' foreclosure proceedings are defective, because they did not follow the provisions of ORS 86.735, in the following particulars:

    a.  There was no recorded assignment made by beneficiary Aames Funding Corporation to any other entity.

    b.  There was no recorded power of attorney or authorization for any party to act on behalf of the beneficiary Aames Funding Corporation.

    c.  The alleged "Assignment" signed and recorded by Defendant RCSI is a falsified document and of no legal validity.

d. The Assignment is further void and ineffective because Defendant RCSI has no right, title or interest in the Plaintiffs' Mortgage to assign any right, title or interest to any party, including Defendant DBNT or the MBS Trust.

e. The alleged "Appointment" recorded by Defendant RTSC is a falsified document and of no legal validity.

f. The Appointment is further void and ineffective because neither Defendant RCSI, nor Defendant DBNT has any right, title or interest in the Plaintiffs' Mortgage to appoint a successor trustee to any party, including Defendant RTSC.

g. Defendant DBNT is not a party to the Note or Deed of Trust and has no authority to act whatsoever concerning Plaintiffs' Mortgage, nor do its Agents Defendant RCSI or Defendant RTSC.

h. All of the Notices of Default and all of the Amended Notices of Default purport to foreclose in the name of Defendant DBNT and/or Defendant RTSC, via the ineffectual Assignment and Appointment. The Assignment is invalid; the Appointment is invalid, and all Notices of Default and all Amended Notices of Default are improper and legally void.

i. All of the Notices of Default and amended Notices of Default purport to seek to foreclose in the name of the beneficiary are falsely claimed, as the beneficiary is neither Defendant DBNT nor Defendant RTSC. Based on the Assignment and Appointment, Aames Funding Corporation (the beneficiary) never authorized any foreclosure action.

117. Defendants directly violated ORS 86.735, 86.745 and 86.755, among the provisions of the Oregon Trust Deed Act governing non-judicial foreclosure proceedings.

118. Plaintiffs request a declaration from the Court that Defendants' foreclosure proceedings are wrongful and void, and Defendants are barred from further foreclosure proceedings.

## THIRD CLAIM FOR RELIEF

### Oregon Trust Deed Act - OTDA

119. Plaintiffs re-allege Paragraphs 1- 118 herein.

120. Defendants are in violation of ORS 86.735 as stated in the Second Claim for Relief.

121. Defendants are in violation of ORS 86.745 for failing to record a Notice of Default containing all the information required by ORS 86.745 and the Oregon Trust Deed Act, ORS 86.705-86.795 ("OTDA").

122. Defendants are in violation of ORS 86.755(2), because it did not (attempt) to hold the sale date within 180 days after the (operative) Second Notice of Default recorded June 21, 2011. The original sale date was October 27, 2011. This date plus 180 days is April 24, 2012. Including the 147 days in bankruptcy (from January 5, 2012 – May 31, 2012), the latest date a sale could be held under the operative Notice of Default was on or about September 18, 2012. The sale date set by Defendants was after September 18, 2012, and not until December 10, 2012 - which was reset to April 26, 2013 under the same "operative" Notice of Default.

123. The operative Second Notice of Default must be declared void and ineffective due to the timing of the 180-day rule alone, by failing to comply with ORS 86.755(2).

124. The Trustee's Notice of Sale must be declared invalid.

125. Plaintiffs request a declaration from the Court that Defendants have violated provisions of ORS 86.735. ORS 86.745 and ORS 86.755, and are further barred from bringing any foreclosure action.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract /Fiduciary Duty-Accounting

126.   Plaintiffs re-allege Paragraphs 1- 125herein.

127.   The Defendant DBNT and its Agents RCSI and RTSC breached the Contract (Deed of Trust) by failing to perform, illegally attempting to foreclose on the Note and the Deed of Trust because it is not the beneficiary or real party in interest.

128.   The accounting is improper, a full and complete accounting has never been undertaken, including the transfers of the Note/Deed of Trust, the selling and purchasing of the Mortgage, the entry into the MBS Trust, and many other financial items that are unaccounted for.

129.   The Defendants have further improperly assessed charges and fees, improperly assessed interest, improperly charged foreclosure fees, and improperly failed to credit payments in an amount to be determined.

130.   Plaintiffs allege there are other mistakes in the account for payments, assessments, fees, voluntary payments, unapplied funds, suspense accounts, and other charges.  Plaintiffs are therefore entitled to a full accounting from Defendants for all payments, credits, charges, and deductions from the account(s), and the reasons therefore, along with the accounting of the Mortgage into the MBS.

131.   Plaintiffs are entitled to all damages resulting from Defendants' breach of contract and improper accounting.  Defendants must first perform a full, complete and transparent accounting, and to complete the RESPA and FDCPA requirements Defendants have failed to fulfill.

## FIFTH CLAIM FOR RELIEF

### Real Estate settlement Procedures Act – RESPA

132.  Plaintiffs re-allege Paragraphs 1- 131herein.

133.  Defendants RCSI is a servicer of a federally related mortgage loan within the meaning of the Real Estate settlement Procedures Act ("RESPA"), 12 USC § 2601, et seq.

134.  Plaintiffs sent Qualified Written Requests to Defendant RCSI and Defendant DBNT (or its predecessors or Agents or other "debt collectors") requesting investigation of the account, correction of the accounting, proof of beneficial status and other particulars of the account.

135.  Defendant RCSI and Defendant RTSC failed to take the appropriate investigation, or correction of the account, as required by 12 USC §2605(e)(2)(A).

136.  As a result of Defendants RCSI and RTSC pattern and practice of violating RESPA, Plaintiffs are entitled to actual damages in an amount to be determined, including damages for emotional distress, together with legal fees and costs, and additional statutory damages of $1,000 per violation pursuant to 12 USC § 2605(t).

## SIXTH CLAIM FOR RELIEF

### Fair Debt Collection Practices Act – FDCPA

137.  Plaintiffs re-allege Paragraphs 1- 136 herein.

138.  Plaintiffs are "consumers" under the Fair Debt Collection Practices Act, 15 USC §§1692, et seq., ("FDCPA") because Plaintiffs are natural persons that Defendants claim are obligated to pay a debt.

139.  Defendant DBNT has relied on "Agents" in attempts to collect its alleged debt, including its "servicer" Defendant RCSI, and non-judicial foreclosure trustee, Defendant RTSC, and possible others pending discovery.

140. At all material times, the Defendant DBNT, or its Agents did not have a present right to possession of the Property claimed as collateral for the Note.

141. Defendant DBNT and its Agents violated the FDCPA by assessing charges not authorized by the Note or Deed of Trust, by submitting false verifications of the debt, by failing to make proper accounting, by claiming the improper beneficiary, other violations of debt collection laws, and attempting to foreclose on the Property when foreclosure was not authorized by the Note, Deed of Trust, or Oregon law to any party that does not have the present right to possession of the Property. Defendants have no present right to possession of the Property.

142. Plaintiffs are entitled to actual damages in an amount to be proven at trial, including all related fees, emotional stress damages, together with statutory damages of $1,000 per violation, and reasonable fees and costs pursuant to 15 USC §1692k.

## SEVENTH CLAIM FOR RELIEF

### Unfair Debt Collection Practices Act – UDCPA

143. Plaintiffs re-allege Paragraphs 1- 142 herein.

144. Defendants RCSI and RTSC each are a "debt collector" under the Oregon Unlawful Debt Collection Practices Act, ORS 646.639, et seq. ("UDCPA") because RCSI and RTSC, by direct or indirect action, conduct or practice, are enforcing or attempting to enforce an obligation that is alleged to be due to a commercial creditor by a consumer as a result of a consumer transaction, and RCSI and RTSC are principally engaged in the enforcement of security interests by conducting foreclosures of trust deeds and mortgages for alleged creditors.

145. Defendants RCSI and RTSC violated the UDCPA in the particulars given in the previous claims for relief for Accounting, OTDA violations, FDCPA and RESPA.

146. At all material times, Defendants RCSI and RTSC acted with reckless and outrageous indifference to a highly reasonable risk of harm and a conscious indifference to the health, safety and welfare of others.

147. Plaintiffs are entitled to the greater of their actual damages, in an amount to be determined, or statutory damages, plus punitive damages and their fees and costs, pursuant to ORS 646.641.

**WHEREFORE**, Plaintiffs request a Judgment from the Court declaring:

148. On the First Claim for Relief, Plaintiffs request the Court declare Defendant DBNT, and its Agents Defendants RCSI and RTSC, do not have standing to seek to enforce the Note or Deed of Trust, including foreclosure proceedings.

149. On the Second Claim for Relief, Plaintiffs request a declaration from the Court that Defendants' foreclosure proceedings are wrongful and void, and Defendants are barred from further foreclosure proceedings.

150. On the Third Claim for Relief, Plaintiffs request a declaration from the Court that Defendants have violated provisions of ORS 86.735, 86.745 and ORS 86.755, and are further barred from bringing any non-judicial foreclosure action.

151. On the Fourth Claim for Relief, Plaintiffs are entitled to all damages resulting from Defendants' breach of contract and improper accounting. Defendants must first perform a full, complete and transparent accounting, and to complete the RESPA and FDCPA requirements that Defendants have not fulfilled.

152. On the Fifth Claim for Relief, As a result of Defendants RCSI and RTSC pattern and practice of violating RESPA, Plaintiffs are entitled to actual damages in an amount to be determined, including damages for emotional distress, together with fees and costs, and additional statutory damages of $1,000 per violation pursuant to 12 USC § 2605(t).

18 | Page

153. On the Sixth Claim for Relief, Plaintiffs are entitled to actual damages in an amount to be proven, including all related fees, emotional stress damages, together with statutory damages of $1,000 per violation, and reasonable legal fees and costs pursuant to 15 USC §1692. On the Seventh Claim for Relief, Plaintiffs are entitled to the greater of their actual damages, in an amount to be determined, or statutory damages, plus punitive damages and their fees and costs, pursuant to ORS 646.641.

154. Plaintiffs request leave of the Court to amend this Complaint as necessary or required.

## DEMAND FOR JURY TRIAL

Plaintiffs Jessica P Sam and Ha To Ha hereby demands a trial by jury on all claims.

Dated this 7 day of July, 2013

_____
Jessica P. Sam

_____
Ha To Ha
8230 SE Yamhill Street Portland, OR 97216
Phone: (503) 961-5506
Email: Jessica.Sam@seterus.com

COMPLAINT TO VERIFY VALIDITY OF DEBT

# Exhibit 1

95
18⁵
11

Until a change is requested all tax statements shall be
sent to the following address.

Aames Funding Corporation DBA
Aames Home Loan
350 South Grand Avenue
Los Angeles, CA 90071
**WHEN RECORDED MAIL TO**

TransUnion Settlement Solutions, Inc.
Attn: Recording Department
5300 Brandywine Parkway
Suite 100
Wilmington, DE  19803

**Recorded in MULTNOMAH COUNTY, OREGON**
      **C. Swick, Deputy Clerk**
                                    **ATTDS**
**C18    19**
**Total :     111.00**

**2005-074270    04/27/2005 02:37:12pm**

**TAX ACCOUNT NUMBER**
R281439

──────────── [Space Above This Line For Recording Data] ────────────

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated   April 18, 2005
together with all Riders to this document.
**(B) "Borrower"** is   HA TO HA

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   Aames Funding Corporation DBA Aames Home Loan

Lender is a   Corporation
organized and existing under the laws of   The State of California

DOC  #:317841                          APPL #:0004051140
**OREGON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**              **Form 3038 1/01**



**-6(OR)** (0104)
Page 1 of 15   UM50 0104.02   Initials:
VMP MORTGAGE FORMS - (800)521-7291

03 - 3112713   FIDELITY NATIONAL TITLE CO.



Lender's address is  350 South Grand Avenue, 42nd Floor, Los Angeles, CA 90071

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is  Lindsay Harte Law Office

(E) "Note" means the promissory note signed by Borrower and dated  April 18, 2005
The Note states that Borrower owes Lender  Two Hundred Two Thousand Four Hundred and No/100                                                                      Dollars
(U.S. $ 202,400.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  May 1, 2035            .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

DOC #:317842                    APPL #:0004051140

-6(OR) (0104)                    Page 2 of 15                Initials: _____    Form 3038  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of MULTNOMAH :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

As per Exhibit A attached hereto and made a part hereof

which currently has the address of

8230 SE Yamhill Street                                              [Street]
Portland                                        [City], Oregon 97216     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

DOC #:317843          APPL #:0004051140

Initials: ____

-6(OR) (0104)                    Page 3 of 15                    Form 3038  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 4 of 19
Order: 100361229 Comment:

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 7 of 19
Order: 100361229 Comment:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 8 of 19
Order: 100361229 Comment:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

DOC #:317849        APPL #:0004051140

-6(OR) (0104)        Page 9 of 18      Initials: _____      Form 3038 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 10 of 19
Order: 100361229 Comment:

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 11 of 19
Order: 100361229 Comment:

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:317852                 APPL #:0004051140

-6(OR) (0104)                Page 12 of 15         Initials: _____        Form 3038  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. **Required Evidence of Property Insurance.**

## WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

DOC #:317853                     APPL #:0004051140

-6(OR) (0104)                     Page 13 of 15        Initials:        Form 3038  1/01

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                 Ha  To  Ha                  -Borrower


_____    _____ (Seal)
                                                             -Borrower


_____ (Seal)    _____ (Seal)
                             -Borrower                       -Borrower


_____ (Seal)    _____ (Seal)
                             -Borrower                       -Borrower


_____ (Seal)    _____ (Seal)
                             -Borrower                       -Borrower


DOC  #:317854            APPL #:0004051140

-6(OR) (0104)                    Page 14 of 15                Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 14 of 19
Order: 100361229 Comment:

STATE OF OREGON, *Multnomah*                    County ss:
    On this *21 S7*    day of *April 2005*                    , personally appeared the above named
Ha  To  Ha

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 1/5/08                    Before me: *L. HARLESS*

(Official Seal)                                  *L. Harless*

                                                 Notary Public for Oregon

OFFICIAL SEAL
L. HARKLESS
NOTARY PUBLIC-OREGON
COMMISSION NO. 375355
MY COMMISSION EXPIRES JANUARY 5, 2008

DOC #:317855            APPL #:0004051140                           Form 3038  1/01

-6(OR) (0104)                Page 15 of 15

# Exhibit 2

Exhibit 99.2

AGE>

EXECUTION COPY

========================================================================

AAMES INVESTMENT CORPORATION,

as SELLER

and

CWABS, INC.,

as PURCHASER

MORTGAGE LOAN PURCHASE AND ASSIGNMENT AGREEMENT

Dated as of May 1, 2005

Aames Mortgage Investment Trust 2005-2
Mortgage Backed Notes, Series 2005-2

========================================================================

AGE>

TABLE OF CONTENTS

MORTGAGE LOAN PURCHASE AND ASSIGNMENT AGREEMENT

Page

CITALS ...............................................................1

REEMENT...............................................................2

    Purchase and Sale of Mortgage Loans................................2
    Representations and Warranties.....................................4
    Survival of Representations........................................8
    Repurchase, Purchase or Substitution of Mortgage Loans.............8
    Covenants..........................................................8
    Successors and Assigns, Additional Information.....................9
    Indemnification....................................................9
    Notices...........................................................10
    Representations and Indemnities to Survive........................10
'.  Miscellaneous.....................................................10
.   Severability of Provisions........................................10
.   Binding Nature of Agreement; Assignment...........................11
.   Entire Agreement..................................................11
.   Benefits of Agreement.............................................11

HEDULE I - MORTGAGE LOAN SCHEDULE.....................................I-1
HEDULE II -MORTGAGE LOAN REPRESENTATIONS AND WARRANTIES..............II-1

# Exhibit 3

Exhibit 99.2

<PAGE>

EXECUTION COPY

=====================================================================================

AAMES INVESTMENT CORPORATION,

as SELLER

and

CWABS, INC.,

as PURCHASER

MORTGAGE LOAN PURCHASE AND ASSIGNMENT AGREEMENT

Dated as of May 1, 2005

Aames Mortgage Investment Trust 2005-2
Mortgage Backed Notes, Series 2005-2

--------------------------------------------------------------------------------

<PAGE>

## TABLE OF CONTENTS

MORTGAGE LOAN PURCHASE AND ASSIGNMENT AGREEMENT

Page

RECITALS ...............................................................1

AGREEMENT...............................................................2

1.   Purchase and Sale of Mortgage Loans...................................2
2.   Representations and Warranties.......................................4
3.   Survival of Representations..........................................8
4.   Repurchase, Purchase or Substitution of Mortgage Loans...............8
5.   Covenants............................................................8
6.   Successors and Assigns, Additional Information.......................9
7.   Indemnification......................................................9
8.   Notices.............................................................10
9.   Representations and Indemnities to Survive..........................10
10.  Miscellaneous.......................................................10
11.  Severability of Provisions..........................................10
12.  Binding Nature of Agreement; Assignment.............................11
13.  Entire Agreement....................................................11
14.  Benefits of Agreement...............................................11

SCHEDULE I    MORTGAGE LOAN SCHEDULE.....................................I-1
SCHEDULE II  -MORTGAGE LOAN REPRESENTATIONS AND WARRANTIES...............II-1

hereunder shall survive the termination of this Agreement.

(b) Notwithstanding any other provision of this Agreement, in connection with the issuance of the Notes, the Seller shall agree to such modifications and enter into such amendments to this Agreement as may be necessary, in the reasonable judgment of the Purchaser and its counsel, to comply with any rules promulgated by the Securities and Exchange Commission (the "Commission") and any interpretations thereof by the staff of the Commission (collectively, the "SEC Rules"), with reasonable notice to the Seller given the circumstances at such time.

8. Notices. All demands, notices and communications hereunder shall be in writing, shall be effective only upon receipt and shall, if sent to the Purchaser, be addressed to it at CWABS, Inc., 4500 Park Granada, Calabasas, California 91302, Attention: Aames 2005-2; if sent to the Seller, be addressed to it at 350 South Grand Avenue, Los Angeles, California 90071, Attention: Executive Vice President - Capital Markets (with a copy to the General Counsel).

9. Representations and Indemnities to Survive. The respective agreements, representations, warranties, covenants, indemnities and other statements of the Purchaser and the Seller and their respective officers set forth in or made pursuant to this Agreement shall remain in full force and effect, regardless of any investigation made by or on behalf of the Purchaser or the Seller, and will survive delivery of and payment for the Mortgage Loans. The provisions of Section 7 hereof shall survive the termination of cancellation or this Agreement.

10. Miscellaneous. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated except by a writing signed by the party against whom enforcement of such change, waiver, discharge or termination is sought. This Agreement may be signed in any number of counterparts, each of which shall be deemed an original, which taken together shall constitute one and the same instrument.

11. Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

10

<PAGE>

12. Binding Nature of Agreement; Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

13. Entire Agreement. This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

14. Benefits of Agreement. The parties to this Agreement agree that it is appropriate, in furtherance of the intent of such parties set forth herein, that the Indenture Trustee enjoys the full benefit of the provisions of this Agreement as an intended third party beneficiary; provided, however, nothing in this Agreement, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder, the Indenture Trustee and the Noteholders, any benefit or legal or equitable right, power, remedy or claim under this Agreement.

*    *    *

11

<PAGE>

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers as of the date hereinabove written.

CWABS, INC.

By:    /s/ Ruben Avilez
       ----------------------------
       Name:  Ruben Avilez
       Title: Vice President


AAMES INVESTMENT CORPORATION


By:    /s/ John P. Kim
       ----------------------------
       Name:  John P. Kim
       Title:  Executive Vice President


                        MLPA

<PAGE>


                      SCHEDULE I

                MORTGAGE LOAN SCHEDULE

             [On file with the Custodian.]


                          I-1

<PAGE>

                     SCHEDULE II

         MORTGAGE LOAN REPRESENTATIONS AND WARRANTIES

     The Seller hereby represents and warrants to, and covenants with, the
Purchaser that, as to each Mortgage Loan, as of the Closing Date or such other
date specifically set forth herein, and with respect to representation (a)
listed below, as of the Cut-off Date:

     (a) Mortgage Loans as Described. The information set forth in the
Mortgage Loan Schedule is complete, true and correct in all material respects;

     (b) Payments Current. All payments required to be made up to and
including the Cut-off Date for the Mortgage Loan under the terms of the
Mortgage Note have been made and credited. No payment required under the
Mortgage Loan has been delinquent for 30 days or more in the 12 months
preceding the related Closing Date;

     (c) No Outstanding Charges. There are no defaults in complying with
the terms of the Mortgage, and all taxes, governmental assessments, insurance
premiums, water, sewer and municipal charges, leasehold payments or ground
rents which previously became due and owing have been paid, or an escrow of
funds has been established in an amount sufficient to pay for every such item
which remains unpaid and which has been assessed but is not yet due and
payable. The Seller has not advanced funds, or induced, solicited or knowingly
received any advance of funds by a party other than the Mortgagor, directly or
indirectly, for the payment of any amount required under the Mortgage Loan,
except for interest accruing from the date of the Mortgage Note or date of
disbursement of the Mortgage Loan proceeds, whichever is earlier, to the day
which precedes by one month the Due Date of the first installment of principal
and interest;

     (d) Original Terms Unmodified. The terms of the Mortgage Note and
Mortgage have not been impaired, waived, altered or modified in any respect,
except by a written instrument which has been recorded, if necessary to
protect the interests of the Purchaser and which has been delivered to the
Purchaser. The substance of any such waiver, alteration or modification has
been approved by the issuer of any related PMI Policy and the title insurer,
to the extent required by the policy, and its terms are reflected on the
Mortgage Loan Schedule. No Mortgagor has been released, in whole or in part,
except in connection with an assumption agreement approved by the issuer of
any related PMI Policy and the title insurer, to the extent required by the
policy, and which assumption agreement is part of the Mortgage Loan File
delivered to the Purchaser and the terms of which are reflected in the
Mortgage Loan Schedule;

     (e) No Defenses. The Mortgage Loan is not subject to any right of
rescission, set-off, counterclaim or defense, including without limitation the
defense of usury, nor will the operation of any of the terms of the Mortgage
Note or the Mortgage, or the exercise of any right thereunder, render either
the Mortgage Note or the Mortgage unenforceable, in whole or in part, or
subject to any right of rescission, set-off, counterclaim or defense,
including without limitation the defense of usury, and no such right of
rescission, set-off, counterclaim or defense has been asserted with respect
thereto;

                        II-1

<PAGE>

# Exhibit 4

When recorded, mail to:

**RESIDENTIAL CREDIT SOLUTIONS**
Attn: Foreclosure Department
4282 N FREEWAY
FORT WORTH, TEXAS 76137

**Multnomah County Official Records**
**C Swick, Deputy Clerk**           **2010-077497**



**$41.00**

U0685160201000774970020025

**06/23/2010 01:27:43 PM**

1R-MTG ASGT                Cnt=1 Stn=43 ATRGW
$10.00 $11.00 $15.00 $5.00

---

Trustee's Sale No: 09-FAA-96724

## *FAA967240112000000*

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, AAMES FUNDING CORPORATION DBA AAMES HOME LOAN, by these presents, grants, bargains, sells, assigns, transfers and sets over unto DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust., 4282 N Freeway, Fort Worth, TX 76137, all beneficial interest under that certain Deed of Trust dated 4/18/2005, and executed by HA TO HA, as Grantor, to LINDSAY HARTE LAW OFFICE, as Trustee, and recorded on 4/27/2005, under Auditor s File No. 2005-074270, of MULTNOMAH County, State of OREGON, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

1                                    Assn



Trustee's Sale No: 09-FAA-96724

Dated: 6/18/10

AAMES FUNDING CORPORATION DBA AAMES
HOME LOAN

BY: _____

Name  Jeffrey W. Gideon
                Vice President  Title

STATE OF __Texas__      )
              Tarrant         ) ss.
COUNTY OF _____   )

On 6/18/10 _____, before me, Amy McQueen, Notary Public
personally appeared __Jeffrey W. Gideon__, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____

NOTARY PUBLIC in and for the State of
__Texas__, residing at __Tarrant__
My commission expires: 8/28/12



2                                        Assn

# Exhibit 5

## Jeff Gideon

Vice President - National REO at <u>Residential Credit</u> Solutions
Dallas/Fort Worth Area   Banking

### Join LinkedIn and access Jeff Gideon's full profile.

As a LinkedIn member, you'll join 200 million other professionals who are sharing connections, ideas, and opportunities. And it's free! You'll also be able to:

- See who you and **Jeff Gideon** know in common
- Get introduced to **Jeff Gideon**
- Contact **Jeff Gideon** directly

**View Full Profile**

### Jeff Gideon's Overview

Current    **Vice President - National REO at Washington Mutual**

Education    Texas A&M University

Connections    **4 connections**

### Jeff Gideon's Experience

**Vice President - National REO**
**Washington Mutual**
Public Company; 10,001+ employees; JPM; Financial Services industry
Currently holds this position

### Jeff Gideon's Education

**Texas A&M University**
1981 – 1985

### Contact Jeff for:

- career opportunities
- expertise requests
- reference requests
- job inquiries
- business deals
- getting back in touch

### View Jeff Gideon's full profile to...

- See who you and **Jeff Gideon** know in common
- Get introduced to **Jeff Gideon**
- Contact **Jeff Gideon** directly

**View Full Profile**

Not the Jeff Gideon you were looking for? View more »

LinkedIn member directory - Browse members by country  a b c d e f g h i j k l m n o p q r s t u v w x y z more

LinkedIn Corporation © 2011

COUNTY OF SANTA FE }
STATE OF NEW MEXICO } ss

ASSIGNMENT OF MORTGAGE
PAGES: 2

I Hereby Certify That This Instrument Was Filed for
Record On The 1ST Day Of June, A.D., 2011 at 01:59:32 PM
And Was Duly Recorded as Instrument # 1636336
Of The Records Of Santa Fe County

Witness My Hand And Seal Of Office
Valerie Espinoza
Deputy - COMONTOYA        County Clerk, Santa Fe, NM

McCarthy & Holthus
1000651367

## ASSIGNMENT OF MORTGAGE

Lenders Loan Number: 1000651367 [NICOLA]

MIN: 100327101000181073                MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc.** ([MERS]) as nominee for QMC Holdings, INC., its successors and assigns at 502 West Cordova, Santa Fe, New Mexico 87505, hereby assign and transfer to **Residential Credit Solutions**, its successors and assigns, all its right, title and interest in and to a certain mortgage executed by **MICHAEL NICOLA**, an unmarried man, and bearing the date of the 20th day of September 2006 and recorded on the 28th day of September 2006 in the office of the Recorder of Santa Fe County, State of New Mexico with recording information of as instrument number: 1452682.

Signed on the _____20_____ day of _____May_____ _____2011_____

Mortgage Electronic Registration Systems, Inc. as nominee for QMC Holdings, INC.

BY: _____

Name: Jeffrey W. Gideon
Title: Assistant Secretary

State of _____Texas_____ }

County of _____Tarrant_____ } ss:

On _____5/20/2011_____, before me, _____Kristina C Davis_____, a Notary Public in and for the County of _____Tarrant_____ County, State of _____Texas_____, personally appeared Jeffrey W. Gideon, Assistant Secretary

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the Instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Public

KRISTINA C. DAVIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/30/2013

## *ASSIGNMENT OF MORTGAGE*

Original Lender: **Mortgage Electronic Registration Systems, Inc., as nominee for BankUnited, FSB**

Know that,

**Mortgage Electronic Registration Systems, Inc., as nominee for BankUnited, FSB, 3300 SW 34th Ave., Suite 101 , Ocala, FL 34474**, assignor,

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

**Residential Credit Solutions, Inc., 4282 N Freeway , Fort Worth, TX 76137**, assignee

hereby assigns unto the assignee, a certain mortgage made by LEONARD JAY GOULD, given to secure payment of the sum of **Six hundred and thirty thousand dollars ($630,000.00)** and interest, dated **the 3rd day of January, 2008**, recorded on **the 15th day of January, 2008**, in the office of the Clerk of the County of Bronx, at Instrument No. 2008000018028,

covering premises 368 EAST 201ST STREET 1, BRONX, NY 10458, SBL #Block: 3285 Lot: 138,

together with the Assignor's beneficial interest under the Mortgage, and the moneys due and to grow due thereon with the interest,

This said mortgage has not been otherwise assigned of record.

***TO HAVE AND TO HOLD*** the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

***THIS*** Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

***IN WITNESS WHEREOF,*** the Assignor has caused these presents to be signed by its duly authorized officer this ___24__ day of __June__ , 20_10__ .

***IN PRESENCE OF***

Mortgage Electronic Registration Systems, Inc., as nominee for BankUnited, FSB

BY: _____
Name: __Jeffrey W. Gideon____
Title: ___Vice President_____

State of ....**Texas**........
County of .....**Tarrant**..... ss:
On the _24_ day of __June__ in the year _2010_ before me, the undersigned, a notary public in and for said state, personally appeared **Jeffrey W. Gideon** , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the __Fort Worth Texas__ . *(Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)*

_____
Notary Public

**SEAL**

*(notary seal: AMY MCQUEEN, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 06-26-2012)*

Steven J. Baum, PC
220 Northpointe Pkwy., Ste. B
Amherst, NY 14228

9/01/10 9:08:54
DK T BK 3,206 PG 603
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

Prepared by:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020
Emily Kaye Courteau Bar# 100570

**RECORD 2nd**

Return To:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020

Grantor:
CitiMortgage, Inc.
4282 N. Freeway
Ft. Worth, TX, 76137
(800) 737-1192

Grantee:
Residential Credit Solutions, Inc.
4282 N. Freeway
Ft. Worth, TX, 76137
(800) 737-1192

Lot 2, Chanler Estates, Ira Robertson 4-Lot S/D, located in Section 5, T 2 S, R 7 W, Plat Book 69, Page 32, DeSoto Co., MS

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

FOR AND IN CONSIDERATION of the sum of TEN DOLLARS ($10.00), cash in hand paid and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the undersigned CitiMortgage, Inc. does hereby sell, convey, and to Residential Credit Solutions, Inc. their Successors and/or Assigns that certain Deed of Trust executed by Eddie L. Allen aka Eddie Lee Allen and wife Annie L. Allen aka Annie Lois Allen for the use and benefit of First Choice Mortgage Services, Inc., which Deed of Trust is recorded in Book 2494 at Page 192, records of the Chancery Clerk of DeSoto County, Mississippi, together with the indebtedness secured thereby.

IN WITNESS WHEREOF, the said CitiMortgage, Inc. caused this conveyance to be signed by
Jeffrey W. Gideon                                                                                 .
its      Vice President                                                            , and its corporate seal to be hereto
affixed, this the  15  day of  August                , 20 10

CitiMortgage, Inc.

BY: Jeffrey W. Gideon
Vice President

STATE OF      Texas
COUNTY OF      Tarrant

This day personally appeared before me, the undersigned authority in and for the aforesaid jurisdiction,
Jeffrey W. Gideon           , who acknowledges that (s) he is the      Vice President
of CitiMortgage, Inc. and that (s) he executed and delivered the above and foregoing instrument on the day and year therein

# Exhibit 6

1   PRESTON DUFAUCHARD
    CALIFORNIA CORPORATIONS COMMISSIONER
2   WAYNE STRUMPFER
    DEPUTY COMMISSIONER
3   ALAN S. WEINGER (CA BAR NO. 86717)
    SUPERVISING ATTORNEY
4   320 WEST 4th STREET, SUITE 750
    LOS ANGELES, CALIFORNIA 90013-1105
5
6   Attorneys for Complainant

7                BEFORE THE DEPARTMENT OF CORPORATIONS

8                     OF THE STATE OF CALIFORNIA

9

10  In the Matter of the Accusation of          )  File No. 4130295
                                                )
11  THE CALIFORNIA CORPORATIONS                 )
    COMMISSIONER,                               )
12                                              )
13             Complainant,                     )
                                                )
14         vs.                                  )
                                                )
15                                              )
                                                )
16                                              )
    AAMES HOME LOAN, THE CENTER FOR             )
17  LOAN SERVICING (AAMES FUNDING               )
    CORPORATION, DBA), Respondent               )
18

19

20                    ORDER SUMMARILY REVOKING
21        RESIDENTIAL MORTGAGE LENDER AND OR SERVICER LICENSE

22

23  THE CALIFORNIA CORPORATIONS COMMISSIONER FINDS THAT:

24      GOOD CAUSE APPEARING, the license issued AAMES HOME LOAN, THE CENTER

25  FOR LOAN SERVICING (AAMES FUNDING CORPORATION, DBA) is hereby revoked for

26  failure to comply with Section 50401 of the California Residential Mortgage Lending Act which

27  requires the payment of an assessment to the Commissioner.

28

Dated:        November 5, 2007
Effective:    December 6, 2007
             Los Angeles, California

PRESTON DUFAUCHARD
CALIFORNIA CORPORATIONS COMMISSIONER

By _____

       DIAUN M. BURNS
       Special Administrator
       **California Residential Mortgage Lending Act**

# Exhibit 7

Multnomah County Official Records
C Swick, Deputy Clerk                    **2010-077498**



006851662010007749800020027                **$41.00**

1R-SUB TR                      06/23/2010 01:27:43 PM
$10.00 $11.00 $15.00 $5.00     Cnt=1 Stn=43 ATRGW

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

---

Trustee's Sale No: 09-FAA-96724



## APPOINTMENT OF SUCCESSOR TRUSTEE

**KNOW ALL MEN BY THESE PRESENTS** that, HA TO HA is the Grantor, and LINDSAY HARTE LAW OFFICE is the Trustee, and AAMES FUNDING CORPORATION DBA AAMES HOME LOAN is the Beneficiary under that certain trust deed dated 4/18/2005, recorded 4/27/2005, under Instrument No. 2005-074270, records of MULTNOMAH County, OREGON.

**NOW, THEREFORE**, in view of the premises, DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust., who is the present beneficiary, hereby appoints REGIONAL TRUSTEE SERVICES CORPORATION, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said trust deed, to have all the powers of said original trustee, effective as of the date of execution of this document.

**IN WITNESS WHEREOF**, the undersigned beneficiary has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

1                              ORSubPOA



Trustee's Sale No: 09-FAA-96724

DATED: ~~8/28/10~~ 6/15/10 *

* Effective 6/18/2010

DEUTSCHE BANK NATIONAL TRUST COMPANY in
its capacity as indenture trustee for the Noteholders of
AAMES MORTGAGE INVESTMENT TRUST 2005-2,
a Delaware statutory trust.
By RESIDENTIAL CREDIT SOLUTIONS
Its Attorney in Fact

By _____

Jeffrey W. Gideon (Name – Title)
Vice President

STATE OF **Texas** )
COUNTY OF **Tarrant** ) ss.

On __June 15 2010__, before me, the undersigned, a Notary Public in and for the State of
__Texas__ duly commissioned and sworn, personally appeared
__Jeffrey W. Gideon__, to me known to be the **Vice President** of
RESIDENTIAL CREDIT SOLUTIONS, the corporation that executed the foregoing instrument as Attorney in
Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the
Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust., and
acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the
uses and purposes therein mentioned, and on oath stated that he/she/it was authorized to execute the said
instrument.

WITNESS my hand and official seal hereto affixed the day and year first above written

NOTARY PUBLIC in and for the State of
__TX__, residing at: __Tarrant__
My commission expires: __8/28/12__

AMY MCQUEEN
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
06-28-2012

2                                          ORSubPOA

# Exhibit 8

5 9

**Multnomah County Official Records**
**C Swick, Deputy Clerk**

**2010-077499**

$41.00

0068516720100077499002 0024

**06/23/2010 01:27:43 PM**

1R-DEF NOTC2          Cnt=1  Stn=43 ATRGW
$10.00 $11.00 $15.00 $5.00

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No:     09-FAA-96724



# NOTICE OF DEFAULT AND ELECTION TO SELL
Pursuant to O.R.S. 86.705 et seq. and O.R.S. 79.5010, et seq.

Reference is made to that certain Deed of Trust made by, HA TO HA, as grantor, to LINDSAY HARTE LAW OFFICE, as Trustee, in favor of AAMES FUNDING CORPORATION DBA AAMES HOME LOAN, as beneficiary, dated 4/18/2005, recorded 4/27/2005 , under Instrument No. 2005-074270, records of MULTNOMAH County, covering the following described real property situated in MULTNOMAH County, OREGON, to-wit:

THE EAST 10.52 FEET OF LOT 5, AND ALL OF LOTS 6, 7 AND 8, BLOCK 5, SUNRISE PARK, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.

The undersigned Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no appointments of a successor-trustee have been made except as recorded in the mortgage records of the county or counties in which the above described real property is situate; further, that no action has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.735(4).

There is a default by the grantor or other person owing an obligation, the performance of which is secured by said trust deed, or by the successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision; the default for which foreclosure is made is grantor's failure to pay when due, the following sums:

```
                                          Amount due as of
                                          June 22, 2010
                                          ----------------
Delinquent Payments from March 01, 2010
1 payments at $ 1,843.00 each             $      1,843.00
3 payments at $ 1,881.84 each             $      5,645.52
     (03-01-10 through 06-22-10)
Late Charges:                             $        905.30
Beneficiary Advances:                     $        184.17
Suspense Credit:                          $          0.00
                                          ================
TOTAL:                                    $      8,577.99
```

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following:

UNPAID PRINCIPAL BALANCE OF $197,210.87, PLUS interest thereon at 8.5% per annum from 05/01/05 to 4/1/2010, 8.5% per annum from 04/01/10 to 06/01/10, 8.5% per annum from 6/1/2010, until paid, together with escrow advances,

Page 1                    OR_NOD



foreclosure costs, trustee fees, attorney fees, sums required for the protection of the property and additional sums secured by the Deed of Trust.

Notice hereby is given that the beneficiary and current trustee, REGIONAL TRUSTEE SERVICES CORPORATION, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

Said sale will be held at the hour of 11:00 AM, in accord with the standard of time established by ORS 187.110 on October 27, 2010, at the following place: FRONT ENTRANCE OF THE MULTNOMAH COUNTY COURTHOUSE, 1021 S.W. 4TH AVENUE, PORTLAND, County of MULTNOMAH, State of OREGON, which is the hour, date and place last set for said sale.

Other than as shown of record, neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other person in possession of or occupying the property, except:

NONE

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provide by said ORS 86.753.

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

DATED: 6/22/2010

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee

By _____

CHAD JOHNSON, AUTHORIZED AGENT
Sale Information: http://www.rtrustee.com

STATE OF WASHINGTON   }
                      } ss.
COUNTY OF KING          }

The foregoing instrument was acknowledged before me 6/22/2010, by CHAD JOHNSON, AUTHORIZED AGENT of REGIONAL TRUSTEE SERVICES CORPORATION, a WASHINGTON Corporation, on behalf of the corporation.

Notary Public for WASHINGTON
My commission expires: ___7/9/201___

# Exhibit 9

RECORDING REQUESTED BY

_____

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No:    09-FAA-110341



**Multnomah County Official Records**
**R Weldon, Deputy Clerk**                    **2011-070262**

0084774920110070262003032                    **$46.00**

**06/21/2011 03:49:25 PM**
1R-DEF NOTC2          Cnt=1 Stn=28 ATMWB
$15.00 $11.00 $15.00 $5.00

# NOTICE OF DEFAULT AND ELECTION TO SELL
Pursuant to O.R.S. 86.705 et seq. and O.R.S. 79.5010, et seq.

Reference is made to that certain Deed of Trust made by, HA TO HA, as grantor, to LINDSAY HARTE LAW OFFICE, as Trustee, in favor of AAMES FUNDING CORPORATION DBA AAMES HOME LOAN, as beneficiary, dated 4/18/2005, recorded 4/27/2005 , under Instrument No. 2005-074270,    records of MULTNOMAH County, covering the following described real property situated in MULTNOMAH County, OREGON, to-wit:

> THE EAST 10.52 FEET OF LOT 5, AND ALL OF LOTS 6, 7 AND 8, BLOCK 5, SUNRISE PARK, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.

The undersigned Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no appointments of a successor-trustee have been made except as recorded in the mortgage records of the county or counties in which the above described real property is situate; further, that no action has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.735(4).

There is a default by the grantor or other person owing an obligation, the performance of which is secured by said trust deed, or by the successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision; the default for which foreclosure is made is grantor's failure to pay when due, the following sums:

```
                                              Amount due as of
                                              June 20, 2011
                                              ----------------
Delinquent Payments from February 01, 2011
2 payments at $ 1,881.84 each                 $      3,763.68
3 payments at $ 1,928.09 each                 $      5,784.27
    (02-01-11 through 06-20-11)
Late Charges:                                 $      2,015.22
Beneficiary Advances:                         $      2,555.91
Suspense Credit:                              $          0.00
                                              ================
TOTAL:                                        $     14,119.08
```

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following:

UNPAID PRINCIPAL BALANCE OF $195,058.93, PLUS interest thereon at 8.5% per annum from 01/01/11 to 4/1/2011, 8.5% per annum from 4/1/2011, until paid, together with escrow advances, foreclosure costs, trustee fees, attorney fees, sums required for the protection of the property and additional sums secured by the Deed of Trust.

3

Notice hereby is given that the beneficiary and current trustee, REGIONAL TRUSTEE SERVICES CORPORATION, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

Said sale will be held at the hour of 11:00 AM, in accord with the standard of time established by ORS 187.110 on October 27, 2011, at the following place: FRONT ENTRANCE OF THE MULTNOMAH COUNTY COURTHOUSE, 1021 S.W. 4TH AVENUE, PORTLAND, County of MULTNOMAH, State of OREGON, which is the hour, date and place last set for said sale.

Other than as shown of record, neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other person in possession of or occupying the property, except:

    NONE

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provide by said ORS 86.753.

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

DATED: 6/20/2011

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee



By _____

KAREN JAMES, AUTHORIZED AGENT
Sale Information: http://www.rtrustee.com

STATE OF WASHINGTON   }
                           } ss.
COUNTY OF KING           }

On 6/20/2011, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared KAREN JAMES , to me known to be the AUTHORIZED AGENT of the corporation that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument.

Witness my hand and seal the day and year first above written.

_Dorris G. Lontrong_

Notary Public residing at _Seattle_

Printed Name: _Dorris G Lontrong_

My Commission Expires: _07/09/2014_

# Exhibit 10

July 5, 2013

Residential Credit Solutions, Inc
P O Box 163229
Fort Worth, TX 76161-3229
Certified Mail # 7011 1570 0001 9946 0902

**DEMAND TO IMMEDIATELY CEASE AND DESIST ALL TRUSTEE NOTICE OF
SALE AND COLLECTION ACTIVITIES.**

**DISPUTE UNDER FEDERAL FAIR DEBT COLLECTION PRACTICES ACT.**

RE:   Trustee's Sale No:    09-FAA-127334       Sale date 7-16-2013
      Property Address:     8230 SE Yamhill Street, Portland, OR 97216
      Property Owner:       Ha To Ha         Loan # 0004051140

To whom it may concern:

I am in receipt of your June 21, 2013 notice of postponement and change of a new trustee sale
date for 7/16/2013. **You need to RESCIND this pending sale date due to the
violations of Oregon Statutes of 86.755(2) and 86.755(12)** that I have previously
warned you about. This information will get filed as complaints with the Oregon District
Attorney Office due to your negligence to comply with my previous requests.

I am reattaching the "Demand to Cancel Sale" that was sent via Certify Mail Receipt Requested
No. 7008 0150 0002 4585 0229 and also faxed to your office on 10-10-2012 via fax # 877-415-
5051. The purpose of these letters were to inform your office had violated Oregon Statutes **ORS
86.755(2) and ORS 86.755(12)** for not restarting the foreclosure over when the 180 days were
overlap.   You are also putting yourself in future Tortious Interference and Unjust Enrichment
law suits if you don't immediately rescind the pending trustee notice of sale with the sale date of
July 16, 2013.

I dispute that any debt is owed to the alleged current creditor, listed in your notice as
"DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for
the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware
statutory trust." This is a mortgage backed security which is not the current holder of the Note or
Deed of Trust. Until such time the true beneficiary is known and proven in pursuant to The
Uniform Commercial Code (UCC) and Oregon Statutes, this debt is invalid.

I dispute the validity of the amount of the alleged debt as being $265,472.60. My loan is not in
default until the properly indentified true owner of the loan comes forward to declare such claim.
Until such time, I don't know your principal and do not know if they have the right to authorize
or appoint you as The Trustee to oversee or commence this transaction.   I owe nothing respecting
my note to any company for which your company might work; it has no right to enforce my note
pursuant to this state's UCC; and it has no right to trigger the power of sale under my Deed of

Trust for the purpose of taking my home via foreclosure under a mistaken or fraudulent claim that it has the legal right to collect an unsatisfied obligation owed by me.

Sincerely,

Ha To Ha

July 5, 2013

Regional Trustee Services Corporation
616 1st Avenue, Suite 500
Seattle, WA 98104
Certified Mail # 7011 1570 0001 9946 0896

## DEMAND TO IMMEDIATELY CEASE AND DESIST ALL TRUSTEE NOTICE OF SALE AND COLLECTION ACTIVITIES.

## DISPUTE UNDER FEDERAL FAIR DEBT COLLECTION PRACTICES ACT.

RE:    Trustee's Sale No:    09-FAA-127334        Sale date 7-16-2013
       Property Address:     8230 SE Yamhill Street, Portland, OR 97216
       Property Owner:       Ha To Ha

To whom it may concern:

I am reattaching the "Demand to Cancel Sale" that was sent via Certify Mail Receipt Requested No. 7008 0150 0002 4585 0212 and also faxed to your office on 10-10-2012 via fax # 206-299-9720.  The purpose of these letters were to inform your office had violated Oregon Statutes **ORS 86.755(2) and ORS 86.755(12)** for not restarting the foreclosure over when the 180 days were overlap.  You are also putting yourself in future Tortious Interference and Unjust Enrichment law suits if you don't immediately rescind the pending trustee notice of sale with the sale date of July 16, 2013.

I dispute that any debt is owed to the alleged current creditor, listed in your notice as "DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust." This is a mortgage backed security which is not the current holder of the Note or Deed of Trust.  Until such time the true beneficiary is known and proven in pursuant to The Uniform Commercial Code (UCC) and Oregon Statutes, this debt is invalid.

I dispute the validity of the amount of the alleged debt as being $265,472.60.  My loan is not in default until the properly indentified true owner of the loan comes forward to declare such claim.  Until such time, I don't know your principal and do not know if they have the right to authorize or appoint you as The Trustee to oversee or commence this transaction.  I owe nothing respecting my note to any company for which your company might work; it has no right to enforce my note pursuant to this state's UCC; and it has no right to trigger the power of sale under my Deed of Trust for the purpose of taking my home via foreclosure under a mistaken or fraudulent claim that it has the legal right to collect an unsatisfied obligation owed by me.

Sincerely,

Ha To Ha

* * * Communication Result Report ( Apr. 27. 2013 12:36PM ) * * *

Fax Header) FRED MEYER #128 CSD 503-254-2547

Date/Time: Apr. 27. 2013 12:35PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 3680 | Memory TX | 12066769659 | P. 1 | OK | |

Reason for error

E. 1) Hang up or line fail
E. 2) Busy
E. 3) No answer
E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

April 25, 2013

Regional Trustee Services Corporation
616 1st Avenue, Suite 500
Seattle, WA 98104

VIA FAX: 206-292-4930

DISPUTE UNDER FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

RE: Trustee's Sale No: 09-FAA-123783
Property Address: 8230 Yamhill Street, Portland, OR 97216
Property Owner: Ha To Ha

To Whom it May Concern:

I am in receipt of your March 29, 2013 Notice required by the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). I am hereby giving official Notice of Dispute of the Validity of a Debt and Request to Verify Debt under the provisions of the FDCPA governing disputes of debts.

I dispute the validity of the amount of the alleged debt as being $261,531.08. This amount is incorrect. I dispute that any debt is owed to the claimed "current" creditor, listed in your notice as "DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust." This is a mortgage-backed security which is not the current holder of the Note or Deed of Trust. Until such time the true beneficiary is known and proven, this debt is invalid.

There are many other issues I have previously raised, and will continue to challenge this debt. Please respond accordingly.

As you are aware, the sale date of April 26, 2013 has been cancelled by the filing of the Chapter 7 bankruptcy, U.S. Bankruptcy Court Case No. 13-32107-elp7 filed April 8, 2013. Please be advised I will seek damages for any actions taken in violation of all Oregon state non-judicial foreclosure laws, federal laws, including the FDCPA (and RESPA, which you have still failed to respond adequately).

Thank you for your time and professional courtesies.

*Ha To Ha*
*8230 SE Yamhill Street*
*Portland, OR 97216*

cc: Robinson Tait for Residential Credit Solutions, Inc. (via fax: 206-676-9669)

* * * Communication Result Report ( Apr. 27. 2013 12:35PM ) * * *

Fax Header) FRED MEYER #128 CSD 503-254-2547

Date/Time: Apr. 27. 2013 12:35PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 3679 | Memory TX | 12062924930 | P. 1 | OK | |

Reason for error
E. 1) Hang up or line fail
E. 2) Busy
E. 3) No answer
E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

April 25, 2013

Regional Trustee Services Corporation — VIA FAX: 206-292-4930
616 1st Avenue, Suite 500
Seattle, WA 98104

**DISPUTE UNDER FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

RE: Trustee's Sale No: 09-FAA-125783 [uncertain]
Property Address: 8230 Yamhill Street, Portland, OR 97216
Property Owner: Ha To Ho

To Whom it May Concern:

I am in receipt of your March 29, 2013 Notice required by the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). I am hereby giving official Notice of Dispute of the Validity of a Debt and Request to Verify Debt under the provisions of the FDCPA governing disputes of debts.

I dispute the validity of the amount of the alleged debt as being $261,531.08. This amount is incorrect. I dispute that any debt is owed to the claimed "current" creditor, listed in your notice as "DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-3, a Delaware statutory trust." This is a mortgage-backed security which is not the current holder of the Note or Deed of Trust. Until such time the true beneficiary is known and proven, this debt is invalid.

There are many other issues I have previously raised, and will continue to challenge this debt. Please respond accordingly.

As you are aware, the sale date of April 26, 2013 has been cancelled by the filing of the Chapter 7 bankruptcy, U.S. Bankruptcy Court Case No.13-32107-elp7 filed April 8, 2013. Please be advised I will seek damages for any actions taken in violation of all Oregon state non-judicial foreclosure laws, federal laws, including the FDCPA (and RESPA, which you have still failed to respond adequately).

Thank you for your time and professional courtesies.

*Ha To Ho*
*8230 SE Yamhill Street*
*Portland, OR 97216*

cc: Robinson Tait for Residential Credit Solutions, Inc. (via fax: 206-676-9659 [uncertain])

April 25, 2013

Regional Trustee Services Corporation     VIA FAX: **206-292-4930**
616 1st Avenue, Suite 500
Seattle, WA 98104

**DISPUTE UNDER FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

RE:    Trustee's Sale No:    09-FAA-125783
       Property Address:    8230 Yamhill Street, Portland, OR 97216
       Property Owner:    Ha To Ha

To Whom it May Concern:

I am in receipt of your March 29, 2013 Notice required by the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). I am hereby giving official Notice of Dispute of the Validity of a Debt and Request to Verify Debt under the provisions of the FDCPA governing disputes of debts.

I dispute the validity of the amount of the alleged debt as being $261,531.08. This amount is incorrect. I dispute that any debt is owed to the claimed "current" creditor, listed in your notice as "DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware stator trust." This is a mortgage-backed security which is not the current holder of the Note or Deed of Trust. Until such time the true beneficiary is known and proven, this debt is invalid.

There are many other issues I have previously raised, and will continue to challenge this debt. Please respond accordingly.

As you are aware, the sale date of April 26, 2013 has been cancelled by the filing of the Chapter 7 bankruptcy, U.S. Bankruptcy Court Case No.13-32107-elp7 filed April 8, 2013. Please be advised I will seek damages for any actions taken in violation of all Oregon state non-judicial foreclosure laws, federal laws, including the FDCPA (and RESPA, which you have still failed to respond adequately).

Thank you for your time and professional courtesies.

*Ha To Ha*
*8230 SE Yamhill Street*
*Portland, OR 97216*

cc: Robinson Tait for Residential Credit Solutions, Inc. (via fax: **206-676-9659**)

P. 1

**✗ ✗ ✗ Communication Result Report ( Nov. 10. 2012 1:55PM ) ✗ ✗ ✗**

Fax Header)  FRED MEYER #128 CSD 503-254-2547

Date/Time: Nov. 10. 2012  1:54PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0643 | Memory TX | 12062999720 | P.  2 | OK | |

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size
E. 2) Busy
E. 4) No facsimile connection



**DEMAND TO CANCEL SALE**

*No To No*
8230 SW Yamhill Street
Portland, OR 97216

November 9, 2012

Via Fax: 206-299-9720;  Via Cert Mail, Return Receipt Requested No. 7800 0150 0002 4585 8212
Regland Trust Services Corporation
616 1st Avenue, Suite 500
Seattle, Washington 98104

Via Fax: 877-815-5091;  Via Cert Mail, Return Receipt Requested No. 7800 0150 0002 4585 8229
Residential Credit Solutions, Inc.
P O BOX 163880
Fort Worth, TX 76161-3880

**DEMAND TO IMMEDIATELY CANCEL DECEMBER 10th, 2012 TRUSTEE'S SALE and NOTICE OF VIOLATIONS OF ORS 86.755(2) and ORS 86.755(12)**

RE:  Trustee's Sale No:      09-FAA-129780
     Loan number:          080405340
     Property Address:     8230 Yamhill Street, Portland, OR 97216

To Whom it May Concern:

I am writing to inform your companies that you are in violation with ORS 86.755(2) and ORS 86.755(12) by continuing the foreclosure proceedings. I demand that you immediately cancel the foreclosure proceedings, for the violations of these laws, as well as all the reasons given in my August 30, 2012 Notice of Dispute of Debt.

This Demand to Cancel Sale only concerns the violations of the laws cited herein, and not the many other issues and violations of law I have previously notified you, and to which you have not responded.

The simple facts show you are in violation of the laws cited, ORS 86.755(2) and ORS 86.755(12). The (operative) Notice of Default was recorded June 21, 2011, setting a sale date of October 27, 2011 (the original sale date). I filed bankruptcy on January 5, 2012 (Case No. 12-30053-tmb13); the bankruptcy was dismissed on May 21, 2012. The (rescinded) Trustee's Notice of Sale is dated August 7, 2012 setting a sale date of December 10, 2012. Given these dates, you are in violation of both ORS 86.755(2) and ORS 86.755(12).

**ORS 86.755(2):**
"The trustee or the attorney for the trustee, or an agent that the trustee or the attorney conducting the sale designates, may postpone the sale for one or more periods that total not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale. The trustee, the attorney or an agent that the trustee or the attorney designates may make the proclamation."

1

x  x  x  Communication Result Report ( Nov. 10. 2012  1:56PM ) x  x  x

Date/Time: Nov. 10. 2012  1:55PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0644 Memory TX | 18774155051 | P.   2 | OK | |

Reason for error
  E. 1) Hang up or line fail       E. 2) Busy
  E. 3) No answer                E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size



*DEMAND TO CANCEL SALE*

November 9, 2012

Via Fax: 206-299-9728;  Via Cert Mail, Return Receipt Requested No. 7008 0150 0002 4885 0212
Regional Trust Services Corporation
616 1st Avenue, Suite 500
Seattle, Washington 98104

Via Fax: 877-415-5081;  Via Cert Mail, Return Receipt Requested No. 7008 0150 0002 4885 0229
Residential Credit Solutions, Inc.
P O BOX 163089
Fort Worth, TX 76161-3089

DEMAND TO IMMEDIATELY CANCEL DECEMBER 10TH, 2012 TRUSTEE'S SALE and NOTICE OF
VIOLATIONS OF ORS 86.755(2) and ORS 86.785(12)

RE:    Trustee's Sale No:    09-FAA-120980
        Loan number:    0004031440
        Property Address    8230 Yamhill Street, Portland, OR 97216

To Whom it May Concern:

I am writing to inform your companies that you are in violation with ORS 86.755(2) and ORS
86.785(12) by continuing the foreclosure proceedings. I demand that you immediately cancel the
foreclosure proceedings, for the violations of these laws, as well as all the reasons given in my
August 30, 2012 Notice of Dispute of Debt.

This Demand to Cancel Sale only concerns the violations of the laws cited herein, and not the many
other issues and violations of law I have previously notified you, and to which you have not
responded.

The simple facts show you are in violation of the laws cited, ORS 86.755(2) and ORS 86.785(12).
The (operative) Notice of Default was recorded June 21, 2011, writing a sale date of October 27,
2011 (the original sale date). I filed bankruptcy on January 5, 2012 (Case No. 12-30222-tmb15);
the bankruptcy was dismissed on May 21, 2012. The (amended) Trustee's Notice of Sale is dated
August 7, 2012 setting a sale date of December 10, 2012. Given these dates, you are in violation of
both ORS 86.755(2) and ORS 86.785(12).

    ORS 86.755(2):
    "The trustee or the attorney for the trustee, or an agent that the trustee or the attorney
    conducting the sale designates, may postpone the sale for one or more periods that
    total not more than 180 days from the original sale date, giving notice of each
    adjournment by public proclamation made at the time and place set for sale. The trustee,
    the attorney or an agent that the trustee or the attorney designates may make the
    proclamation."

1

**ORS 86.755(12)(a):**
"Notwithstanding subsection (2) of this section, except when a beneficiary has participated in obtaining a stay, foreclosure proceedings that are stayed by order of the court, by proceedings in bankruptcy or for any other lawful reason shall, after release from the stay, **continue as if uninterrupted[1], if within 30 days after release the trustee sends amended notice of sale** by registered or certified mail to the last-known address of the persons listed in ORS 86.740 and 86.750 (1)."

1)   You are in violation of the "180-Day Rule" in ORS 86.755(2). The original sale date was October 27, 2011. This date plus 180 days is April 24, 2012. Including the 147 days in bankruptcy (from January 5, 2012 – May 31, 2012), the latest date a sale could be held under the operative Notice of Default is September 18, 2012.

Here is the calculation:
**10/27/11 (original sale date) + 180 days = 04/24/12 + 147 days (in bankruptcy) = 09/18/12**

2)   You are in violation of ORS 86.755(12) because the Trustee's Notice of Sale setting the December 10, 2012 sale date is dated August 7, 2012, and was not sent within 30 days after the release of the bankruptcy (which was May 31, 2012).

I expect you to IMMEDIATELY cancel the December 10, 2012 trustee's sale. I also am awaiting your response to my dispute of the debt under the FDCPA, as well as the Qualified Written Request under RESPA (see August 30, 2012 letter). I maintain all the same disputes and issues.

Please also be advised that I am aware of the changes to the Oregon Trust Deed Act concerning 2012 legislation and the passage of Oregon Laws Chapter 112, the foreclosure mediation program. Please review this law and know that I will invoke all the rights and remedies under that law, requiring the "beneficiary" to prove its standing and produce many documents. The very issues in my August 30, 2012 notice will be at issue (or in a lawsuit should one be filed).

**I hereby demand you to stop the foreclosure sale date of December 10th, 2012.** I also await the response to my QWR sent on 8/30/12.

**YOUR IMMEDIATE ATTENTION TO THIS MATTER IS REQUIRED. LACK OF ACTION ON YOUR BEHALF MAY RESULT IN "IMMEDIATE AND IRREPARABLE INJURY, LOSS OR DAMAGE" TO ME BY THE "GRIEVIOUS INJURY" OF THE LOSS OF MY HOME, AND UPON WHICH I WILL SEEK INJUNCTIVE RELEIF AND DAMAGES**

Thank you,

Ha To Ha

Encl: 8/30/12 QWR- Dispute Of Validity Of Debt

---

[1] Or, the 180-days from the original sale date to hold a "postponed sale" is "uninterrupted" except for the time in bankruptcy (i.e., the time in bankruptcy is added to the 180 days from the original sale date).



**DEMAND TO CANCEL SALE**

*Ha To Ha*
~~8230 SE Yamhill Street~~
*Portland, OR 97216*

November 9, 2012

Via Fax: 206-299-9720;   Via Cert Mail, Return Receipt Requested No. 7008 0150 0002 4585 0212
Regional Trust Services Corporation
616 1st Avenue, Suite 500
Seattle, Washington 98104

Via Fax: 877-415-5051;   Via Cert Mail, Return Receipt Requested No. 7008 0150 0002 4585 0229
Residential Credit Solutions, Inc.
P O BOX 163889
Fort Worth, TX 76161-3889

**DEMAND TO IMMEDIATELY CANCEL DECEMBER 10TH, 2012 TRUSTEE'S SALE and NOTICE OF VIOLATIONS OF ORS 86.755(2) and ORS 86.755(12)**

RE:    Trustee's Sale No:    09-FAA-120980
       Loan number:         0004051140
       Property Address:    8230 Yamhill Street, Portland, OR 97216

To Whom it May Concern:

I am writing to inform your companies that you are in violation with **ORS 86.755(2) and ORS 86.755(12)** by continuing the foreclosure proceedings.  I demand that you immediately cancel the foreclosure proceedings, for the violations of these laws, as well as all the reasons given in my August 30, 2012 Notice of Dispute of Debt.

This Demand to Cancel Sale only concerns the violations of the laws cited herein, and not the many other issues and violations of law I have previously notified you, and to which you have not responded.

The simple facts show you are in violation of the laws cited, ORS 86.755(2) and ORS 86.755(12). The (operative) Notice of Default was recorded June 21, 2011, setting a sale date of October 27, 2011 (the original sale date).  I filed bankruptcy on January 5, 2012 (Case No. 12-30053-tmb13); the bankruptcy was dismissed on May 31, 2012.  The (amended) Trustee's Notice of Sale is dated August 7, 2012 setting a sale date of December 10, 2012.  Given these dates, you are in violation of both ORS 86.755(2) and ORS 86.755(12).

**ORS 86.755(2):**
"The trustee or the attorney for the trustee, or an agent that the trustee or the attorney conducting the sale designates, **may postpone the sale for one or more periods that total not more than 180 days from the original sale** date, giving notice of each adjournment by public proclamation made at the time and place set for sale. The trustee, the attorney or an agent that the trustee or the attorney designates may make the proclamation."

1

# Exhibit 11

1 Lisa McMahon-Myhran, OSB#00084
2 Robinson Tait, P.S.
  710 Second Avenue, Suite 710
3 Seattle, WA 98104
  Phone: (206) 676-9640
4 lmcmahon@robinsontait.com

5

6                    UNITED STATES BANKRUPTCY COURT
                        FOR THE DISTRICT OF OREGON
7                              AT PORTLAND

8

9  In Re:                                Case No.: 12-38965-rld13

10 HA TO HA                              DECLARATION    IN    SUPPORT    OF
                                         OBJECTION TO CONFIRMATION OF PLAN
11

12

13

14   ___Melissa Black_____, being first duly sworn on oath, deposes and states as follows:

15

16 1. I am over the age of eighteen and am authorized to make this declaration on behalf of DEUTSCHE
      BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of
17    AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust ("Movant").

18 2. I am presently a Assistant Vice President-Servicing for Residential Credit Solutions, ("Residential") servicer and
      attorney in fact of the loan for Movant. If sworn as a witness I can competently testify to the matters
19    stated herein. The statements set forth in this Declaration are true and correct to the best of my
20    knowledge and belief.

21 3. In the regular performance of my job functions, I am familiar with the business records as
      maintained by Residential for the purpose of servicing mortgage loans. These records (which
22    typically include data compilations, electronically imaged documents, and others) are made at or
      near the time by, or from information provided by, persons with knowledge of the activity and
23    transactions reflected in such records, and are kept in the course of business activity conducted
24    regularly by Residential. It is the regular practice of Residential's mortgage servicing business to
      make and update these records. In connection with making this affidavit, I have personally
25    examined these business records reflecting data and information of HA TO HA.

26

27 4. Movant is the holder of and in possession of a note ("Note") for this Loan, bearing the date of
   Declaration- 1 -
28 60410-0168-BK-Z\

April 18, 2005, in which the Debtor(s) **HA TO HA** promised to pay the sum of $202,400.00. A true and correct copy of said Note is attached hereto as Exhibit "A."

5. **The original Note is currently held at** _Robinson Tait, P.S._

6. The Note is secured by a deed of trust on real estate together with all improvements thereon, located at 8230 SE Yamhill ST, Portland, OR 97216. The Deed of Trust was recorded in Multnomah County as recording #2005-074270. The Deed of Trust was assigned to Movant, as evidenced by the assignment recorded in Multnomah County under recording No. 2010-077497. See Exhibits "B" and "C" attached.

7. The debtor is currently contractually delinquent on the Note for the February 1, 2011 payment. The total pre-petition arrearage is $52,678.14.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at <u>Fort Worth, TX</u>   on February  _22_ , 2013 .

_Melissa Black_
DECLARANT    Melissa Black

DATED this _22_ day of February, 2013.

/s/ Lisa McMahon-Myhran

Lisa McMahon-Myhran, 00084
ROBINSON TAIT, P.S.

Declaration- 2 -
60410-0168-BK-2\

| B104 (10/06)   **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>JESSICA P SAM<br>HA TO HA | **DEFENDANTS**<br>DEUTSCHE BANK NATIONAL TRUST COMPANY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE NOTEHOLDERS OF AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust; RESIDENTIAL CREDIT SOLUTIONS, INC; REGIONAL TRUSTEE SERVICES CORPORATION; AAMES FUNDING CORPORATION, DBA AAMES HOME LOAN |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>NONE | **ATTORNEYS** (If Known)<br>LISA MCMAHON-MYHRAN<br>ROBINSON TAIT, P.S.<br>710 SECOND AVENUE, SUITE 710 SEATTLE, WA 98104 |
| **PARTY** (Check One Box Only)<br>☒Debtor  ☐Creditor  ☐Trustee  ☐ U.S. Trustee  ☐ Other | **PARTY** (Check One Box Only)<br>☐Debtor  ☒Creditor  ☐Trustee  ☐ U.S. Trustee  ☐ Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Suit is being brought to challenge the validity of defendants' standing, wrongful foreclosure, violations of OTDA, RESPA, FDCPA, UDCPA and breach of contract/fiduciary duty. ORS 86.735, 86.705, 86.795, 86.740, 86.755, 86.755, 12 USC 2601, 2605

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
- ☐11-Recovery of money/property - §542 turnover of property
- ☐12-Recovery of money/property - §547 preference
- ☐13-Recovery of money/property - §548 fraudulent transfer
- ☐14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
- ☒21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
- ☐31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
- ☐41-Objection/revocation of discharge - §727(c), (d), (e)

**FRBP 7001(5) - Revocation of Confirmation**
- ☐51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
- ☐66-Dischargeability - §523(a)(1), (14), (14A) priority tax claims
- ☐62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
- ☐61-Dischargeability §523(a)(5), domestic support
- ☐68-Dischargeability §523(a)(6), willful and malicious injury
- ☐63-Dischargeability §523(a)(8), student loan
- ☐64-Dischargeability §523(a)(15), divorce/sep property settlement/decree
- ☐65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
- ☐71-Injunctive relief - reinstatement of stay
- ☐72-Injunctive relief - other

**FRBP 7001(8) - Subordination of Claim or Interest**
- ☐81-Subordination of claim or interest

**FRBP 7001(9) - Declaratory Judgment**
- ☐91-Declaratory judgment

**FRBP 7001(10) - Determination of Removed Action**
- ☐01-Determination of removed claim or cause

**Other**
- ☐SS-SIPA Case - 15 USC §§78aaa et. seq.
- ☐02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐Check if this case involves a substantive issue of state law | ☐Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

Defendants barred from further foreclosure proceedings non-judicially or judicially due to lac of standing to sue.

**U.S. BANKRUPTCY COURT**
**DISTRICT OF OREGON**

JUL 1 0 2013

LODGED_____  REC'D_____
PAID_____  DOCKETED_____

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**JESSICA P SAM & HA TO HA** | | BANKRUPTCY CASE NO.<br>**13-32107-elp7** |
| DISTRICT IN WHICH CASE IS PENDING<br>**OREGON** | DIVISIONAL OFFICE<br>**PORTLAND** | NAME OF JUDGE<br>**Elizabeth Parrish** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*[signature]* | | |
| DATE<br>*7/9/13* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**JESSICA P SAM & HA TO HA** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the adversary proceeding is filed electronically through the court's ECF system. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties**. Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.